IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CAROLINE CLARK,                           §
    PLAINTIFF,                       §
                                        §
VS.                                       §          C.A. NO. A-12-CV-007-SS
                                        §
AUSTIN MONTESSORI SCHOOL, INC.,           §
    DEFENDANT.                       §

**DEFENDANT AUSTIN MONTESSORI SCHOOL, INC.'S
MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Defendant AUSTIN MONTESSORI SCHOOL, INC. ("Austin Montessori"), and files

this, its Motion for Summary Judgment, and respectfully shows the Court as follows:

## I. INTRODUCTION

1.      Plaintiff was a house guide (a teacher in the Montessori system) of 3-6 year old

students at Austin Montessori.  Plaintiff's employment was governed by a one-year contract that

covered the 2009-2010 school year.  She had no contract with, or offer from, Austin Montessori for

the 2010-2011 school year.

2.      In the spring of 2010, Plaintiff announced that she was due to have a child in October,

and that she planned on taking leave until January, 2011.  In an effort to minimize disruption to the

classroom, and based on Plaintiff's inquires regarding a different position, Austin Montessori offered

Plaintiff a position as a campus coordinator.  The position was not a demotion and provided the same

pay and benefits, but also provided flexibility for extended leave and the care of a newborn.  In fact,

Austin Montessori offered to arrange for Plaintiff to bring her newborn to work with her when she

returned.  Plaintiff rejected the offer, however, and announced she was moving to Dallas with her

husband so that she could be a stay-at-home mom.

3.      Following her move to Dallas, Plaintiff filed suit claiming that she was discriminated against based on her pregnancy.  Specifically, Plaintiff asserts that the failure of Austin Montessori to offer her another contract as a house guide was a violation of Tex. Lab. Code § 21.051.  On December 8, 2011, Plaintiff filed an amended petition asserting violations of 29 U.S.C § 2611 et seq. Plaintiff seeks economic, compensatory, equitable and punitive damages.  Plaintiff additionally seeks liquidated damages as allowed under the Family Medical Leave Act.

4.      It is undisputed that, given the necessity of stability and consistency in the classroom, any house guide planning an extended leave for any reason is reassigned to another position.  It is also undisputed that Plaintiff was not treated any differently following her announcement of pregnancy and that she completed the contract that she had with Austin Montessori without any change to pay, benefits, or working conditions.  It is also undisputed that Plaintiff was offered another contract for the following year with identical, if not superior, pay and benefits which Plaintiff rejected.  There is no genuine issue of material fact as to the matters discussed herein, and Austin Montessori is entitled to judgment as a matter of law.

## II.  GROUNDS FOR SUMMARY JUDGMENT

5.      There is no evidence that Plaintiff was discriminated against because of her pregnancy or leave request, that she was subjected to an adverse employment decision because of her pregnancy or leave request, or that a similarly situated individual seeking extended leave was treated differently in the employment context. The evidence establishes that Plaintiff was offered a contract with equal or better pay, benefits and opportunities.  Any similarly situated employee, or employee seeking more than six-weeks leave, was reassigned to a position other than that of house guide, thus refuting Plaintiff's claims that she received discriminatory treatment.  Austin Montessori had a legitimate non-discriminatory reason for offering Plaintiff a position as campus coordinator which was to serve

and protect the best interests of the students. There is no evidence that Austin Montessori's stated reason for the reassignment was for any reason other than the best interest of the children.

## III.  SUMMARY JUDGMENT EVIDENCE

6.     As summary judgment evidence, Austin Montessori relies on the pleadings and discovery on file with the papers of this Court.  In addition, pursuant to Rule 56 (c) of the Federal Rules of Evidence, Austin Montessori relies on and attaches true and correct copies of the following:

**Exhibit A:**     Excerpts from Deposition of Amber Miller
**Exhibit B:**     Excerpts from Deposition of Caroline Clark
**Exhibit C:**     Excerpts from Deposition of Dawn Glasgow
**Exhibit D:**     Excerpts from Deposition of Donald Goertz
**Exhibit E:**     Excerpts from Deposition of Charlotte Kroger
**Exhibit F:**     Excerpts from Deposition of Patricia Oriti
**Exhibit G:**     Letter of Appointment and Benefit Information, 2010-2011
                   *(Exhibit 16 to Donald Goertz's Deposition)*

## IV.  UNDISPUTED FACTS

7.     Defendant is a renowned Montessori School, known for its strict adherence to the American Montessori Institute ("AMI") standards.  Unlike typical schools, the students' work is primarily performed on an individual basis, and relies on a one-to-one relationship with the teachers. (***Exhibit A -*** Depo. of Miller p. 64).

8.     The teachers, known as "house guides" in the Montessori system, must be AMI trained and must be able to commit to providing normalization, stability and continuity for the classroom.  The focus of the Montessori system is on the best interest of the children. (***Exhibit B -*** Depo. of Clark p. 50, 100) (***Exhibit C -*** Depo. of Glasgow p. 101).

9.     Given the structure of the Montessori School system, it was agreed and understood by everyone, including Plaintiff, that it would not be in the best interest of the children for a house guide to be absent for an extended period of time. (***Exhibit B -*** Depo. of Clark p. 49) (***Exhibit D -*** Depo. of Goertz p. 8) (***Exhibit C -*** Depo. of Glasgow p. 5) (***Exhibit A -*** Depo. of Miller p. 59).

10.     Any extended absence on the part of a house guide can and does have significant impact on the development of the children. (*Exhibit A -* Depo. of Miller pp. 60, 68) (*Exhibit E -* Depo. of Kroger pp. 26-27).

11.     On a prior occasion, a house guide took maternity leave for a four to five week period and the absence was very disruptive to the development of the children. (*Exhibit A -* Depo. of Miller p. 71) (*Exhibit C -* Depo. of Glasgow pp. 64, 67).

12.     Given the necessity of stability and continuity within the classrooms, a house guide who planned an extended leave for any reason would be offered an alternate position in the school where absenteeism would not negatively impact the children. (*Exhibit D -* Depo. of Goertz p. 28) (*Exhibit A -* Depo. of Miller p. 52).

13.     Plaintiff learned that she was pregnant in February, 2010. (*Exhibit B -* Depo. of Clark p. 83).  Shortly thereafter, a parent approached Amber Miller, the Director of Admissions, regarding Plaintiff's pregnancy. (*Exhibit A -* Depo. of Miller p. 6).  The parent informed Miller that they did not want their child in Plaintiff's classroom because of the effects of any extended leave. (*Exhibit A -* Depo. of Miller p. 8) (*Exhibit C -* Depo. of Glasgow p. 69).

14.     Miller, who was unaware of the pregnancy mentioned the incident to Plaintiff, who then informed Miller that she was pregnant. (*Exhibit B -* Depo. of Clark p. 88).  Plaintiff also indicated that it was her intent to take maternity leave from October, 2010, until January, 2011.[1] (*Exhibit A -* Depo. of Miller p. 58) (*Exhibit C -* Depo. of Glasgow p. 43).

---

[1] Although Plaintiff claims that an employee made the comment that her announcement was going to be a problem, she also testified that she never informed anyone about the comment. (*Exhibit B -* Depo. of Clark p. 95).

15.     When Plaintiff's pregnancy was announced, parents became worried about the continuity of the class.[2] (***Exhibit C -*** Depo. of Glasgow p. 10) (***Exhibit A -*** Depo. of Miller pp. 31-32, 35).

16.     Plaintiff was observed to have some difficulty in the management of her classroom and she became distracted after she became pregnant. (***Exhibit E -*** Depo. of Kroger pp. 14, 16-18).

17.     Parents had also expressed concerns with her teaching methods. (***Exhibit A -*** Depo. of Miller pp. 31, 36-44).

18.     Plaintiff testified that no one at the school treated her differently after she told them about her pregnancy and intention to leave. (***Exhibit B -*** Depo. of Clark p. 92).

19.     The contract that was in place did not change at all after the announcement. (***Exhibit B -*** Depo. of Clark p. 116).

20.     Plaintiff did not experience any reduction in pay or hours. (***Exhibit B -*** Depo. of Clark pp. 116-117).

21.     At about the same time as the announcement, Plaintiff approached Donna Romaine, the acting campus coordinator, and inquired about the details of the campus coordinator position. (***Exhibit B -*** Depo. of Clark p. 118).

22.     Austin Montessori believed that Plaintiff desired the position of campus coordinator based on Plaintiff's conversation with Donna Romaine. (***Exhibit F -*** Depo. of Oriti pp. 6-7) (***Exhibit D -*** Depo. of Goertz p. 8) (***Exhibit C -*** Depo. of Glasgow p. 33).

23.     Austin Montessori decided to offer Plaintiff the job as campus coordinator and arranged a meeting with Plaintiff to make the offer. (***Exhibit A -*** Depo. of Miller p. 11).

---

[2] Miller had requested that Plaintiff postpone spreading the news of her pregnancy so that a uniform announcement could be made to the parents so the parents would be treated equally. (***Exhibit A -*** Depo. of Miller p. 23).

24.     It was believed that the offer of the position of campus coordinator to Plaintiff was a win-win situation, because Plaintiff could continue with all of her pay and benefits with more flexible hours and gain exposure and experience in the system. (***Exhibit A -*** Depo. of Miller p. 62).

25.     The reassignment would give Plaintiff the leave she requested and the flexibility to care for the newborn upon return. (***Exhibit A -*** Depo. of Miller p. 76).

26.     Austin Montessori even offered to make arrangements so that Plaintiff could bring her baby with her upon returning to school. (***Exhibit A -*** Depo. of Miller p. 76).

27.     Miller testified that she believed that Plaintiff was going to be excited about the job offer because they believed they were giving her the job she wanted. (***Exhibit A -*** Depo. of Miller p. 12).

28.     A meeting was arranged for April 30, 2010, at which time Plaintiff was offered the position of campus coordinator for the 2010-2011 school year. (***Exhibit B -*** Depo. of Clark p. 127). However, Plaintiff expressed less excitement about the offer than was expected, and responded by stating that she wanted to think about it. (***Exhibit B -*** Depo. of Clark pp. 127, 130, 133) (***Exhibit A -*** Depo. of Miller p. 17).  Plaintiff acknowledged, however, that it was clear that everyone believed that the offer was what she wanted.  (***Exhibit B -*** Depo. of Clark p. 131).

29.     A second meeting was scheduled for May 14, 2010, so that Plaintiff could inform Austin Montessori of her decision. (***Exhibit B -*** Depo. of Clark p. 133) (***Exhibit A -*** Depo. of Miller p. 20).

30.     Plaintiff testified that, prior to the second meeting, she and her husband decided to move to Dallas. (***Exhibit B -*** Depo. of Clark p. 137).  Plaintiff confirmed that she walked into the May 14 meeting with her decision made. (***Exhibit B -*** Depo. of Clark p. 147).  The purpose of the

meeting was to notify Austin Montessori that she was not going to be returning.  (***Exhibit B -*** Depo. of Clark p. 147).

31.     During the meeting, Plaintiff announced that she had decided to move to Dallas where she was previously employed. (***Exhibit A -*** Depo. of Miller p. 25).

32.     Plaintiff indicated her excitement with her decision and conveyed her good fortune of being able to stay in her mother's rental house and send her son to a Montessori School in Dallas. (***Exhibit A -*** Depo. of Miller pp. 25, 80) (***Exhibit F -*** Depo. of Oriti p. 8).  Plaintiff claimed to be excited to have the opportunity to be a stay-at-home mom with her son which she had not been able to do previously. (***Exhibit A -*** Depo. of Miller pp. 25, 80) (***Exhibit F -*** Depo. of Oriti p. 8).

33.     It is undisputed that, at the time that Plaintiff announced that she was moving, Austin Montessori had a pending offer to renew Plaintiff's contract for the following school year as a campus coordinator. (***Exhibit G -*** Letter of Appointment and Benefit Information, 2010-2011, *Exhibit 16 to Donald Goertz's Deposition*).

34.     Three of Austin Montessori's employees testified that Plaintiff stated that she never even looked at the job offer because the decision to move to Dallas had already been made. (***Exhibit A -*** Depo. of Miller pp. 25, 80) (***Exhibit F -*** Depo. of Oriti p. 8) (***Exhibit C -*** Depo. of Glasgow pp. 56, 80).  Plaintiff testified that she could not recall if she ever looked at the job offer before announcing that she was moving to Dallas. (***Exhibit B -*** Depo. of Clark p. 153).

35.     Although Plaintiff did inquire about whether or not she would be offered a contract as a house guide, it was simply not feasible to place a house guide in a classroom who would be on leave from October to January. (***Exhibit A -*** Depo. of Miller p. 14).

36.     No one at Austin Montessori was available to take over and substitute as a house guide for Plaintiff during the time that she wanted to take leave. (***Exhibit B -*** Depo. of Clark p. 104).

37.    Plaintiff was told, however, that she could return as a house guide the following year. (***Exhibit C -*** Depo. of Glasgow p. 78) (***Exhibit B -*** Depo. of Clark p. 160).

38.    The decision on whether to reassign someone for an extended leave is dependent upon the length of the leave and the stability of the class. (***Exhibit A -*** Depo. of Miller p. 64) (***Exhibit E -*** Depo. of Kroger p. 26).

39.    Plaintiff's class was a very unstable class. (***Exhibit A -*** Depo. of Miller p. 70) (***Exhibit C -*** Depo. of Glasgow pp. 9, 12, 112).

40.    Additionally, Plaintiff, who had her child on October 6, 2010, had announced her intent to remain on leave until January, 2011. (***Exhibit B -*** Depo. of Clark p. 101).

41.    Plaintiff conceded that a leave of just six weeks at the end of a semester would be significant. (***Exhibit B -*** Depo. of Clark p. 102).

42.    Plaintiff would have been offered another contract as a house guide if she had requested a shorter span of leave. (***Exhibit A -*** Depo. of Miller p. 64).

43.    The position of campus coordinator is not a demotion from the position of house guide. (***Exhibit C -*** Depo. of Glasgow p. 112).

44.    The offer that was made to Plaintiff did not involve any reduction in salary or benefits even though the job provided greater flexibility and freedom to care for a newborn. (***Exhibit A -*** Depo. of Miller pp. 77, 78) (***Exhibit C -*** Depo. of Glasgow pp. 106, 113).

45.    Plaintiff was offered free tuition for her son and arrangements were made so that Plaintiff could have her newborn baby on campus. (***Exhibit A -*** Depo. of Miller p. 78) (***Exhibit C -*** Depo. of Glasgow p. 106).

46.    Plaintiff rejected the offer and moved to Dallas when her contract ended at the end of June 2010. (***Exhibit B -*** Depo. of Clark p. 9).

47.     Plaintiff testified that the concern of Austin Montessori was not with her pregnancy, but with the length of time that she would be away from the classroom. (***Exhibit B -*** Depo. of Clark pp. 97-98).

48.     Plaintiff would have been reassigned if she had taken twelve weeks off for any reason. (***Exhibit C -*** Depo. of Glasgow p. 102).

49.     The reassignment was not considered permanent. (***Exhibit C -*** Depo. of Glasgow p. 59).

50.     Leave, for any reason, causes inconsistency and instability. (***Exhibit C -*** Depo. of Glasgow pp. 5, 62).

51.     Austin Montessori had a strict policy regarding extended leave and would not renew contracts to those employees who could not assure that they would be present in the classroom. (***Exhibit C -*** Depo. of Glasgow pp. 63, 65, 99) (***Exhibit A -*** Depo. of Miller p. 57).

52.     An extended absence would not be consistent with what had been promised and offered to the parents of the children. (***Exhibit C -*** Depo. of Glasgow p. 5).

**A.      *Standard for Traditional Motion for Summary Judgment.***

53.     The purpose of summary judgment is to pierce the pleadings, and to assess the proof, to determine whether there is a genuine need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the non-movant fails to make a sufficient showing concerning an essential element of its claim on which it will bear the burden of proof at trial then the movant is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 322-23.

**B.      *Argument & Authorities.***

54.      In order to show a prima facie case of employment discrimination, the plaintiff must show (1) that she was a member of a protected class; (2) that she suffered an adverse employment action; and (3) that nonprotected class employees were not treated similarly.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–03, 93 S.Ct. 1817, 36 L.Ed.2d 668, 677–78 (1973); *Herrin v. Newton Cent. Appraisal Dist.*, 687 F.Supp. 1072, 1074 (E.D. Tex.1987)[3]; *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex. App.–Houston [1st Dist.] 1993, writ denied).

55.      The FMLA prohibits an employer from retaliating against an employee for taking a leave of absence pursuant to the FMLA. 29 U.S.C. § 2615.  To make a prima facie case of retaliation under the FMLA, a Plaintiff must show that: (1) she was protected under the FMLA; (2) she suffered an "adverse employment action"; and (3) either (a) she was treated less favorably than an employee who had not taken FMLA leave, or (b) the adverse decision was made because she took FMLA leave.  *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir.2001).

56.      Once the plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate legitimate, nondiscriminatory reasons for any allegedly adverse or unequal treatment.  *McDonnell Douglas*, 411 U.S. at 801–03, 93 S.Ct. at 1817;  *Farrington*, 865 S.W.2d at 251.  If legitimate nondiscriminatory reasons are established by the employer, the burden then shifts back to the plaintiff to prove that the employer's articulated reasons are a pretext for unlawful discrimination.  *McDonnell Douglas*, 411 U.S. at 803–05, 93 S.Ct. 1817; *Farrington*, 865 S.W.2d at 251. Even though the burden of production shifts, the burden of persuasion remains continuously with the plaintiff. *McDonnell Douglas*, 411 U.S. at 803–05, 93 S.Ct. 1817; *Farrington*,

---

[3] State law claims under the TCHRA, generally correlate with federal law in the area of discrimination in employment. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991). Accordingly, Courts often turn to federal case law interpreting Title VII in determining the burden of proof under the TCHRA. *Id.*; *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex. App.–Houston [1st Dist.] 1993, writ denied).

865 S.W.2d at 251. Subjective beliefs of discrimination alone are insufficient to establish a prima facie case. *Montgomery v. Trinity Indep. Sch. Dist.*, 809 F.2d 1058, 1061 (5th Cir. 1987); *Farrington*, 865 S.W.2d at 251.

### 1.    *Plaintiff is unable to make a prima facie case of employment discrimination.*

57.    The only element of her discrimination action which Plaintiff can establish is the first element which requires Plaintiff to establish that she was pregnant.  This fact is not disputed. However, as to the remainder of the elements, there is no evidence to support Plaintiff's claims. Specifically, there is no evidence that Plaintiff suffered an adverse employment action as a consequence of her pregnancy.[4] Although Plaintiff may have had hurt feelings about the reassignment, an employee's subjective belief that retaliation has occurred is insufficient to raise a fact issue. *See Montgomery County*, 2007 WL 4216605, at *3-4.

58.    Moreover,  Plaintiff has not brought forward any evidence that any other employee requesting extended leave was offered a position as a house guide.  Plaintiff may be able to present evidence that a non-pregnant employee who was not requesting leave was offered a house guide position.  However employees are not similarly situated "when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001). Plaintiff admitted through deposition that she was offered a different position because of her request

---

[4] *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997), (abrogated on other grounds); *see also Flaherty v. Gas Research Inst.*, 31 F.3d 451, 456 (7th Cir. 1994) (semantic change in title and "bruised ego" did not constitute unlawful employment decision where pay and benefits remained same); *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993) (noting that unlawful employment decisions are those that have "a materially adverse" effect "in the terms and conditions of employment" and limiting materially adverse changes to those that result in termination, demotion evidenced by decrease in wage or salary, less distinguished title, material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to particular situation); *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987) (noting that reassignments without salary or work hour changes do not constitute adverse employment decisions).

for extended leave, not because of her pregnancy. Absent evidence that Plaintiff was treated differently than any other non-pregnant house guide, her claims of discrimination fail as a matter of law.

### 2. *Plaintiff was offered, but refused, an employment contract with identical, if not improved pay and benefits to accommodate her planned leave of absence.*

59.    To establish her claim of sex discrimination, Plaintiff must establish that she suffered from an adverse employment decision as a result of her pregnancy. Therefore, to establish her claims under both the FMLA[5] and the Labor Code[6], Plaintiff must establish that she suffered an adverse employment action based on either her pregnancy or leave request.

---

[5] Under the FMLA, an eligible employee is entitled to a total of twelve weeks of leave during any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). After a qualifying absence, the employer must restore the employee to the same position or a comparable position. 29 U.S.C. § 2614(a)(1).

[6] Chapter 21 of the Labor Code, Section 21.051 provides that:

An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1)    fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2)    limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

Tex. Lab. Code Ann. § 21.051 (Vernon 1996).

Section 21.106 of the Labor Code addresses sex discrimination in relation to pregnancy as follows:
(a)    A provision in this chapter referring to discrimination because of sex or on the basis of sex includes discrimination because of or on the basis of pregnancy, childbirth, or a related medical condition.

(b)    A woman affected by pregnancy, childbirth, or a related medical condition shall be treated for all purposes related to employment, including receipt of a benefit under a fringe benefit program, in the same manner as another individual not affected but similar in the individual's ability or inability to work.

Tex. Lab. Code Ann. § 21.106 (Vernon 1996).

a.      **Plaintiff did not suffer from an adverse employment decision as a result of her pregnancy**

60.      To make a prima facie case of retaliation under the FMLA, a Plaintiff must show that: (1) she was protected under the FMLA; she suffered an "adverse employment action." *Hunt*, 277 F.3d at 768.  Plaintiff has not brought forward evidence establishing that she was demoted, suffered a reduction in salary or job responsibilities, was reassigned to menial or degrading work, was subjected to badgering or harassment, or received an offer that would have made her worse off. *Brown v. Bunge Corp.*, 207 F.3d 776, 782-83 (5th Cir.2000) (affirming a grant of summary judgment for the employer even where employee had been demoted and received a reduction in job responsibilities upon his return to work). Consequently, Plaintiff cannot show that she suffered from an adverse employment action in violation of the FMLA.

61.      Plaintiff's own testimony also eliminates this element of her discrimination claim. Plaintiff testified that the actions Austin Montessori took were as a consequence of her request for extended leave, not because of her pregnancy. (***Exhibit B -*** Depo. of Clark p. 97-98). Therefore, Plaintiff's own testimony refutes the notion that any employment decision was made as a result of her pregnancy.

62.      Moreover, the actions taken by Austin Montessori were not adverse employment actions. Defendant's act of offering Plaintiff an alternative placement to accommodate her pregnancy and extended leave did  not constitute an unlawful employment practice because it did not constitute an "ultimate employment decision." A transfer or reassignment may constitute an adverse employment action in certain circumstances, such as when the lateral transfer is tantamount to a demotion.  *See Sharp v. City of Houston,* 164 F.3d 923, 933 (5th Cir. 1999) (transfer of officer from elite unit to severely worse unit was adverse under 1983 claim).  However, "as a general proposition an employer's policy of job assignment is not compensable."  *Id.*; *accord Wal-Mart Stores, Inc. v.*

*Bertrand*, 37 S.W.3d 1, 10 (Tex. App.–Tyler 2000, pet. denied) (holding that "[r]efusing an employee's request for a lateral transfer does not qualify as an adverse or ultimate employment decision like hiring, granting leave, discharging, promoting or compensating"). Moreover, "lateral transfers and rotations promoting reasonable business purposes do not rise to a level of an adverse action without a further showing of harm." *City of Austin Police Dept.*, 96 S.W.3d at 602; *accord Serna v. City of San Antonio*, 244 F.3d 479, 482 (5th Cir. 2001) ("plaintiff must show that he has suffered some serious, objective, and tangible harm as a result of his transfer"). Thus, to prevail under Texas Labor Code section 21.051, a plaintiff must demonstrate not only that there was an adverse employment action but also that the adverse employment action "adversely affected [the plaintiff]," i.e. "had a discriminatory effect on [the plaintiff]." *City of Austin Police Dept.*, 96 S.W.3d at 601. Furthermore, "personal preferences and subjective perceptions of the plaintiff are insufficient" by themselves to constitute harm or discriminatory effect. *Serna*, 244 F.3d at 482 (5th Cir. 2001) *accord Padilla v. Flying J, Inc.*, 119 S.W.3d 911, 913 (Tex. App.–Dallas 2003, no pet.) (holding that, "[a]lthough [the plaintiff] testified that she felt [her transfer] was a demotion, it was a lateral transfer with no change in pay").

63.    As established above, the summary judgment evidence clearly establishes as a matter of law that Plaintiff did not suffer from any employment discrimination based on her pregnancy. The offer of a position as a campus coordinator, with equal or superior pay and benefits, did not result in serious, objective, and tangible harm to Plaintiff. Even if Plaintiff had a subjective preference to be offered another contract as a house guide, the denial of such preference did not constitute a material objective harm such as required to establish that an employment decision was unlawful.

   **b.    Plaintiff was offered a comparable position to accommodate her leave request**.

64.     The FMLA does not require that an employer reinstate an employee to their original petition following leave. The FMLA only requires that an employer restore the employee to a comparable position. 29 U.S.C. § 2614(a)(1). Moreover, not "every unpopular employment decision following FMLA leave [is] a retaliatory adverse employment decision"; there must be some "evidence that, viewed objectively, the [employment decision] amounted to a form of discipline, a demotion, or a reduction in pay or benefits." *Hunt*, 277 F.3d at 770, 771 (holding that transfer of the plaintiff from the day shift to the night shift after she took FMLA leave was not an adverse employment action); *De minimis*, intangible changes in the employee's position do not violate the FMLA. 29 C.F.R. § 825.215(f).

65.     In *Montgomery v. Maryland*, 266 F.3d 334 (4th Cir.2001), *vacated on other grounds by* 535 U.S. 1075, 122 S.Ct. 1958, 152 L.Ed.2d 1019 (2002), for example, the plaintiff was offered a position as a secretary upon her return from leave from her position as an administrative aide. She suffered no loss in benefits. *Id.* at 336. She alleged, however, that her former position was "truly administrative" while her new position consisted of "the simplest, most menial of clerical functions: answering the phone, taking messages, typing simple correspondence, and the like." *Id.* at 341. She further alleged that her former position came with its own work area whereas her new position required her to share a room with another employee. *Id.* The Fourth Circuit held that, as a matter of law, these allegations established only a *de minimis* change in position.[7] The Fifth Circuit has held

---

[7] See also, *Oby v. Baton Rouge Marriott*, 329 F.Supp.2d 772 (M.D. La. 2004) (hotel did not violate FMLA when it offered former executive housekeeper, who was replaced during leave taken to care for sick father, equivalent position of food and beverage manager, at same pay and benefits, despite claim by former executive that new position required training, was effort of hotel to set her up to fail, and caused conflict with her religious beliefs by forcing her to sell liquor); *McBurney v. Stew Hansen's Dodge City*, 311 F.Supp.2d 811 (S.D. Iowa 2004), *affirmed* 398 F.3d 998 (fact that automobile dealership employee was transferred from night shift to day shift was not controlling of whether he was returned to "equivalent position" within meaning of FMLA following his appendectomy-related leave).

accordingly. *See e.g., Gunderson v. Neiman-Marcus Group, Inc.*, 982 F.Supp. 1231 (N.D.Tex.1997) (Employer did not violate "return to work" provision of the FMLA by reassigning employee from counter to floating sales associate position after her return to work following medical leave, where new position afforded employee pay, benefits and status equivalent to prior position).

66.    It is undisputed that Plaintiff was never fired.  In fact, although Plaintiff's contract came to an end after Plaintiff announced her pregnancy, she was offered another contract with equal pay and benefits.  The newly offered position was not a demotion, and came with additional benefits, such as the ability of Plaintiff to bring her newborn to work with her.  It also allowed for flexibility and leave for the care of a newborn.

67.    The position offered Plaintiff was a comparable position in pay and benefits. Any differences between the position of House Guide and Campus Coordinator were *de minimis*. Moreover, the reassignment was planned to last only for the school year affected by the planned leave. Therefore, there could be no negative consequences resulting from the assignment, such as loss of advancement or career opportunities. As a matter of law, Plaintiff did not suffer from termination or a failure to reassign to a comparable position as defined by the FMLA.

### 3.    *Plaintiff was treated the same as any teacher planning to take an extended leave of absence for any purpose*.

68.    The summary judgment evidence also precludes recovery for Plaintiff's allegations of Labor Code violations because it establishes that Plaintiff was not treated any differently than any other similarly situated employee. In order to show a prima facie case of employment discrimination, plaintiff must show that she was treated differently than a similarly situated nonprotected class employee. *McDonnell Douglas*, 411 U.S. at 801-03, 93 S.Ct. 1817; *Herrin*, 687 F.Supp. at 1074; *Farrington*, 865 S.W.2d at 251. Restated, to establish her claim, Plaintiff must show that there was another non-pregnant employee who had announced an intention to take three months of leave

during a school semester and who was offered a contract for a teaching position for the impacted school year. In this case, the opposite was established.

69.     Plaintiff has not identified any other house guide who had announced their intention to take a three month leave of absence during the school semester and who, nonetheless, was offered a contract as a house guide during the year of the intended leave. In fact, Austin Montessori had decided not to renew contracts in the past to employees who could not commit to being present in the classroom when faced with injury or illness. (***Exhibit C -*** Depo. of Glasgow p. 63, 65). It was established that the same treatment would have been applied for a leave based on military service or an extended injury. (***Exhibit C -*** Depo. of Glasgow p. 99). Miller testified that if Plaintiff had stated that she needed twelve weeks off for back surgery, she would have been reassigned in the same manner. (***Exhibit A -*** Depo. of Miller p. 57).

70.     There was one prior occasion where a house guide took maternity leave for a four to five week period over the holidays. (***Exhibit A -*** Depo. of Miller p. 71) (***Exhibit C -*** Depo. of Glasgow p. 64, 67). The absence was determined to be very disruptive to the development of the children. (***Exhibit A -*** Depo. of Miller p. 71) (***Exhibit C -*** Depo. of Glasgow p. 64, 67). No house guide had been offered a contract where leave for any purpose exceeding six weeks had been requested during a semester. Since no similarly situated individual was offered a position as a house guide, Plaintiff cannot establish a prima facie case of discrimination.[8]

---

[8]"Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (footnote omitted). "Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical.'" *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008) (*citing Ysleta Indep. Sch. Dist.*, 177 S.W.3d at 917). "The situations and conduct of employees is not nearly identical 'when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer.'" *Id.* (*citing Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)).

#### 4.    *Austin Montessori had a legitimate non-discriminatory reason for offering Plaintiff a contract or the position of campus coordinator.*

71.    Even if a plaintiff establishes a prima facie case of discrimination, a defendant remains entitled to summary judgment if there is a nondiscriminatory reason for the adverse employment action and the plaintiff cannot produce sufficient evidence that the defendant's reason was simply pretextual. The employer bears only a burden of production, not of persuasion when tendering its nondiscriminatory reason for discharging the plaintiff. *McKinney v. Tex. Dep't Transp.*, 167 F.Supp. 2d 922, 925 (N.D. Tex. 2001).  Here, it is clear and undisputed that Austin Montessori had a legitimate and non-discriminatory reason for offering Plaintiff a position as a campus coordinator instead of as a position as a house guide.

72.    All witnesses and parties to this action agree that the focus of the Montessori system is to provide what is best for the children. (***Exhibit B -*** Depo. of Clark pp. 50, 100) (***Exhibit C -*** Depo. of Glasgow p. 101).  It is also fully established, even through Plaintiff's own testimony, that extended leaves of absence by a house guide are not in the best interest of the children. (***Exhibit B -*** Depo. of Clark p. 49) (***Exhibit D -*** Depo. of Goertz p. 8) (***Exhibit C -*** Depo. of Glasgow p. 5) (***Exhibit A -*** Depo. of Miller p. 59).  Indeed, it was shown that an extended absence on the part of a house guide negatively effects the progress and development of the children. (***Exhibit A -*** Depo. of Miller p. 60, 68) (***Exhibit E -*** Depo. of Kroger p. 26-27). Therefore, it was the policy of Austin Montessori to offer an alternate position in the school to any house guide planning an extended leave for any reason such that the house guide's absenteeism would not negatively impact the children. (***Exhibit D -*** Depo. of Goertz p. 28) (***Exhibit A -*** Depo. of Miller p. 52).

73.    Austin Montessori disputes any assertion that Plaintiff has established a prima facie case of discrimination.  However, even if Plaintiff met her threshold burden, Austin Montessori remains entitled to summary judgment because Austin Montessori had produced undisputed

summary judgment evidence that it had a legitimate non-discriminatory reason for offering Plaintiff a position as a campus coordinator. Specifically, if Plaintiff were allowed to take leave from October to January, the children in her classroom would be negatively effected and impacted, and Austin Montessori could not provide the service promised to the children and parents. This legitimate, non-discriminatory reason is undisputed and overcomes Plaintiff's claims of discrimination as a matter of law.

74.    The dispositive evidence in this case is uncontroverted. Plaintiff was offered a job for equal or superior pay and benefits for the school year for which she requested leave. The offered reassignment was necessary to preserve the quality of the school program. Plaintiff rejected the offer. Under the facts of this case, Austin Montessori is entitled to summary judgment as a matter of law.

### 5.    *Plaintiff has not shown that Austin Montessori's reason for offering Plaintiff a position as a House Guide was pretextual.*

75.    As shown herein, Plaintiff has not established a prima facie case of discrimination. However, even if Plaintiff could establish her claims, Austin Montessori would still be entitled to summary judgment because Austin Montessori has established a non-discriminatory reason for offering Plaintiff a position as a campus coordinator. Plaintiff has not brought forward any evidence that Austin Montessori's reason for offering Plaintiff a position as a campus coordinator was pretextual

76.    Proving "pretext for discrimination" requires the plaintiff to show "both that the reason for the allegedly improper action was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2751, 125 L.Ed.2d 407 (1993). Specifically, a plaintiff must "show that discrimination was a motivating factor in an adverse employment decision." *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 482 (Tex. 2001). An employer is entitled to summary judgment if the plaintiff creates only a weak issue of fact as to

whether the employer's reason was untrue. *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097; *see also Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir.1996), *abrogated on other grounds by Reeves*, 530 U.S. 133, 120 S.Ct. 2097 (determining the propriety of a summary judgment by viewing the evidence "as a whole").

77.     Here, Plaintiff has not alleged that Austin Montessori's stated reason for offering her a position as campus coordinator was pretextual.  In fact, Plaintiff's own testimony establishes that Austin Montessori acted at all times with the best interest of its students in mind.  Absent some evidence that Austin Montessori acted with discriminatory intent as opposed to acting in line with the best interest of its students, Plaintiff's claims fail as a matter of law and Austin Montessori is entitled to summary judgment.

### V.  MOTION FOR PARTIAL SUMMARY JUDGMENT

78.     Austin Montessori believes that it is entitled to summary judgment on all of Plaintiff's claims.  However, in the event that any portion of this motion is denied, Austin Montessori requests and reserves its rights to partial summary judgment on any claim precluded under the theories set forth in Austin Montessori's traditional summary judgment motion.  Additionally, Austin Montessori requests and reserves its rights to partial summary judgment on any claim for which Plaintiff fails to produce evidence.

WHEREFORE, PREMISES CONSIDERED, Austin Montessori respectfully requests that this Court grant its traditional and no-evidence motions for summary judgment.  In the alternative, Austin Montessori requests partial summary judgment on any claims that are barred as a matter of law or for which Plaintiff fails to produce admissible summary judgment evidence. Austin Montessori seeks any further relief to which it may be entitled.

Respectfully submitted,

COKINOS, BOSIEN & YOUNG
10999 West IH-10, Suite 800
San Antonio, Texas 78230
(210) 293-8700 (Office)
(210) 293-8733 (Fax)

By:_____*/s/ Stephanie O'Rourke*_____
        STEPHANIE O'ROURKE
        State Bar No. 15310800

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2012, a true and correct copy of the foregoing *Defendant Austin Montessori School, Inc.'s Motion for Summary Judgment* was filed with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case files system of the court. I hereby certify that I have served the following counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*ATTORNEYS FOR PLAINTIFF*
        Russell Scott Cook
        Melissa A. Jacobs
        THE COOK LAW FIRM
        919 Congress Avenue, Suite 1145
        Austin, Texas 78701

        _____*/s/ Stephanie O'Rourke*_____
        STEPHANIE O'ROURKE