# Exhibit B

CAROLINE CLARK                                    September 16, 2011

Page 1

CAUSE NO. D-1-GN-11-000096

| | | |
|---|---|---|
| CAROLINE CLARK | ) | IN THE   DISTRICT   COURT |
| Plaintiff(s), | ) | |
| VS. | ) | 419TH JUDICIAL DISTRICT |
| AUSTIN MONTESSORI SCHOOL, INC., | ) | |
| Defendant(s). | ) | TRAVIS   COUNTY,   TEXAS |

*********************************************************

ORAL AND VIDEOTAPED DEPOSITION OF

CAROLINE CLARK

SEPTEMBER 16, 2011

*********************************************************

ORAL AND VIDEOTAPED DEPOSITION of CAROLINE

CLARK, produced as a witness at the instance of the

Defendant, and duly sworn, was taken in the

above-styled and numbered cause on the 16th day of

September, 2011, from 10:48 a.m. to 4:15 p.m., before

Dicie Lee Eytcheson, CSR in and for the State of

Texas, reported by machine shorthand, at the offices

of THE COOK LAW FIRM, 919 Congress Avenue, Suite 1145,

Austin, Texas 78701, pursuant to the Texas Rules of

Civil Procedure and the provisions stated on the

record or attached hereto.

Kim Tindall & Associates, Inc. 645 Lockhill-Selma, Suite 200      San Antonio, Texas 78216
Phone (210) 697-3400                        Fax (210) 697-3408

4fceefd1-91c4-44c9-996b-2cac908dd802

CAROLINE CLARK                                    September 16, 2011

Page 2

A P P E A R A N C E S

FOR THE PLAINTIFF(S):   CAROLINE CLARK

        MS. MELISSA A. JACOBS
        THE COOK LAW FIRM
        919 Congress Avenue, Suite 1145
        Austin, Texas 78701

FOR THE DEFENDANT(S):   AUSTIN MONTESSORI SCHOOL, INC.

        MR. W. PATRICK GARNER
        COKINOS, BOSIEN & YOUNG
        Four Houston Center
        1221 Lamar Street, 16th Floor
        Houston, Texas 77010

THE VIDEOGRAPHER:

        JESSE STEEDLE

ALSO PRESENT:

        MR. STEVE SUTTLES
        MS. DAWN GLASGOW

                    *   *   *   *   *   *

CAROLINE CLARK                                    September 16, 2011

Page 3

INDEX

PAGE

Appearances ............................      2

CAROLINE CLARK
     Examination by Mr. Garner ...........      5

Changes and Signature ...................    212

Reporter's Certificate ..................    214


E X H I B I T S

PAGE

NO.    DESCRIPTION

21     Letter from D. Goertz to
       Parents, 1/12/05, AMS000185              35

22     E-mail from C. Aguilar to
       D. Glasgow, 3/7/08, AMS000186            43

23     Correspondence from. D. Goertz
       to C. Clark, 4/24/08, AMS000188          45

24     Promissory Installment Note, 8/13/09     67

25     Letter from C. Clark to Families of
       Laurel Cottage, 5/24/10, P076           112

26     Letter from C. Clark to Families
       of Laurel Cottage, P085                 113

27     Letter of Appointment and Benefit
       Info, 2010-2011, AMS000228-AMS000229    145

28     E-mail Correspondence, 3/3/10, AMS000227 164

29     Employment Application, P080-P082       167

CAROLINE CLARK                                    September 16, 2011

Page 4

30    Offer of Employment, East Dallas
      Community Schools, 4/29/11, P084                    179


                    REQUESTED DOCUMENTS/INFORMATION

NO.    DESCRIPTION                                          PAGE

1      Offer of Employment letter for
       parent educator position at
       East Dallas Community Schools                        180



                        *    *    *    *    *

Kim Tindall & Associates, Inc. 645 Lockhill-Selma, Suite 200    San Antonio, Texas 78216
Phone (210) 697-3400                      Fax (210) 697-3408
                                          4fceefd1-91c4-44c9-995b-2cac908dd802

CAROLINE CLARK                                    September 16, 2011

Page 9

A.    -- December.

Q.    Okay.  Do you recall in particular when you moved to Dallas?

A.    End of June 2010.

Q.    Do you have a particular date?  Last week? Second week?

A.    About the third week.

Q.    Okay.  The house -- Is it a house on Leisure Drive?

A.    It's a condo, yes.

Q.    It's a condominium?

A.    Yes.

Q.    Did you own -- did you own or lease that condominium?

A.    We rented it.

Q.    Do you recall what date -- if you know, what date you entered into the lease for the property on Leisure?

A.    It would be the end of June.

Q.    Okay.  When did you start negotiating the lease for Leisure Drive?

A.    Negotiating?

Q.    Yes.

A.    Well, it was my mom's property so it was easy to get into the property.

Kim Tindall & Associates, Inc. 645 Lockhill-Selma, Suite 200     San Antonio, Texas 78216
Phone (210) 697-3400                           Fax (210) 697-3408

4fceefd1-91c4-44c9-995b-2cac908dd802

Page 49

Under the Austin Montessori School or the AMS method -- or the AMI method, I'm sorry, would you agree with me that it's important for the house guide to be present in the classroom during the school year?

MS. JACOBS:  Objection.  Form.  Leading.

MR. GARNER:  Well, it's -- it's kind of allowed.

Q.  (BY MR. GARNER)  So you can go ahead and answer.

A.  Can you repeat the question.

Q.  Okay.  Would you agree with me that under the Montessori method that it's important for the house guide to be present in the classroom during the school year?

A.  Yes.

Q.  Yeah.  And would you also agree with me that any extended amount of time away from the class could disrupt the class?

MS. JACOBS:  Objection.  Form.

A.  It would be a transition.

Q.  (BY MR. GARNER)  Okay.  Is -- is it important under the Austin Montessori method to limit the -- the transition for the children especially at that age?

A.  In Austin Montessori School, yes.

Q.  Okay.  And you knew that from your first stint

CAROLINE CLARK

at Austin Montessori School, correct?

A.    Yes.

Q.    That they wanted the house guides to be in the classroom as much as they possibly could throughout the entire school year?

A.    Yes.

Q.    Okay.   Because it's important for the children?

A.    Yes.

Q.    Would you agree with me that Austin Montessori School focuses on the children to the greatest extent possible?

A.    Yes.

Q.    I mean, they really harp on the fact that what they're doing they want everything to be in the best interest of their children?

A.    Yes.

Q.    And when I say "their children," I mean the students that come to Austin Montessori School and receive education from Austin Montessori School, would you agree with me on that?

A.    I do.   I agree.

Q.    Okay.   Did -- Prior to the incident making the basis of this lawsuit, did you have any problems with the administration of Austin Montessori School?

A.    Not that I recall.

CAROLINE CLARK                                    September 16, 2011

Page 83

it was the reaction that I received.

Q.    Okay.  Well, let's break that down.

When did you first find out you were pregnant?

A.    When did I find out?

Q.    Uh-huh.

A.    Sometime in February.  Sometime in February.

Q.    Okay.  February of 2010?

A.    Yes.

Q.    Okay.  When was the first time you told anyone at Austin Montessori School that you were pregnant?

A.    I don't remember the exact date.

Q.    Do you remember who you told?

A.    Yes.

Q.    Who did you tell?

A.    Amber and Charlotte.

Q.    Did you tell them together --

A.    They were in the same --

Q.    -- or were they separate -- were they separate instances?

A.    They were in the same room; I told them together.

Q.    Okay.  And how did the -- you say you were concerned about how they reacted.  How did they react?

A.    When I first said I was pregnant Charlotte

CAROLINE CLARK                                    September 16, 2011

Page 88

recommendations that you didn't follow of Charlotte?

MS. JACOBS: Objection. Form.

A.   I wouldn't remember.

Q.   (BY MR. GARNER)   Okay.   I mean, were there any ones that you had a problem with and said -- went to Pat Oriti and say, you know, Ms. Oriti, you know, I just don't agree with this so I'm going to keep doing what I feel is right and good for my house?

MS. JACOBS: Objection. Form.

A.   I've never done that.

Q.   (BY MR. GARNER)   Okay.   Well, so you -- so do you recall when this meeting took place where you told Charlotte and Amber Miller that you were pregnant?

MS. JACOBS: Objection. Form.

A.   I don't remember the exact date.   I don't know.

Q.   (BY MR. GARNER)   Do you remember what month it was?

A.   I don't remember if it was early Feb- -- late February or early March.   I don't remember.

Q.   Okay.   So it's my understanding based upon Charlotte Kroger's reaction you had some concerns about how you were going to be treated with relation to this pregnancy; is that your testimony?

MS. JACOBS: Objection. Form.

A.   Yes.

CAROLINE CLARK                                  September 16, 2011

Page 92

A.    If she had been consistent with her --

Q.    The way she treated you.  Did she --

        MR. GARNER:  Let strike all of this.

Q.  (BY MR. GARNER)  Okay.  Did she treat you any differently after you told her you were pregnant than she did before?

        MS. JACOBS:  Objection.  Form.

A.    No.

Q.  (BY MR. GARNER)  Okay.  Did anyone at Austin Montessori School treat you differently after you told them you were pregnant?

        MS. JACOBS:  Objection.  Form.

A.    No.

Q.  (BY MR. GARNER)  Okay.  You understood that question, right?

        MS. JACOBS:  Objection.  Form.

A.    Yes.

Q.  (BY MR. GARNER)  I mean, you understand when -- if somebody treats you differently than not, right?

A.    Yes.

        MS. JACOBS:  Objection.

Q.  (BY MR. GARNER)  Okay.

        MS. JACOBS:  Form.

Q.  (BY MR. GARNER)  Did you ever go and talk to

CAROLINE CLARK                                September 16, 2011

Page 95

or -- I was just -- I was in shock.

Q.    Okay.  Did Amber Miller react at that point in time, or did she say anything?

A.    You know, I don't remember hearing anything from her at that time or I don't remember her facial expression.

Q.    Did you ever go -- once that happened, did you ever go to Dawn Glasgow and say -- tell Dawn what happened?

A.    No.

Q.    Did you ever go to Don Goertz and let him know how Charlotte Kroger reacted or what Charlotte Kroger said?

A.    No.

Q.    Did you tell anybody?

A.    I -- I told my husband.

Q.    Okay.  And how did your husband react?

A.    He was -- he was upset.

Q.    Okay.  Did he suggest you go talk to somebody at Austin Montessori School about how Charlotte Kroger reacted?

A.    No.

Q.    I mean, did you complain to anybody at Austin Montessori School whether in the administration side or the pedagogical side about Charlotte Kroger's reaction

CAROLINE CLARK                                September 16, 2011

Page 97

about my taking leave to go to the -- to my -- my gynecologist.

Q.    Okay.  Did she tell you why she had a problem with you leaving?

A.    She said that the timing wasn't -- wasn't great.

Q.    The timing in what way?

A.    The appointment.  My doctor's appointment.

Q.    Like the time of the day that you had to --

A.    The --

Q.    -- be going?

A.    The time of the day, yes.

Q.    Okay.  I mean, you had left work in many different instances before that for other doctor appointments, correct?

A.    I was -- I had to take care of my son when he had RSV, yes.

Q.    Okay.  And was it -- did Dawn Glasgow say that she had concerns about you leaving the classroom at that time?

A.    I didn't -- No, she didn't.

Q.    Okay.  So you think that Dawn Glasgow was saying that she had a problem with you going to your OB/GYN because you were pregnant or just the fact that you were going to be away from the classroom?

CAROLINE CLARK                                  September 16, 2011

Page 98

A.    I think the fact that I was going to be away from the classroom.

Q.    I'm going to hand you what's marked as Exhibit 1 to the previous depositions.

Have you seen this document before?

A.    Yes.

Q.    Okay.  And for the record, it's designated AMS000219; it's dated March 26th, 2010.

Would you agree with me that this is Donald Goertz's notification to the parents that you're pregnant?

A.    Yes.

Q.    Okay.  And is there anything within this letter that expresses concern about you being pregnant?

MS. JACOBS:  Objection.  Form.

A.    What is the question again?

Q.    (BY MR. GARNER)  Well, does this sound like the people at Austin Montessori School are upset that you're pregnant?

A.    No.

Q.    Okay.  I mean, in fact, the first line says that it's exciting news that you're pregnant, correct?

A.    Correct.

Q.    And it says that you're expecting your baby in October; is that correct?

Page 100

that doesn't make sense that Don Goertz would be sending a notice to all of the parents that you're pregnant and due in October if you hadn't told anybody that you were due in October; would you agree with me on that?

A.   Yes.

Q.   Okay.  Now, in the second paragraph of Exhibit No. 1 it says, "We are working now to create a plan that will allow Caroline the opportunity to spend time with her new baby as well as provide the best arrangement for the children of Laurel Cottage."

Would you agree with me that Austin Montessori School always had the best interests of the children at heart?

MS. JACOBS:  Objection.  Form.

A.   Yes.

Q.   (BY MR. GARNER)  Okay.  Excuse me.

Did you ever tell anybody at Austin Montessori School that you wanted to take some time off after you had your child, your second child?

A.   Did I tell anybody that I wanted to take some time off?

Q.   Yes?

A.   Yes.

Q.   Okay.  Who did you tell?

A.   Amber and Dawn.

CAROLINE CLARK                          September 16, 2011

Page 101

Q.    Okay.  And do you recall how long you told them that you wanted to take off?

A.    No.

Q.    Okay.  Do you -- it -- Would you dispute the fact that they contend you told them that you wanted to take twelve weeks off?

A.    I would dispute that.

Q.    Okay.  So you never intended to take twelve weeks off?

MS. JACOBS:  Objection.  Form.

A.    I never did.

Q.    (BY MR. GARNER)  Okay.  Did you ever tell anybody at Austin Montessori School how much time you wanted to take off after the birth of your second child?

A.    Well, I wanted to return in -- in the new year in January.

Q.    Okay.  So if you're due in October, do you recall when you were due in October?

A.    The due date was October 27th.

Q.    Okay.  When did you actually have your second child?

A.    October 6th.

Q.    October 6th?

A.    Yes.

4fceefd1-91c4-44c9-995b-2cac908dd802

CAROLINE CLARK                                September 16, 2011

Page 102

Q.    And if you had taken off from October 6th until the end of January how many weeks would that be?

A.    Four --

Q.    Eleven weeks?

MS. JACOBS:  Objection.  Form.

Q.  (BY MR. GARNER)  Is that about right?

A.    Well, there's two weeks -- two and a half weeks in December, and then two, three days in November so I would have to calculate.  So -- so three weeks in October, three weeks of November -- six -- about eight weeks.

Q.    (BY MR. GARNER)  Eight weeks?

A.    (Nods head.)

Q.    Okay.  Would you agree with me that a house guide being gone for eight weeks towards the end of a semester would be a disruption to the class?

A.    It would be a -- a change, a big change, a transition.

Q.    And would you agree with me that changes and transitions for that age group can be not beneficial to the children?

A.    But it can be a great learning experience as well.

Q.    Okay.  Is that a "Yes" or a "No" to my question?

Kim Tindall & Associates, Inc. 645 Lockhill-Selma, Suite 200    San Antonio, Texas 78216
Phone (210) 697-3400                          Fax (210) 697-3408

4fceefd1-91c4-44c9-995b-2cac908dd802

CAROLINE CLARK                                    September 16, 2011

Page 104

MR. GARNER:  That doesn't answer my question so I'm going to object to nonresponsive.

Q.   (BY MR. GARNER)  Did anybody at Austin Montessori School -- was there a licensed house guide that was ready to take over your class at that time period?

A.   No.

MS. JACOBS:  I don't want to interrupt you; but it's almost 1:00.  If you're going to go for much longer I'm going to need a short lunch break.

MR. GARNER:  Okay.

MS. JACOBS:  Is there any time that you want to take it that's convenient for you?

MR. GARNER:  What time is it now?

MS. JACOBS:  It's 12:50.

MR. GARNER:  Oh, it's 12:50?  Yeah.  Let's go ahead and take a break.  Let's go off the record we'll take a -- how long do you need?

MS. JACOBS:  I mean, I -- I brought something, so 20, 30 minutes.

MR. GARNER:  Ms. Clark, how much do you need?

THE WITNESS:  Twenty, 30 minutes is --

MR. GARNER:  Thirty minutes?

THE WITNESS:  Yes.

CAROLINE CLARK                                    September 16, 2011

Page 116

A.    No.   For less than two years.

Q.    Less than two years.

Okay.   And what -- what did she say after that?

A.    I think at that point she asked me what my plans were.

Q.    Okay.   And what do you recall telling Ms. Glasgow and Ms. Miller?

A.    As far as I remember, I think I said, "The baby's due in October.   I'd like to come back in the new year."

Q.    Okay.   Anything else that you told them at that time?

A.    I -- I remember saying -- you know, saying something to the effect that I -- I wasn't even -- I don't have all of the particular details yet; because I'm just trying to get over my morning sickness.   I was very ill at that time.

Q.    Uh-huh.   Anything else?

A.    That's -- that's what I remember from how that meeting started.

Q.    Okay.   Did they discuss anything that would affect the -- the rest of your contract for that year?

A.    Not for that year, no.

Q.    Okay.   They didn't reduce your hours or

anything like that for the rest of the year?

A.   No.

Q.   Okay.

A.   Not for that school year anyway.

Q.   Okay.  And after you told Ms. Glasgow and Ms. Miller that you wanted to take time off after the birth of your child and wanted to come back the next year, how did they respond?  What did they say?

A.   Say that again.  It --

Q.   Well, after you told Ms. Glasgow that you wanted to -- you were due in October and that you wanted to come back at the beginning of the next semester, after the new year, what did they tell you?

A.   To that statement I don't remember their response.  It -- it started to be -- all I remember now is they were asking me about the campus coordinator position.

Q.   Okay.  And what -- how did that conversation strike up?

A.   I -- I think they said, We heard you were interested in the campus coordinator position.

Q.   And that's a true statement, correct?

A.   What do you mean by that?

Q.   Well, hadn't you talked to someone earlier about the campus coordinator position?

CAROLINE CLARK                          September 16, 2011

Page 118

A.    I was curious about the campus coordinator position.

Q.    Okay. And who was the campus coordinator position that you talked to about the campus coordinator position?

A.    Donna Romine. Donna Romine.

Q.    Romine?

A.    Yes.

Q.    Do you know how to spell that -- her last name?

A.    R-O-M-I-N-E.

Q.    Okay. And she was the campus coordinator for the --

A.    Austin.

Q.    -- Austin Montessori School?

A.    Yes.

Q.    And as a campus coordinator do you stay in one particular age group or do you do it for the entire school?

A.    I'm not really clear as to her -- as what her -- to what her position was; but I think, in general, it was wherever she was needed she would be placed.

Q.    Okay. When you -- Do you recall when you talked to Donna about the campus coordinator position?

A.    I -- I don't know, no.

Kim Tindall & Associates, Inc. 645 Lockhill-Selma, Suite 200    San Antonio, Texas 78216
Phone (210) 697-3400                    Fax (210) 697-3408

4fceefd1-91c4-44c9-995b-2cac908dd802

CAROLINE CLARK                                    September 16, 2011

Page 127

essentially a new job; every year is a new contract, right, we've already discussed that?

MS. JACOBS: Objection. Form.

A.    Every year is a new contract, yes.

Q.    (BY MR. GARNER)  Okay.  And you're not guaranteed an -- a position for the next year, are you?

A.    I guess not.  I don't know.

Q.    Okay.  At that time did they say that they were not going to renew your contract to be a house guide?

And I -- I want you to think about how I'm phrasing that question; because it's a very specific question.

My question is:  You -- at that time on April 30th did they tell you that they were not going to allow you to come back as a house guide?

A.    Yes.

Q.    Okay.  So when -- it's my understanding, based upon the testimony that's occurred thus far, on April 30th that Dawn Glasgow and Amber Miller left it with you to think about it; is that correct?

MS. JACOBS: Objection. Form.

A.    What -- what do you mean?  Think about what?

Q.    (BY MR. GARNER)  About the campus coordinator position and the house guide position, what you wanted

CAROLINE CLARK                                    September 16, 2011

Page 130

Q.   And I'm tying to find out as much detail in your -- in your understanding of what happened at that meeting; and it's my understanding that at that meeting they came in and they -- you -- you think that they said, You can't come back as a house guide --

MS. JACOBS:  Objection.

Q.   (BY MR. GARNER)   -- is that right?

A.   They said that the position was not available to me, yes.

Q.   Okay.  As a house guide?

A.   Yes.

Q.   And they wanted to offer you a campus coordinator position?

A.   Yes.

Q.   Okay.  But they were going to give you time to think about it?

MS. JACOBS:  Objection.  Form.

A.   Yes.

Q.   (BY MR. GARNER)  Okay.  What else in your recollection occurred at this meeting?

A.   I -- I -- I was just very emotional and very tearful.  That's really what I can remember at the moment; that I was just very upset at that time.

Q.   Okay.  And it's your testimony here today that they did not talk to you about the campus coordinator

CAROLINE CLARK                                    September 16, 2011

Page 131

position and what it did?

A.    Not specifically, no.

Q.    Okay.  They didn't talk about the duties and responsibilities of a campus coordinator?

A.    I don't remember that, no.

Q.    Did they talk about how you were going to be still a teacher; you just weren't going to be a house guide?

MS. JACOBS:  Objection.  Form.

A.    I don't remember that.

Q.    (BY MR. GARNER)  Okay.  Do you recall anything else that happened at this meeting?

A.    I remember I explained that I was curious -- I asked Donna Romine out of curiosity.

Q.    About the campus coordinator position?

A.    Yes.

Q.    Okay.  And how did they respond?

A.    You know, there was a lot of consoling and --

Q.    Consoling?  What do you mean?

A.    Well, I was tearful, so, you know, they said -- they offered tissues.  You know, they said, "Sorry.  I thought this is what you wanted."

Q.    Okay.  And -- and why do you think they said, "Sorry.  We thought this is what you wanted"?

A.    I -- I don't know.  I guess it would be because

CAROLINE CLARK                                  September 16, 2011

Page 133

MS. JACOBS: Object. Form. I'm sorry. I need to strike that objection.

A.   I was never told that.

Q.   (BY MR. GARNER) And but you closed the meeting by saying you wanted to think about it and consider the campus coordinator position?

A.   Yes.

Q.   Okay. And as a result of that there was another meeting; was there not?

A.   Yes.

Q.   And when was that meeting; do you recall?

A.   Two weeks after. About May --

Q.   Around May 14th?

A.   Yes.

Q.   Okay. Let's talk about the time period between April 30th and May 14th. You can -- did you continue teaching?

A.   Yes.

Q.   At Laurel Cottage?

A.   Yes.

Q.   Okay. Did anyone at the school treat you any differently?

A.   No.

Q.   Okay. Did the conditions of your employment change during that time period?

CAROLINE CLARK                                    September 16, 2011

Page 137

MS. JACOBS:  Objection.  Form.

A.  Talked about what, please?

Q.  (BY MR. GARNER)  About the campus coordinator position or your position as a house guide for the next year.

A.  Yes.

Q.  Okay.  And the next meeting that occurred was May 14th, 2010, right?

A.  Yes.

Q.  In that conversation with your husband, before that conversation with Dawn and Amber on May 14th, did you and your husband talk about moving to Dallas?

A.  Ask me that question again.

Q.  Prior to the second meeting did you and your husband discuss moving back to Dallas?

A.  Before May 14th?

Q.  Yes.

A.  Yes.

Q.  Okay.  And was that because you believed that Austin Montessori School was not going to allow you to be a house guide or was that for some other reason?

A.  It was for some other reason.

Q.  What reason was that?

A.  I felt that they were not going to be supportive of my pregnancy.

CAROLINE CLARK                                    September 16, 2011

Page 147

Q.    When you walked in on May 14th, 2010, you had -- you and your husband had made the decision that you were moving to Dallas, correct?

A.    Yes.

Q.    Okay.    And that is prior to anyone telling you that you weren't coming back as a home guide and the only thing available to you was campus coordinator position?

MS. JACOBS:    Objection.    Form.

A.    Repeat that question.

Q.    (BY MR. GARNER)    Okay.

A.    Can you break this down, please.

Q.    All right.    I'm going to -- I'm going to put it to you this way:    Is it true or not, okay, on May 14th, 2010, you walked into that meeting knowing that you and your husband and Austin and your family were moving to Dallas?

A.    Yes.

Q.    And it was your intention walking into that May 14th meeting that -- to notify Austin Montessori School that you were not going to return as an employee of Austin Montessori School?

A.    Yes.

Q.    Regardless of what position you were in --

A.    No.

CAROLINE CLARK                                    September 16, 2011

Page 153

first thing that came -- Strike that.  Because it's a matter of timing.  The --

Let me ask it to you this way:  If Dawn Glasgow and Amber Miller testify in their deposition that you told them that you and Adam had decided that y'all were moving back to Dallas before you looked at that offer letter, would you dispute that?

A.    Before -- I don't remember if I looked at this first or if I made the announcement.

Q.    Okay.  Would you agree with me that you told Dawn and Amber that you were excited about going back to Dallas?

A.    I told them I was going back to Dallas.

MR. GARNER:  Objection.  Nonresponsive.

A.    Okay.

Q.    (BY MR. GARNER)  Would you agree with me that you told Dawn and Amber that you were excited about going back to Dallas?

A.    No.

Q.    Okay.  Would you -- So you don't agree with that?

A.    I don't.

Q.    You don't agree with me -- Well, do you agree with me that you told Dawn and Amber at that May 14th meeting that you were excited to go back to Dallas

CAROLINE CLARK                                    September 16, 2011

Page 160

A.    Not in the way that I understand how to be a Montessori teacher.

Q.    Okay.  Did anyone tell you that once your leave was over with that you would not be able to return as a home guide?

A.    What do you mean by that?

Q.    Did anyone tell you that once you came back in January of -- whenever that was going to be -- did they tell you that you would not be able to return as a home guide?

MS. JACOBS:  Objection.  Form.

A.    No.

Q.    (BY MR. GARNER)  Okay.  I'm going to hand you what has been previously marked as Exhibit No. 4. This is an e-mail of May 24th, 2010, which is the same date that the notice to the families went out.

Have you seen this before?  It's from Dawn Glasgow to Amber Miller?

A.    Yes.

Q.    And it says, "Get Caroline to review"?

A.    Yes.  I've seen this before.

Q.    Okay.  Is this part of the edits that Austin Montessori School proposed for the notice that went out that you eventually approved?

A.    I believe this was a cover letter to my letter.

CAROLINE CLARK                                September 16, 2011

Page 214

CAUSE NO. D-1-GN-11-000096

CAROLINE CLARK                ) IN THE   DISTRICT   COURT

          Plaintiff(s),       )

VS.                           ) 419TH JUDICIAL DISTRICT

AUSTIN MONTESSORI SCHOOL,     )
INC.,                         )
                              )
          Defendant(s).       ) TRAVIS   COUNTY,   TEXAS

REPORTER'S CERTIFICATION
DEPOSITION OF CAROLINE CLARK
SEPTEMBER 16, 2011

I, Dicie Lee Eytcheson, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, CAROLINE CLARK, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript was submitted on _____ to the witness or to the attorney for the Plaintiff for examination, signature, and return to me by _____;

That the amount of time used by each party at the deposition is as follows:

          W. Patrick Garner - 03hr:40min

That pursuant to information given to the

CAROLINE CLARK                                    September 16, 2011

Page 215

deposition officer at the time said testimony was taken, the following includes counsel for all parties of record:

Melissa A. Jacobs/Russell Scott Cook, Attorney for Plaintiff(s),

W. Patrick Garner/Stephanie O'Rourke, Attorney for Defendant(s), AUSTIN MONTESSORI SCHOOL, INC.

I further certify that I am neither counsel for, related to, not employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Further certification requirements pursuant to Rule 203 of TRCP will be certified to after they have occurred.

Certified to by me this _____ day of _____, 2011.

_____
DICIE LEE HUTCHESON, Texas CSR 5392
Expiration Date: 12/31/12
Firm Registration No. 631
Kim Tindall & Associates, Inc.
645 Lockhill Selma, Suite 200
San Antonio, Texas  78216
(210) 697-3400

Kim Tindall & Associates, Inc. 645 Lockhill-Selma, Suite 200    San Antonio, Texas 78216
Phone (210) 697-3400                    Fax (210) 697-3408

4fceefd1-91c4-44c9-995b-2cac908dd802

CAROLINE CLARK                                    September 16, 2011

Page 216

FURTHER CERTIFICATION UNDER RULE 203 TRCP

The original deposition was/was not returned to the deposition officer on _____;

If returned, the attached Changes and Signature page contains any changes and the reasons therefor;

If returned, the original deposition was delivered to W. PATRICK GARNER, Custodial Attorney;

That $_____ is the deposition officer's charges to the Defendant for preparing the original deposition transcript and any copies of exhibits;

That the deposition was delivered in accordance with Rule 203.3, and that a copy of this certificate was served on all parties shown herein and filed with the Clerk.

Certified to by me this _____ day of _____, 2011.

_____
DICIE LEE EYTCHESON, Texas CSR 5392
Expiration Date:  12/31/12
Firm Registration No. 631
Kim Tindall & Associates, Inc.
645 Lockhill Selma, Suite 200
San Antonio, Texas  78216
(210) 697-3400

Kim Tindall & Associates, Inc. 645 Lockhill-Selma, Suite 200      San Antonio, Texas 78216
Phone (210) 697-3400                                    Fax (210) 697-3408

4fceefd1-91c4-44c9-995b-2cac908dd802