# Exhibit E

CAUSE NO. D-1-GN-000096

| | |
|---|---|
| CAROLINE CLARK | ) IN THE DISTRICT COURT |
|     Plaintiff, | ) |
| VS. | ) TRAVIS COUNTY, TEXAS |
| | ) |
| AUSTIN MONTESSORI SCHOOL, | ) |
| INC., | ) |
|     Defendant. | ) 419TH JUDICIAL DISTRICT |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORAL VIDEOTAPED DEPOSITION OF

CHARLOTTE KROGER

AUGUST 11, 2011

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORAL VIDEOTAPED DEPOSITION of CHARLOTTE KROGER, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on the 11th day of August, 2011, from 3:10 p.m. to 3:50 p.m., before Kimberlye A. Furr, RPR, CSR, in and for the State of Texas, reported by machine shorthand, at the offices of The Cook Law Firm, 919 Congress Avenue, Suite 1145, Austin, Texas, pursuant to the Texas Rules of Civil Procedure

A P P E A R A N C E S

FOR THE PLAINTIFF:

        Russell Scott Cook
        State Bar No. 24040724
        Melissa A. Jacobs
        State Bar No. 24046144
        The Cook Law Firm
        919 Congress Avenue, Suite 1145
        (512) 482-9556
        (512) 597-3172 Fax

FOR THE DEFENDANT:

        W. Patrick Garner
          -- and --
        Stephanie O'Rourke
        Cokinos, Bosien & Young
        Four Houston Center
        1221 Lamar Street, 16th Floor
        Houston, Texas  77010
        (713) 535-5500
        (713) 535-5533 Fax

VIDEOGRAPHER:  Bill Burns

3

I N D E X

Appearances.................................    2

CHARLOTTE KROGER

     Examination by Ms. Jacobs ..............    4

Signature and Changes.......................    32

Reporter's Certificate......................    34

Further Certification.......................    36

EXHIBITS

NO.   DESCRIPTION

6     E-mail from Ms. Kroger to Ms. Miller and
      Ms. Oriti, dated November 28, 2009       11

7     E-mail from Ms. Kroger to Ms. Oriti,
      dated April 15, 2010                     16

PAGE
MARKED

14

Goertz, and I was hired at Austin Montessori School. And I worked there until I retired in '08, in that one little classroom, Redbud Cottage, as a Children's House guide.

Q. And prior to that at the school in Providence, did you work as a guide?

A. No. That was my first time.

Q. Your first time?

A. To be a guide in a room.

Q. In Providence or at the --

A. In Providence. Providence, I began my career as a Montessori guide.

Q. So based on your work as a guide and then your work as a mentor, what did you think of Caroline as a guide?

A. I thought Caroline had potential as a guide, but I really felt that she often either lacked the time or lacked the initiative to really strive to do the things that would make better order in the room, organization in the room. She seemed skittish to me, skittish and wary. Although, we had open conversation and open dialog. We were able to talk with each other.

Q. When you say "wary," what did she seem to be wary of?

A. I think just being observed. And, I mean,

Q.   Did you ever hear her tell anyone that she didn't want to return as a guide?

A.   No.

(Deposition Exhibit No. 7 was marked for identification.)

Q.   (By Ms. Jacobs) I'm going to hand you what's been marked as Exhibit 7.

A.   Okay.  Yes.

Q.   Okay.  Can you tell me what this exhibit is?

A.   It's an e-mail between Patricia and me, from me, discussing my observations I had -- probably very closely before the e-mail was sent out -- in Laurel Cottage and my thoughts.

Q.   Can you tell me a little bit about what was going on in the classroom at this time, based on the e-mail?

A.   I can tell you impressions I remember. Caroline seemed distracted.  She seemed more and more distracted.  Children were quick to fall into disorder. I worried that lessons weren't coming quick enough, because disorder in children in a Montessori classroom is a clear indication children are not connected to their work.  So if they're connected to their work and they're doing their work one-on-one, which is what the bottom line is for us, there's order in the room, and

17

there was a lack of that.

Q. **Can you tell me what you meant in the last two sentences of the second-to-the-last paragraph?**

A. Second to the last? Yes. I just think that she was more distracted.

MR. GARNER: Can I, for the benefit of the record, since this is on video, can you read the last two sentences --

THE WITNESS: Okay.

MR. GARNER: -- in the second-to-the-last paragraph?

A. [Reading] I'm trying my best to walk lightly, to recognize her role as guide and to do so with sincerity and respect. But it is my belief that she has already left the room. Her focus is the new baby.

Because Caroline was so nervous about my presence, just being observed and -- I really -- because I'm a former guide, autonomy in a classroom is really important, so when we have to work with a mentor -- and I worked with a mentor the whole I was in the classroom -- it's not an easy task.

And so as a mentor, we walk knowing that that's their classroom but that we want to support them as much as we can. So I want to take into consideration how Caroline feels; at the same time, do

the job that I have to do, and I wanted to do it with respect for her. That's what that means.

And on the other, I think Caroline was distracted by the pregnancy. That's the sense I got, was that she wasn't on target. I could -- you can see it in a guide when she's fully there and focused. It's very clear. But you can also tell when they're not present with you and they're distracted in some way.

Q. Okay. And that --

A. And I guess I made that -- attributed it to part of that, knowing that, having two babies myself, how that can happen.

Q. So was there any other indication that your impression of her being distracted was because of the baby?

A. No. It -- the only thing is, is that she seemed more distracted than normal. She was a -- she was distracted, Caroline was, but more than normal since the baby. A lot of it I could take from how she guarded herself a lot, her hands on her tummy, and she was very, very focused on the baby. And I'm not saying that's wrong, but that's the way I saw it.

Q. Okay. And starting from approximately when did you get the impression that she was distracted?

A. Well, I can't make any dates or anything, but

leave during the 2010 to 2011 school year without having an adverse impact on the classroom?

MR. GARNER: Are you talking about her as a guide or her as a representative of Austin Montessori School or her as an observer?

MS. JACOBS: Well, in the role that she's in.

MR. GARNER: In the role that she's in?

Okay. You can answer.

A.    I can answer it based on, yes, being a mentor and a guide. Two days makes a difference on the children. It just -- there's an impact, regardless, on the children in the room.

Q.    (By Ms. Jacobs) Okay. So is there any amount of time that she could have taken as leave without having an adverse impact?

A.    No. I mean, there will be an impact, an impact on the children.

Q.    Okay. So you said "impact."

A.    It will affect the children.

Q.    So how much time before there would be an adverse impact on the children?

A.    That depends on the children and the way the room looked before she took the leave, the level of work that was going on. There are too many variations.

Q.    Okay.  Based on what you were observing at the end of the school year in May, was there -- you know, what amount of time do you think that Caroline could have taken as leave without having had an adverse impact on the classroom?

A.    I can't answer that, give it a number or anything like that, because there's so many variables. It would depend on who is in that room.  But even if they put another guide in that room, there is an impact on the children because there's a change.  These children rely on the continuity of the guide and the assistant in the room, and whether we like it or not, there's an impact when a guide has to be out.

Q.    Based on your observations of the Children's House classrooms, how do the children deal with the transition back into the classroom after the summer break?

MR. GARNER:  Objection; form.

A.    All right.  I'm going to ask you to read it again, please.

Q.    (By Ms. Jacobs) Okay.  So you've been working now as a mentor since the 2008 to 2009 school?

A.    Two years.

Q.    Two school years?

34

CAUSE NO. D-1-GN-000096

CAROLINE CLARK                        )  IN THE DISTRICT COURT
    Plaintiff,                     )
VS.                                   )  TRAVIS COUNTY, TEXAS
                                      )
AUSTIN MONTESSORI SCHOOL,             )
INC.,                                 )
    Defendant.                     )  419TH JUDICIAL DISTRICT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORTER'S CERTIFICATION
ORAL VIDEOTAPED DEPOSITION OF CHARLOTTE KROGER
AUGUST 11, 2011

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I, Kimberlye A. Furr, CSR, RPR, in and for the State of Texas, hereby certify to the following:

That the witness, CHARLOTTE KROGER, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript was submitted on August 24, 2011 to the witness or to the attorney for the witness for examination, signature, and return to me by September 13, 2011;

That the amount of time used by each party at the deposition is as follows:

Ms. Jacobs:  40 Minutes

That pursuant to information given to the

35

deposition officer at the time said testimony was taken, the following includes all parties of record:

          Ms. Jacobs, Attorney for Plaintiff
          Mr. Garner, Attorney for Defendant

     I further certify that I am neither counsel for, related to, nor employed by any of the parties in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of this action.

     Further certification requirements pursuant to Rule 203 of TRCP will be certified to after they have occurred.

     Certified to by me on this 21st day of August, 2011.

_____
Kim Furr, CSR, RPR
CSR No. 6997, Expires 12/31/11

Firm Registration No. 528
3100 West Slaughter Lane, Suite 101
Austin, Texas   78748
(512) 320-8690
(512) 320-8692 (Fax)

36

FURTHER CERTIFICATION UNDER RULE 203

The original deposition was/was not returned to the deposition officer on September 6, 2011 ;

If returned, the attached Changes and Signature page contains any changes and the reasons therefor;

If returned, the original deposition was delivered to Ms. Jacobs, Custodial Attorney;

That $249.40 is the deposition officer's charges to the Plaintiff for preparing the original deposition transcript and any copies of exhibits;

That the deposition was delivered in accordance with Rule 203.3 and that a copy of this certificate was served on all parties shown herein and filed with the Clerk.

Certified to by me on this 10th day of September , 2011.


_____
Kim Furr, CSR, RPR
CSR No. 6997, Expires 12/31/11

Firm Registration No. 528
3100 West Slaughter Lane, Suite 101
Austin, Texas  78748
(512) 320-8690
(512) 320-8692 (Fax)

32

CHANGES AND SIGNATURE

CHARLOTTE KROGER                           AUGUST 11, 2011

PAGE LINE   CHANGE                          REASON

7   17,18   particular children sometimes need support
            more than once a week          [unclear]
26   25     variables (instead of variations) [different word]

33

I, CHARLOTTE KROGER, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

*Charlotte B. Kroger*

CHARLOTTE KROGER

THE STATE OF  Texas          )

COUNTY OF  Travis          )

Before me, *Lois O'Brien*, on this day personally appeared CHARLOTTE KROGER, known to me or proved to me on the oath of            or through (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purpose and consideration therein expressed.

Given under my hand and seal of office on this day of 31, August , 2011.

LOIS O'BRIEN
Notary Public, State of Texas
My Commission Expires
October 28, 2011

*Lois O'Brien*

NOTARY PUBLIC IN AND FOR

THE STATE OF  Texas

My Commission Expires: Oct. 28, 2011