

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

KATHLEEN GOLDSMITH,
     **Plaintiff,**

-vs-
                                         Case No. A-07-CA-294-SS

MICHAEL BAKER CORPORATION and MICHAEL BAKER, JR., INC.,
     **Defendants.**

---

## O R D E R

BE IT REMEMBERED on the 26th day of December 2007 the Court reviewed the file in the above-styled cause, specifically Defendants' Motion for Summary Judgment [#35], Plaintiff's Response thereto [#43], Defendant's Reply [#46], Plaintiff's Response to Evidentiary Objections [#50] and Surreply [#51], and each party's unopposed motions for leave to file supplemental evidence [#45, 52]. The motions to file additional evidence [#45, 52] are GRANTED. Having reviewed the above-listed documents, the applicable law, and the case file as a whole, the Court DENIES summary judgment for the reasons that follow.

### Background

Plaintiff Kathleen Goldsmith began working as a part-time employee (about 24 hours per week) for the Defendant, Michael Baker, Jr., Inc. (Baker Jr.) in February 2005 as a "Planner II." Resp. Exhibit 1, Affidavit of Kathleen Goldsmith. In her role as Planner II, Goldsmith primarily performed NEPA (National Environmental Policy Act) related work, including the drafting and research of NEPA documents. *Id.* Plaintiff worked out of Baker Jr.'s Austin office, but was supervised by Robb Fishman, who worked out of the Houston office. The record establishes

Defendants' Texas offices "operate as a common labor pool." May 1, 2006 email from D. Millikan, Resp. Ex. 34.

In late 2005, Goldsmith discovered that she was pregnant. Resp. Ex. 1. Shortly thereafter, she informed the Defendants, through her supervisor, human resources personnel, and other individuals, that she was pregnant. *Id.* Goldsmith worked for the Defendants until June 26, 2006. *Id.* On June 27, 2006, Goldsmith delivered her baby and began taking leave with the company. *Id.* In addition to short term disability leave, Goldsmith requested 12 weeks of FMLA leave. *Id.* Her supervisor Don Treude of Baker Corporation indicated he would approve the 12 weeks, and Nicole Raeder of Baker Corporation sent her the necessary FMLA paperwork. *See* emails of 7/25/06–7/27/06, Resp. Ex. 30; "Claim instructions" letter, Resp. Ex. 28.

On August 4, 2006, Goldsmith came to the office, while on leave, to introduce her new daughter to her co-workers in the office. *See* Resp. Exhibit 2, Deposition of Kathleen Goldsmith, 123:1– 125:21. This was at approximately the end of Goldsmith's paid short term disability leave. *See* email of July 27, 2006, Resp. Ex. 30 (leave approved through 8/8/06). At the end of this visit, David Millikan, the Office Manager for Baker Jr.'s Austin office, took Goldsmith to his office, where he informed her that her position was being eliminated due to budgetary reasons. *Id.* According to Goldsmith, Millikan then repeated several times that the termination would give Goldsmith a chance to figure out what she wanted to do: whether to stay at home and raise the kids or return to work. *Id.* Goldsmith stated she intended to keep working after her maternity leave, and Millikan repeated that the termination would give her a chance to figure out whether she wanted to stay home or return to work. *Id.* Millikan also stated, "You aren't coming back to work for six weeks anyway," which Goldsmith took as a reference to her request for leave under the FMLA. *Id*

2

Goldsmith left under the impression that her termination was a result of her maternity leave. *Id.* The impression was strengthened when Rachel Kelso, the only other woman in the Austin office who was also on maternity leave at that time, was terminated the following Monday. *Id.* Baker Jr. asserts Goldsmith and Kelso were both terminated in a "reduction in force" (RIF) because "Baker Jr. did not foresee having sufficient work for these employees when they returned from leave." Mot. Summ. J. at 1. It is undisputed that the only Austin employees terminated as part of the RIF were pregnant women on maternity leave, though Baker Jr. asserts two male employees would also have been part of the RIF had they not voluntarily resigned previously. Millikan Affidavit, Mot. Summ. J. Ex. 1, ¶ 4. It is also undisputed that, at the time the RIF went into effect, Baker Jr. was seeking additional staffing for NEPA projects and was in fact interviewing a woman named Emily Barrett for a part time Planner II position to handle NEPA work. Resp. Ex. 13, 16, 17, and 18. Goldsmith asserts her specialty at Baker Jr. was NEPA work. Resp. Ex. 1.

Baker Jr. points out that it never actually hired Barrett or anyone else to fill a Planner II NEPA position. However, the summary judgment record includes emails indicating both that an offer for Barrett was actually drafted and that employees of Baker Jr. changed that hiring strategy in part because of concerns that hiring Barrett for a part time Planner II position might "present a problem with the layoffs we just completed." Resp. Ex. 19. The emails indicate Baker Jr. would invite Goldsmith to apply for the position in addition to Barrett, *id.*, but it appears no such invitation was issued and no job offer was made to Barrett or any other candidate after the Texas Workforce Commission began their investigation of Goldsmith's discrimination complaint..

3

Based on the facts in this record, Goldsmith sues Baker Jr and Baker for discrimination under Title VII (and Chapter 21 of the Texas Labor Code), as well as for retaliation and interference pursuant to the Family and Medical Leave Act ("FMLA"). Defendant seeks summary judgment on all claims, arguing that Goldsmith was not terminated because of her pregnancy, maternity leave, or FMLA leave, but because the Austin office was under pressure to increase its billable hours, and Goldsmith's billable "utilization" had consistently been among the lowest in the Austin office during her entire tenure. Goldsmith asserts this is pretext and further argues Millikan's statements during her termination are direct evidence of discriminatory animus with regard to her pregnancy and her FMLA leave.

**Analysis**

## I.    Summary Judgment Standard

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party. *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Both parties bear burdens of production in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). First, the moving party has the initial burden of showing there is

no genuine issue of any material fact and judgment should be entered as a matter of law. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The nonmoving party must then come forward with competent evidentiary materials establishing a genuine fact issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256–57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). However, "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

## II. "Joint" Employer

As a threshold matter, Defendant Baker asserts it cannot be liable for any of Goldsmith's employment discrimination claims because Baker did not employ her. Goldsmith was an employee of Baker, Jr., a wholly owned subsidiary of Baker. Goldsmith asserts Baker was sufficiently involved in her employment at Baker, Jr. that Baker should be regarded as a co-employer.

In the Fifth Circuit, a parent company can be regarded as a co-employer in the employment-discrimination context where there is evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 616-617 (5th Cir. 1999) (internal citations omitted). It is undisputed that Baker and Baker Jr. share common ownership and financial control. Furthermore, Baker's human resources department is responsible for Baker, Jr. employees. *See* Resp. Ex. 28–30. Plaintiff's "separation packet," which contained the details of her severance, was sent from Baker and referred throughout to Plaintiff as an employee of Baker. On

5

this record, Baker has failed to establish as a matter of law that it is not a co-employer of Goldsmith. The Court will therefore examine Goldsmith's employment discrimination claims against the Defendants as a group.

## III. Discrimination and Retaliation Analysis

Substantively, each of Goldsmith's discrimination and retaliation claims must be examined under the same legal framework. *See, e.g., Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999) (applying Title VII analysis to FMLA claims); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999) ("the law governing claims under the TCHRA and Title VII is identical"); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981) (applying *Mc Donnell Douglas* to Title VII sex discrimination claim). In order to survive an employer's motion for summary judgment on an employment discrimination claim, a plaintiff must either produce direct evidence of an employer's animus or, if direct proof is lacking, produce enough facts to prove a prima facie case of discrimination and implicate the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

## A. Direct evidence of discriminatory animus

The Fifth Circuit has explained that an employer's "'remarks may serve as sufficient evidence of . . . discrimination if the offered comments are: 1) [pregnancy] related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607-608 (5th Cir. 2007) (quoting *Brown v. CSC Logic, Inc.*, 82 F.3d 651,

6

655 (5th Cir. 1996). In this case, Goldsmith asserts Millikan, the manager of the Austin office, made comments to the effect that the termination would give Goldsmith a chance to figure out what she wanted to do: whether to stay at home and raise the kids or return to work. Resp. Exhibit 2, Deposition of Kathleen Goldsmith, 123:1– 125:21. Goldsmith stated she intended to keep working after her maternity leave, and Millikan repeated that the termination would give her a chance to figure out whether she wanted to stay home or return to work. *Id.* Millikan also stated, "You aren't coming back to work for six weeks anyway." *Id* Goldsmith asserts these comments are direct evidence that her termination was motivated by her pregnancy and maternity leave.

Defendants concede Millikan was a representative of the company with authority over the decision to terminate Goldsmith's employment, and that his comments were both pregnancy/FMLA-related and proximate in time to the termination itself. However, Defendants contend Goldsmith has failed to establish that the comments were "related to the employment decision at issue." *Arismendez,* 493 F.3d at 608. Defendants argue Goldsmith's comments "are not insults or slurs about Plaintiff's protected status . . . and accordingly, are not evidence of discrimination." Mot. Summ. J. at 13. However, "[w]hether the court found the statement to be 'offensive' or 'probably offensive' is irrelevant to the underlying motion for summary judgment because the offensiveness of the comment is not an issue in a case of employment discrimination." *Brockie v. Ameripath, Inc.*, No 3:06-CV-0185-G ECF, 2007 U.S. Dist. LEXIS 53385, 8-9 (N.D. Tex. Jul. 23, 2007). The relevant question is whether the remark at issue "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that [pregnancy leave] was an impermissible factor in the decision to terminate the employee." *Read v. BT Alex Brown, Inc.*, 72 Fed. Appx. 112, 119

7

(5th Cir. 2003) (quoting *E.E.O.C. v. Texas Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)). Defendants point out that Millikan told Goldsmith that "numbers" and budgetary concerns were the reasons for the RIF. However, his contemporaneous comments that the termination would allow Goldsmith to evaluate whether she wanted to return to work or stay home with her children could allow a jury to conclude the birth of Goldsmith's child was also a factor in the decision to include her in the RIF, and Millikan's comment that Goldsmith "would be out for another six weeks anyway" could allow a jury to conclude that Goldsmith's FMLA leave was a factor in her termination as well.[1] ""In a Title VII context, direct evidence includes any statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action." *Fabela v. Socorro Ind. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003). In the employment discrimination context, where a Plaintiff is able to produce direct evidence of discrimination, summary judgment is generally inapposite. *See Fierrros v. Texas Dep't of Health*, 274 F.3d 187, 194-95 (5th Cir. 2001).

**B. *Mc-Donnell-Douglas framework***

Even if Millikan's remarks are not accepted as direct evidence of discrimination, they are relevant to Plaintiff's circumstantial case under the *McDonnell-Douglas* burden shifting framework.

---

[1] Defendants point to *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 223 (5th Cir. 2001) in support of their argument that Millikan's comments are not direct evidence of pregnancy discrimination. In *Wallace*, the Fifth Circuit found a supervisor's comment that Plaintiff had been fired because she had been "pregnant three times in three years" was not direct evidence of discrimination only because the supervisor who made the comment had no role in Plaintiff's termination. In contrast, Millikan had a direct role in the decision to terminate Goldsmith and a jury could therefore find his comments regarding her pregnancy and FMLA leave are probative direct evidence of discrimination.

*See, e.g. EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1095 (5th Cir. 1994) ("remark evidence can be highly probative of unlawful discriminatory intent"). The *McDonnell Douglas* burden-shifting scheme creates a rebuttable presumption that a defendant unlawfully discriminated against a plaintiff if the plaintiff produces evidence establishing a prima facie case of discrimination. *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 811 (5th Cir. 1991). The Fifth Circuit has repeatedly stated "the necessary elements of a prima facie employment discrimination case are not Platonic forms, pure and unchanging; rather, they vary depending on the facts of a particular case." *Id.* (quoting *Thornbrough v. Columbus and Greenville R.R. Co.*, 760 F.2d 633 (5th Cir. 1985). If the plaintiff establishes this prima facie case, the burden of production shifts to the employer to present evidence of legitimate, nondiscriminatory reasons for its adverse decision. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the employer meets this burden, the burden of production then shifts back to the plaintiff to prove the proffered reasons for any allegedly unequal treatment are a pretext for unlawful discrimination. *Id.* at 143. Alternatively, Plaintiff may show the proffered reason is only part of a "mixed motive" and a discriminatory reason was at least in part the motivating factor behind the adverse employment action. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005). At all times, however, the plaintiff bears the burden of persuasion—that is, persuading the trier of fact the defendant intentionally discriminated against him. *Reeves*, 530 U.S. at 143.

i. **Prima Facie Case: Pregnancy Discrimination**

Defendants contend Goldsmith was terminated as part of a general reduction in force. In the context of a "reduction in force" case, Plaintiff can establish a prima facie case of discrimination by

9

showing (1) she is a member of a protected group; (2) she was adversely affected by the employer's decision; (3) she was qualified to assume another position at the time of discharge; and (4) there is sufficient evidence, either circumstantial or direct, from which a fact finder may reasonably conclude that the employer intended to discriminate in reaching the adverse employment action, or others who were not members of the protected class remained in similar positions. *See, e.g. Ortiz v. Shaw Group, Inc.*, No. 06-20983, 2007 U.S. App. LEXIS 24014 (5th Cir. October 11, 2007) (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996); *Amburgey*, 936 F.2d at 811).

Defendants assert Goldsmith has failed to establish a prima facie case of discrimination because she has not shown she was replaced by someone outside her protected class or that other employees remained in similar positions. Goldsmith has, however, produced evidence that Baker, Jr. interviewed Emily Barrett for a Planner II position similar to the one from which Goldsmith was terminated, and actually drafted an employment offer for part time work similar to the work Goldsmith performed. Emails between Baker Jr. employees show the company then changed its hiring strategy because hiring Barrett might "present a problem with the layoffs we just completed." Resp. Ex. 19. The same emails show the company considered Goldsmith qualified for the position and she could be asked to interview for it; however, the record establishes Goldsmith was never actually notified of the opening and efforts to fill the position stopped entirely. *Id.* In conjunction with the comments made by Millikan at the time of Goldsmith's discharge, this record provides circumstantial evidence sufficient to raise a material issue of fact as to whether Baker Jr. intended to discriminate in selecting only pregnant employees for the RIF. This is sufficient to establish a prima facie case in the reduction in force context. *Amburgey*, 936 F.2d at 811. [2]

---

[2] Regardless, the Fifth Circuit has explained that "there is no inherent relation between the failure to establish a prima facie case and summary judgment" in employment discrimination cases. *Id.*

## ii. Prima Facie Case: FMLA

Plaintiff has brought claims for both FMLA interference and FMLA retaliation because of her termination while on FMLA leave. Defendants assert Plaintiff was not an "eligible employee" under the FMLA. An "eligible employee" under the FMLA is an employee who has worked for at least 12 months for an employer and at least 1,250 hours of service during the previous 12-month period. 29 U.S.C. § 2611(2)(A). An "eligible employee" does not include an employee employed at a "worksite" at which her employer employs less than 50 employees if the total number of employees employed by her employer within 75 miles of that "worksite" is less than 50. 29 U.S.C. § 2611(2)(B). Defendants assert Plaintiff worked only 1,247.50 hours in the year preceding her request for FMLA leave, and further argue the Austin office of Baker Jr. is a "worksite" employing less than 50 people within a 75 mile radius

Plaintiff asserts Defendants are equitably estopped from disclaiming her eligibility for FMLA leave. An employer may be estopped from raising ineligibility as a defense on FMLA claims where (1) an employer (without intent to deceive) makes an erroneous misrepresentation to its employee that she is an eligible employee under the FMLA; (2) the employer has reason to believe the employee will rely upon that representation; and (3) the employee reasonably relies upon that representation to her detriment. *Minard v. ITC Deltacom Communications, Inc.*, 447 F.3d 352, 358-59 (5th Cir. 2006). In this case, the record shows Baker's HR personnel, acting on behalf of Baker

---

at 812. A prima facie case is necessary to establish a rebuttable presumption in the Plaintiff's favor, but "[e]ven if the plaintiff has not succeeded in meeting this burden of proof, if [s]he has raised a genuine issue of material fact, [s]he should survive summary judgment." *Id.* Here, Goldsmith has raised a genuine issue of material fact as to Baker Jr.'s motive in firing her.

Jr., represented to Goldsmith that FMLA leave was available for employees in Baker Jr.'s Austin office and Goldsmith relied on that representation in seeking 12 weeks of FMLA leave. Therefore, Defendants are estopped from arguing that Goldsmith is ineligible because she worked from the Austin "worksite." *Id.* However, the record does not reflect that any Baker or Baker Jr. personnel specifically told Goldsmith she was eligible for leave– Baker personnel merely told her what steps she needed to take to have FMLA leave approved and represented she would be approved if eligible. Therefore, Goldsmith has not established Baker is equitably estopped from denying her eligibility for FMLA leave based on her alleged failure to work the prerequisite number of hours.

Goldsmith asserts there is a material fact issue as to the number of hours she worked in the year prior to her FMLA leave request. She urges the Court to consider unrecorded hours such as "mandatory work lunches and . . . her involvement with a business organization which the Defendants encouraged her to join and for which she was paid to perform work during regular hours." Resp. at 24.

To determine if an employee has the requisite 1,250 hours of service with her employer, the FMLA expressly directs courts to examine the principles for calculating hours of service that have been established under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. 2611(2)(C); 29 C.F.R. § 825.110(c). While the FLSA itself does not explicitly set out the manner in which hours worked should be computed, the Supreme Court has enunciated a test that courts should use in making such a determination. The Court has stated that the test for determining if an employee's time constitutes working time is whether the "time is spent predominantly for the employer's benefit or for the employee's." *Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944); *Armour & Co. v. Wantock*, 323

12

U.S. 126, 133 (1944). The "predominant benefits test" is a question of fact. *Hartsell v. Dr. Pepper Bottling Co.*, 207 F.3d 269, 274 (5th Cir. 2000) (citing *Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 264 (5th Cir. 1998)). Even where "it is uncontroverted that the defendant maintained accurate records of the hours that the plaintiff actually worked," Plaintiff may establish she worked additional FMLA-eligible hours under this predominant benefits test. *Rich v. Delta Air Lines*, 921 F. Supp. 767, 775 (N.D. Ga. 1996); *see also Kosakow v. New Rochelle Radiologoy Assoc., P.C.*, 274 F.3d 706, 715-17 (2nd Cir. 2001) ("an employee must be compensated for time she works outside of her scheduled shift, even if the employer did not ask that the employee work during that time, so long as the employer 'knows or has reason to believe that [the employee] is continuing to work' and that work was 'suffered or permitted] by the employer.") (citing 29 C.F.R. § 785.11); and *Jackson v. Rite Aid Corp.*, No. 05-10329-BC, 2007 WL 2324951, at *2 (E.D. Mich. Aug. 13, 2007) (finding Plaintiff's affidavit testimony regarding unrecorded hours worked, though without testimony as to specific dates or a specific amount of time worked, counted towards Plaintiff's FMLA eligibility for purposes of defeating summary judgment on the issue).

As the issue of whether Plaintiff's claimed lunch meetings and involvement with business organizations was predominantly for Defendant's benefit (and therefore should be counted towards her FMLA eligibility) is a question of fact in this Circuit, *see Hartsell*, 207 F.3d at 274, the Court will assume for purposes of the summary judgment motion that Plaintiff has articulated a prima facie case under the FMLA. Defendant's stated nondiscriminatory reason for her termination is the financial necessity for a reduction in force and Plaintiff's consistent "under-utilization." Plaintiff asserts this stated business reason is simply a pretext and Defendants were actually motivated to fire

13

her because of her pregnancy and FMLA leave request.

### iii. Pretext

Baker Jr.'s stated business reason for Goldsmith's termination is Goldsmith was consistently under-utilized due to lack of work and the company did not forsee having enough work for her in the future. Plaintiff, however, has established that, at the time the RIF went into effect, Baker Jr. was seeking additional staffing for NEPA projects and was in fact interviewing Barrett for a part time Planner II position to handle NEPA work– a position very similar to Goldsmith's. Resp. Ex. 13, 16, 17, and 18. This evidence is sufficient to raise a material issue of fact regarding whether Baker Jr.'s asserted reason for terminating Plaintiff is pretextual. Therefore, on the record currently before the Court, summary judgment is inappropriate.

### Conclusion

In accordance with the foregoing,

IT IS ORDERED that Defendants' Motion for Summary Judgment [#35] is DENIED.

SIGNED this the **26** day of December 2007.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

14