**EXHIBIT D**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CAROLINE CLARK, | § | |
| Plaintiff, | § | CIVIL ACTION |
| | § | |
| VS. | § | NO. A-12-CA-007-SS |
| | § | |
| AUSTIN MONTESSORI SCHOOL, | § | JURY TRIAL DEMANDED |
| INC., | § | |
| Defendant. | § | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF THE CORPORATE REPRESENTATIVE

OF AUSTIN MONTESSORI SCHOOL, INC.,

DAWN GLASGOW

JULY 26, 2012

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF DAWN GLASGOW, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on the 26th day of July, 2012, from 10:00 a.m. to 4:05 p.m., before Cynthia Warren, Certified Shorthand Reporter in and for the State of Texas, reported by machine shorthand, at the offices of The Cook Law Firm, 919 Congress Avenue, Suite 1145, Austin, Texas 78701, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

Case 1:12-cv-00007-SS   Document 36-9   Filed 08/10/12   Page 3 of 14

Dawn Glasgow as Corp. Rep. - 7/26/2012

75

1  managers, the trash manager.
2       Q.   (By Mr. Cook)  Okay.  Did Mr. Carter work
3  alone?
4       A.   As far as I know.  We only contracted with him.
5  If he had other people helping him, it wasn't anything.
6       Q.   Did you have a written contract with
7  Mr. Carter?
8       A.   I never had one.  There was agreed upon, like
9  he would tell us how much he was going to charge each
10 year.  It would be per building.  I mean, that was how
11 it was estimated, I guess.
12      Q.   And when I say you have a contract, I mean has
13 the corporation ever had a contract with Calvin Carter?
14      A.   A written contract, not that I'm aware of.
15      Q.   And what services did he provide for the
16 corporation?
17      A.   He would take out the trash and mop the floor
18 and clean the bathrooms.
19      Q.   Any other services he provided?
20      A.   I mean, not that I'm aware of.  I mean, he
21 might have dusted fans or something.  I don't know.
22      Q.   Did he work on a daily basis during the work
23 week?
24      A.   Yes.
25      Q.   Did he work on the weekends?

Case 1:12-cv-00007-SS   Document 36-9   Filed 08/10/12   Page 4 of 14

Dawn Glasgow as Corp. Rep. - 7/26/2012

83

1  relative or someone come do it.  I wouldn't always be
2  aware of that, maybe the maintenance director would be.
3  He actually did have a business where he mowed lawns
4  too.  I don't know how I knew that.
5      Q.   When did he do that?
6      A.   At some period while he was working for us.
7      Q.   In 2009 or 2010?
8      A.   Yes.
9      Q.   Did Calvin Carter ever get bonuses?
10     A.   Not that I can remember.
11     Q.   Was there any way for him to earn anything more
12 than whatever the set rate was that he would get paid in
13 a month?
14     A.   Not that I remember.  I mean, no.
15     Q.   Okay.  I assume he used cleaning supplies?
16     A.   Yes.
17     Q.   Does the AMI have standards for supplies or
18 materials that are used in schools?
19     A.   No.
20     Q.   They do not?  Does AMS?
21     A.   Oh, I'm sorry, I was referring to cleaning
22 supplies.  They do have standards about materials that
23 are used.  They don't have standards about cleaning
24 supplies that are used.
25     Q.   Does AMS have standards about cleaning

Case 1:12-cv-00007-SS   Document 36-9   Filed 08/10/12   Page 5 of 14

Dawn Glasgow as Corp. Rep. - 7/26/2012

85

1  we can't use that all the time.  We'd say no, we don't
2  want to use bleach or whatever around them.
3      Q.  So you had approved materials for them to use,
4  but sometimes they would use what they wanted to; is
5  that correct?
6      A.  That's right.  That's right.
7      Q.  And on occasion if you didn't like that you
8  would tell them no, don't use that?
9      A.  Like I wouldn't tell them.  It might be the
10 maintenance director.
11     Q.  Someone would tell them we don't want you using
12 that material?
13     A.  Right.
14     Q.  Did they follow your -- the school's
15 instructions?
16     A.  Probably not.  Probably not.
17     Q.  Were they ever reprimanded or threatened with
18 not following the school's instructions?
19     A.  No.
20     Q.  Did you ever worry about health code guidelines
21 being --
22     A.  They were never violating health code
23 guidelines.
24     Q.  Okay.  Well, did the school not care that they
25 were telling them to do one thing and they were doing

Case 1:12-cv-00007-SS    Document 36-9    Filed 08/10/12    Page 6 of 14

Dawn Glasgow as Corp. Rep. - 7/26/2012

92

```
 1      A.    5:30.
 2      Q.    So he could work at the school any day after
 3  5:30?
 4      A.    Yeah, prior to the next morning.
 5      Q.    But not every day because sometimes the school
 6  had functions after 5:30; is that correct?
 7      A.    Right.
 8      Q.    And then the school would inform him you can't
 9  come in until a later time?
10      A.    No, just that either don't clean this classroom
11  because we wouldn't use the whole campus.
12      Q.    Why is Mr. Carter no longer working for the
13  company?
14      A.    He was really retiring.
15      Q.    But he was a long-term worker?
16      A.    Uh-huh.
17      Q.    Ten years for the corporation?
18      A.    Yeah.
19      Q.    Okay.
20      A.    Yes.
21      Q.    Why -- on behalf of the corporation, why does
22  Austin Montessori School, Inc. consider Mr. Carter to
23  have been an independent contractor?
24      A.    He controlled his own work.  He was the expert
25  in cleaning.
```

Case 1:12-cv-00007-SS    Document 36-9    Filed 08/10/12    Page 7 of 14

Dawn Glasgow as Corp. Rep. - 7/26/2012

96

1  and there's not any modification to it during -- little
2  to no modification, the only modification being come
3  early if you can.  And if they can't, we have to clean
4  the room.
5      Q.  So who are you talking about in that answer?
6      A.  Calvin Carter.
7          MR. COOK:  Can you read that back to me,
8  please?
9          (Reporter read previous answer.)
10     Q.  (By Mr. Cook)  If you believe there's no
11 modification and it's clearly defined up front, what
12 control does Mr. Carter have?
13     A.  He decides whether he can empty the trash, does
14 he put the tables up, does he sweep around them, does he
15 move them all over, does he -- all of the intricacies of
16 how he cleans the room he can do however he wants and to
17 the best of his ability because he's the expert in that.
18     Q.  And why is that more control over what he's
19 able to do than what guides can do?
20     A.  Guides, it just is.
21     Q.  Why?
22     A.  Because the way guides operate in the room, the
23 way they work in the room is -- reflects a certain
24 interpretation of their AMI training and the school has
25 the right to have them operate in a way that reflects

Case 1:12-cv-00007-SS   Document 36-9   Filed 08/10/12   Page 8 of 14

Dawn Glasgow as Corp. Rep. - 7/26/2012

130

1  south to north.  There's very little -- I mean, I guess
2  if she wants to take different roads, as long as it gets
3  there in the time it doesn't matter to me.
4           MR. COOK:  Objection, nonresponsive.
5      Q.   (By Mr. Cook)  Did the school tell her which
6  route she should drive to get from one campus to the
7  other?
8      A.   Inasmuch as we provide a map.
9      Q.   With the route?
10     A.   Well, I mean, it doesn't matter, the route
11 doesn't matter.  Where it goes, from one campus to the
12 other by the times, that's what matters.
13     Q.   But she is provided with the route?
14     A.   Right.
15     Q.   Did you ever tell her that it doesn't matter if
16 she follows the route or not?
17     A.   Yes.  In fact, we've talked about with traffic
18 that there are other ways to get there as you become
19 more familiar.  It's her choice.  But the times are
20 important.
21     Q.   The school pays for the bus's insurance?
22     A.   Yes.
23     Q.   Does Ms. Castillo pay for anything out of
24 pocket in regard to the bus?
25     A.   Doughnuts.

Case 1:12-cv-00007-SS   Document 36-9   Filed 08/10/12   Page 9 of 14

Dawn Glasgow as Corp. Rep. - 7/26/2012

134

1  should just go ahead and do it.
2      Q.   On behalf of the corporation, why is
3  Ms. Castillo considered to be an independent contractor?
4      A.   Because she is a person who decides how she is
5  going to drive the bus.
6      Q.   Do you think she has more freedom and control
7  than a guide does at the school?
8      A.   Freedom to control how she drives the bus, yes.
9      Q.   How she does her work?
10     A.   Yes.
11     Q.   Besides what you just stated, are there any
12 other reasons why the corporation believes she should be
13 labeled as an independent contractor?
14     A.   Not that I can think of.
15     Q.   What ways -- you say that she decides how to
16 drive the bus, correct?
17     A.   Uh-huh.
18     Q.   What ways does she choose from in deciding how
19 to drive a bus between two locations?
20     A.   I don't know all the details of driving a bus.
21     Q.   Can you name any way she chooses between
22 multiple options and how she drives the bus between two
23 locations?
24          MR. MARSHALL:  Objection, speculation.
25     A.   I mean, it's just a bunch of details about

Case 1:12-cv-00007-SS   Document 36-9   Filed 08/10/12   Page 10 of 14

Dawn Glasgow as Corp. Rep. - 7/26/2012

135

1 driving a vehicle and driving a bus and speed and what
2 lane and whether she puts on her brake hard, where she
3 puts her blinker on, I mean, all of that.
4    Q.   (By Mr. Cook)  So are those the ways she
5 chooses how she operates the bus?
6    A.   Some of them.
7    Q.   When she changes lanes, whether or not she uses
8 blinkers?
9    A.   All of that and more.
10         MR. MARSHALL:  Objection, speculation.
11   A.   I don't know.  I mean, I'm not a bus driver.
12   Q.   (By Mr. Cook)  Okay.  Well, but there had to be
13 some basis for you deciding that she had control over
14 her work, correct?
15   A.   Right, because I'm not there and she's doing it
16 every day by herself and deciding how it goes and she
17 has the expertise.
18   Q.   Do you think that as a bus driver she makes a
19 lot more decisions as to what she has to do in getting
20 between two locations as opposed to a guide throughout
21 their day?
22         MR. MARSHALL:  Objection, speculation.
23   A.   But I can tell the guide how they need to do
24 something.  We can as a school.  I can say this is how
25 you need to do this.  I don't do that with her.

Case 1:12-cv-00007-SS   Document 36-9   Filed 08/10/12   Page 11 of 14

Dawn Glasgow as Corp. Rep. - 7/26/2012

138

1  Q.  And even though you were designated, the only
2  thing you can say is that she had the right to control
3  how she drove between two set locations; is that
4  correct?
5  A.  That's the only thing I can say right now, yes.
6  Q.  Before you changed the bus driver position from
7  an employee to independent contractor, did bus drivers
8  get benefits?
9  A.  No.
10 Q.  Does Ms. Castillo drive any other buses?
11 A.  Not that I'm aware of.
12 Q.  Does she have any other occupation besides what
13 she does for your company?
14 A.  I think she --
15      MR. MARSHALL:  Objection, speculation.
16 Q.  (By Mr. Cook)  To your knowledge and the
17 company's knowledge.
18 A.  I've heard her talk about cleaning houses.
19 Q.  Let's talk about Ms. Murphy.  Who is Sheila
20 Murphy?
21 A.  She is a parent at the school who did some
22 occupation work at our adolescent community.
23 Q.  A parent at the school that did occupation work
24 at a certain campus?
25 A.  Yes, at our adolescent community at the middle

Case 1:12-cv-00007-SS   Document 36-9   Filed 08/10/12   Page 12 of 14

Dawn Glasgow as Corp. Rep. - 7/26/2012

139

1  school.

2      Q.   Okay.  I keep not hearing the last thing you
3  said, I'm sorry.  And what kind of work did she do for
4  the company?

5      A.   She was contracted to do, I think, three or
6  four humanity or occupation units during a year that we
7  had a need for that and we didn't have the expertise
8  in-house.

9      Q.   What is an occupation unit?

10     A.   I can't really -- I can only describe it as
11 sort of a made-up lesson plan that requires hands-on
12 involvement and an end product by the students and it's
13 several days a week for a period of six weeks.

14     Q.   Is this a class?

15     A.   Yeah, it's like a class.

16     Q.   Was she considered a guide?

17     A.   No.

18     Q.   Okay.

19     A.   She was considered -- I mean, she wasn't -- she
20 was considered a specialist because she had certain
21 knowledge, she has broad knowledge in fact, which was
22 why it was appealing; and so we would say can you do a
23 unit on this and she would plan it, do it, and have an
24 end product.

25     Q.   I'm going to have to get a little explanation

Case 1:12-cv-00007-SS   Document 36-9   Filed 08/10/12   Page 13 of 14

Dawn Glasgow as Corp. Rep. - 7/26/2012

142

1   Q.   How did Austin Montessori ensure that
2  Ms. Murphy was complying with AMI and AMS standards?
3   A.   Well, see, that's the thing about the
4  adolescent community, it's not regulated by AMI, which
5  is what makes it so different.  We have a license or we
6  have an accreditation through the Texas Association of
7  Accredited and Private Schools, or TAAPS is what it's
8  called, and they pretty much say tell us what you're
9  doing and then prove that you do it.  So we give them
10 alternative ways of learning subject matter.
11  Q.   But I assume AMS has standards for how the
12 adolescents learn, correct?
13  A.   Right.  So, for instance, she knows that
14 because her children have been at the school and so that
15 was appealing to us that she could work independently.
16 She's also got experience in a university and -- where
17 you give a lot more leeway to the students in deciding
18 what they're doing so that seemed appealing.  It just
19 seemed appealing because we felt like she would know how
20 to do it.  Nobody would have to stand over her to do it,
21 and that turned out to be the case.  She might check in
22 to say is this what you -- does this sound good or
23 here's what I'm doing and the kids are really responding
24 but.  But it was fine, she did great.
25  Q.   Did anyone ever review her curriculum?

Case 1:12-cv-00007-SS    Document 36-9    Filed 08/10/12    Page 14 of 14

Dawn Glasgow as Corp. Rep. - 7/26/2012

214

1      Mr. Russell Scott Clark and Ms. Melissa A. Jacobs, Attorneys for the Plaintiff;
2      Mr. Bryan P. Marshall, Attorney for the Defendant;
3
4      That $_____ is the deposition officer's
5 charges to the Plaintiff for preparing the original
6 deposition transcript and any copies of exhibits;
7      I further certify that I am neither counsel
8 for, related to, nor employed by any of the parties or
9 attorneys in the action in which this proceeding was
10 taken, and further that I am not financially or
11 otherwise interested in the outcome of the action.
12
13     Certified to by me this 30th day of July, 2012.
14
15
16     *Cynthia Warren*
       CYNTHIA WARREN, Texas CSR 4597
17     Expires 12/31/13
       INTEGRITY LEGAL SUPPORT SOLUTIONS
18     Firm Registration No. 528
       3100 West Slaughter Lane, Suite A-101
19     Austin, Texas   78748
       512-320-8690
20     512-320-8692 (Fax)
21
22
23
24
25