# Exhibit F

CAUSE NO. D-1-GN-000096

| | |
|---|---|
| CAROLINE CLARK | ) IN THE DISTRICT COURT |
|     Plaintiff, | ) |
| VS. | ) TRAVIS COUNTY, TEXAS |
| | ) |
| AUSTIN MONTESSORI SCHOOL, | ) |
| INC., | ) |
|     Defendant. | ) 419TH JUDICIAL DISTRICT |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORAL VIDEOTAPED DEPOSITION OF

CHARLOTTE KROGER

AUGUST 11, 2011

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORAL VIDEOTAPED DEPOSITION of CHARLOTTE KROGER, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on the 11th day of August, 2011, from 3:10 p.m. to 3:50 p.m., before Kimberlye A. Furr, RPR, CSR, in and for the State of Texas, reported by machine shorthand, at the offices of The Cook Law Firm, 919 Congress Avenue, Suite 1145, Austin, Texas, pursuant to the Texas Rules of Civil Procedure

2

A P P E A R A N C E S


FOR THE PLAINTIFF:


          Russell Scott Cook
          State Bar No. 24040724
          Melissa A. Jacobs
          State Bar No. 24046144
          The Cook Law Firm
          919 Congress Avenue, Suite 1145
          (512) 482-9556
          (512) 597-3172 Fax


FOR THE DEFENDANT:

          W. Patrick Garner
              -- and --
          Stephanie O'Rourke
          Cokinos, Bosien & Young
          Four Houston Center
          1221 Lamar Street, 16th Floor
          Houston, Texas  77010
          (713) 535-5500
          (713) 535-5533 Fax



VIDEOGRAPHER:   Bill Burns

Charlotte Kroger - 8/11/2011

3

I N D E X

Appearances.................................    2

CHARLOTTE KROGER

    Examination by Ms. Jacobs ..............    4

Signature and Changes.......................   32

Reporter's Certificate......................   34

Further Certification.......................   36

EXHIBITS

NO.   DESCRIPTION                              PAGE
                                              MARKED

6     E-mail from Ms. Kroger to Ms. Miller and
      Ms. Oriti, dated November 28, 2009        11

7     E-mail from Ms. Kroger to Ms. Oriti,
      dated April 15, 2010                      16

APPEARANCES

FOR THE PLAINTIFF:

Russell Scott Cook
State Bar No. 24040724
Melissa A. Jacobs
State Bar No. 24046144
The Cook Law Firm
919 Congress Avenue, Suite 1145
(512) 482-9556
(512) 597-3172 Fax

FOR THE DEFENDANT:

W. Patrick Garner
-- and --
Stephanie O'Rourke
Cokinos, Bosien & Young
Four Houston Center
1221 Lamar Street, 16th Floor
Houston, Texas  77010
(713) 535-5500
(713) 535-5533 Fax

VIDEOGRAPHER: Bill Burns

INDEX

Appearances.................................    2
CHARLOTTE KROGER
    Examination by Ms. Jacobs ...............    4
Signature and Changes........................   32
Reporter's Certificate........................   34
Further Certification........................   36

EXHIBITS

NO.  DESCRIPTION                    PAGE    MARKED

6    E-mail from Ms. Kroger to Ms. Miller and
     Ms. Oriti, dated November 28, 2009         11

7    E-mail from Ms. Kroger to Ms. Oriti,
     dated April 15, 2010             16

THE VIDEOGRAPHER:  This is the videotaped deposition of Charlotte Kroger.  This is the beginning of Tape 1.  Today's date is August 11th, 2011, and we're on the record at 3:10.

CHARLOTTE KROGER, having been first duly sworn, testified as follows:

EXAMINATION

QUESTIONS BY MS. JACOBS:

Q.  My name is Melissa Jacobs.  I'm an attorney in this lawsuit representing the plaintiff, Caroline Clark.  Have you ever had your deposition taken before?

A.  No.

Q.  I'm going to go over a few things first.  The first thing is, if I ask a question today that you even think you don't understand, would you please stop me and ask me to clarify it?

A.  Okay.

Q.  Also, I'm not asking you what you talked about, but have you had a chance to speak with your attorney --

A.  Yes.

Q.  -- before this deposition?

So you understand that this is an opportunity for me to ask you questions, that you're under oath, and that the answers that you give here today are just like testifying before a judge or a jury?

A.  Yes.

Q.  Also, to make things easier for the court reporter to get everything down, would you please make sure to answer out loud and to wait for me to finish my question?

A.  Sure.

Q.  Okay.  Let's see.  If you need a break at any time, please just let me know.  The only thing that I would ask is that, if there's a question on the table, that you answer it first.

A.  Okay.

Q.  And, then, is there any reason that you don't think that you would be able to answer all of my questions today?

A.  I can't think of any.

Q.  All right.  Can you please state your full name for the record?

A.  Charlotte Hope Bridges Kroger.

Q.  Okay.  And your address?

A.  10207 Colonial Club Drive, Austin, Texas, 78747.

Q.  What's your position with Austin Montessori School?

6

A.   I'm the mentor to the Children's House level.

Q.   Okay. As the children's House mentor, what do you do?

A.   I go in to support the guides in the work that they do.

Q.   Okay. So what does that mean on a day-to-day basis?

A.   That means that I will go in maybe once in that week and sit and observe, and it will take forms that are different each time. One time I may spontaneously work with a child to model to the guide how to work. Another time I may give -- sit near a guide and give guidance, especially a new guide. Sometimes I will just observe and take notes.

Q.   Okay. And do you have any other responsibilities at this school?

A.   I do. As part of my work, I do.

Do you want to know --

Q.   Okay. What is --

A.   -- about those?

I sometimes sit on what's called a support team, because I observe children in the room who need extra support. Maybe an example would be an autistic child or a child with speech problems. And it's mostly connecting parents to sources for help so

7

we can help that child.

Q.   Okay. Do you do anything else for the school?

A.   Outside -- oh, I lead -- as part of my job, also, I have things like Children's House guides meetings, assistant meetings. I work with all of those. I go to parent-guide -- parent education classes that the guides do. They do them once a month in the evenings. I go to those.

Let me think of what else. I think that's pretty -- and I have conferences with Amber. That's part of my job, is to keep her informed of my observations.

Q.   Okay. And how frequently do you have conferences with Amber?

A.   We have them spontaneously, but we're scheduled once a week. You know, children sometimes need more than once a week.

Q.   Do you assist in hiring decisions at the school?

A.   No, I do not.

Q.   Do you assist in staffing decisions at the school?

A.   No, I do not. The only staffing thing that I would possibly -- and it's not staffing -- is, I will

8

sometimes interview prospective assistants, because I am a trained guide and know what I'm looking for. But I am -- that's all. And that's all I do, and occasionally I've done that.

If I think of anything else, I'll tell you.

Q.   How did you find out that Caroline was expecting?

A.   I think, if I remember correctly, Amber said a parent asked her if she was pregnant -- a prospective parent asked her if she was pregnant and Amber mentioned it to me. And then I think the only other time that came up was that at some point, Caroline came in and made the announcement and I happened to be in Amber's office. She was making the announcement that she was expecting, to Amber. That's the best I remember how.

Q.   Okay. And do you remember what Amber said after?

A.   No. I just know that there was laughter and happiness, yeah.

Q.   Do you remember what you said?

A.   No. I think I was happy too.

Q.   Okay. Before Caroline had made that announcement, Amber had -- you said Amber had mentioned

9

to you that a prospective parent had mentioned something?

A.   Uh-huh.

Q.   Had you heard of any other parents asking whether or not Caroline was --

A.   No. No.

Q.   -- expecting before then?

A.   No. No. No, I had not.

Q.   Okay. Had you heard any parents speculating that Caroline might be pregnant --

A.   No.

Q.   -- prior to that announcement?

A.   No. No.

Q.   I'm going to go ahead and offer -- I'll hand you what's been marked as Exhibit 1.

A.   Uh-huh. Okay.

Q.   Can you tell me what that exhibit is?

A.   This is a letter from Donald Goertz -- who is head of schools -- to the parents.

Q.   And what is the date on that?

A.   March 26th, 2010.

Q.   So do you remember approximately how long before the date of that letter Caroline made the announcement?

A.   No, I have not -- I do not. I do not know.

Charlotte Kroger - 8/11/2011

10

Q. Okay. Do you remember having any conversations with anyone about Caroline's pregnancy in between when she made the announcement and when this letter went out?

A. No. No.

MR. GARNER: Can we take a quick -- go off the record real quick?

MS. JACOBS: Uh-huh.

THE VIDEOGRAPHER: Okay. We'll go off at 3:18.

(A short break was taken.)

THE VIDEOGRAPHER: Okay. We're back on. It's still 3:18.

Q. (By Ms. Jacobs) So you can't recall having any discussions with anyone about Caroline's pregnancy --

A. That's correct.

Q. -- in between her announcement and the date of this letter?

A. That's correct.

Q. At any point, did Caroline tell you about any plans that she might have had for maternity leave?

A. No, she did not.

Q. Did you ever hear about any plans that Caroline had --

11

A. No. No.

Q. -- for taking maternity leave?

A. No. No.

(Deposition Exhibit No. 6 was marked for identification.)

Q. (By Ms. Jacobs) I'm going to hand you what's been marked as Exhibit 6.

A. Okay. Okay.

Q. Can you tell me what this is an exhibit of?

A. This is me responding to an observation in Caroline's room and ideas I have.

Q. Okay. Can you tell me a little bit more about what was going on in the classroom at this time that led you to write this e-mail?

A. I'll try, from what's here. I do many, many observations. The first part is us just trying to get together. And Austin, her son, was having asthma difficulties and so we were having -- it was difficult to pinpoint a time for us to meet.

And then Caroline -- the rest is to put Caroline at ease with my role in the room, as I'm only there to support her, and that can be difficult, but I have some ideas on ways to help her.

Q. When did you start working as the mentor?

A. Two years. I've been two years.

12

Q. So can you remember approximately when you started?

A. It was -- it had to have been August of '08. I think it's '08. '08? '09? '09. Sorry, '09.

Q. Okay. I guess this is really the second-to-the-last paragraph from the bottom, the last part. See, it's when you're -- where you're talking about -- what you had said is, you were trying to encourage her and --

A. Right.

Q. -- at the end you say: It is doubly hard for a mom, but not impossible.

What did you mean by that?

A. Austin. Just Austin and his pulling her time, you know; for us to get together, is all. I can't think of anything else I would have to say about it.

"Doubly hard for a mom, but not impossible." I really can't say what my thoughts were at that time on that.

Q. Okay. Following that e-mail, would you describe -- sorry, strike that.

A. Okay.

Q. Tell me about how your relationship with Caroline unfolded from -- beginning from the time of

13

this e-mail.

A. Okay. And this was when? November '09.

In the beginning, Caroline was nervous about having me in the room, and I think we got better, but she never completely was at ease with having me observe in the room. But that's not terribly uncommon, because I was nervous when I was a guide in the room and the consultant or mentor came in to observe my room, so that's not a highly uncommon thing.

Caroline seemed to appreciate my advice. I don't think she always -- it seemed that Caroline sometimes didn't want to do the steps it took to do the things that I asked, the things -- the suggestions that I made and so forth. But we were able to talk about that. I enjoyed working with Caroline.

Q. Moving a little bit away from that, had you served as a mentor at any other Montessori schools --

A. No.

Q. -- prior to when you were --

A. No.

Q. What is your background with Montessori?

A. I received my training in 1994 in Portland, Oregon from an AMI training course, and I worked three years in Providence Montessori School there. And in 1997, I moved to Austin after an interview with Donald

Goertz, and I was hired at Austin Montessori School. And I worked there until I retired in '08, in that one little classroom, Redbud Cottage, as a Children's House guide.

Q. And prior to that at the school in Providence, did you work as a guide?

A. No. That was my first time.

Q. Your first time?

A. To be a guide in a room.

Q. In Providence or at the --

A. In Providence. Providence, I began my career as a Montessori guide.

Q. So based on your work as a guide and then your work as a mentor, what did you think of Caroline as a guide?

A. I thought Caroline had potential as a guide, but I really felt that she often either lacked the time or lacked the initiative to really strive to do the things that would make better order in the room, organization in the room. She seemed skittish to me, skittish and wary. Although, we had open conversation and open dialog. We were able to talk with each other.

Q. When you say "wary," what did she seem to be wary of?

A. I think just being observed. And, I mean,

it's a hard thing for guides to be observed.

Q. Did you think that there was any reason that she should not have continued working as a guide at the school, based on her performance in the classroom?

A. I thought that Caroline and I had a lot of work to do to get her to a certain level of work in the room; as far as organization, focus, getting lessons quicker to children. There were things that I wanted to help her and support her in.

Q. Did you think that she was performing well enough that she could return as a guide?

A. I don't think I can make that decision, that choice, or that -- no, that's not part of my job. But I do share observations, but I can't say whether she can -- she should return or not.

Q. Okay.

A. Yeah.

Q. Based on your observations, was she qualified to serve as a guide in the classroom?

A. Yes. Yes. We have all degrees of guides, of expertise.

Q. Did Caroline ever tell you that she did not want to return as a guide for the 2010, 2011 school year?

A. No.

Q. Did you ever hear her tell anyone that she didn't want to return as a guide?

A. No.

(Deposition Exhibit No. 7 was marked for identification.)

Q. (By Ms. Jacobs) I'm going to hand you what's been marked as Exhibit 7.

A. Okay. Yes.

Q. Okay. Can you tell me what this exhibit is?

A. It's an e-mail between Patricia and me, from me, discussing my observations I had -- probably very closely before the e-mail was sent out -- in Laurel Cottage and my thoughts.

Q. Can you tell me a little bit about what was going on in the classroom at this time, based on the e-mail?

A. I can tell you impressions I remember. Caroline seemed distracted. She seemed more and more distracted. Children were quick to fall into disorder. I worried that lessons weren't coming quick enough, because disorder in children in a Montessori classroom is a clear indication children are not connected to their work. So if they're connected to their work and they're doing their work one-on-one, which is what the bottom line is for us, there's order in the room, and

there was a lack of that.

Q. Can you tell me what you meant in the last two sentences of the second-to-the-last paragraph?

A. Second to the last? Yes. I just think that she was more distracted.

MR. GARNER: Can I, for the benefit of the record, since this is on video, can you read the last two sentences --

THE WITNESS: Okay.

MR. GARNER: -- in the second-to-the-last paragraph?

A. [Reading] I'm trying my best to walk lightly, to recognize her role as guide and to do so with sincerity and respect. But it is my belief that she has already left the room. Her focus is the new baby.

Because Caroline was so nervous about my presence, just being observed and -- I really -- because I'm a former guide, autonomy in a classroom is really important, so when we have to work with a mentor -- and I worked with a mentor the whole I was in the classroom -- it's not an easy task.

And so as a mentor, we walk knowing that that's their classroom but that we want to support them as much as we can. So I want to take into consideration how Caroline feels; at the same time, do

Charlotte Kroger - 8/11/2011

34

CAUSE NO. D-1-GN-000096

CAROLINE CLARK                    ) IN THE DISTRICT COURT
      Plaintiff,                  )
VS.                               ) TRAVIS COUNTY, TEXAS
                                  )
AUSTIN MONTESSORI SCHOOL,         )
INC.,                             )
      Defendant.                  ) 419TH JUDICIAL DISTRICT

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

REPORTER'S CERTIFICATION
ORAL VIDEOTAPED DEPOSITION OF CHARLOTTE KROGER
AUGUST 11, 2011

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

I, Kimberlye A. Furr, CSR, RPR, in and for the State of Texas, hereby certify to the following:

That the witness, CHARLOTTE KROGER, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript was submitted on                     to the witness or to the attorney for the witness for examination, signature, and return to me by                     ;

That the amount of time used by each party at the deposition is as follows:

Ms. Jacobs:  40 Minutes

That pursuant to information given to the

35

deposition officer at the time said testimony was taken, the following includes all parties of record:

        Ms. Jacobs, Attorney for Plaintiff
        Mr. Garner, Attorney for Defendant


        I further certify that I am neither counsel for, related to, nor employed by any of the parties in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of this action.

        Further certification requirements pursuant to Rule 203 of TRCP will be certified to after they have occurred.

        Certified to by me on this 21st day of August, 2011.



_____
Kim Furr, CSR, RPR
CSR No. 6997, Expires 12/31/11

Firm Registration No. 528
3100 West Slaughter Lane, Suite 101
Austin, Texas  78748
(512) 320-8690
(512) 320-8692 (Fax)

36

FURTHER CERTIFICATION UNDER RULE 203

The original deposition was/was not returned to the deposition officer on                    ;

If returned, the attached Changes and Signature page contains any changes and the reasons therefor;

If returned, the original deposition was delivered to Ms. Jacobs, Custodial Attorney;

That $          is the deposition officer's charges to the Plaintiff for preparing the original deposition transcript and any copies of exhibits;

That the deposition was delivered in accordance with Rule 203.3 and that a copy of this certificate was served on all parties shown herein and filed with the Clerk.

Certified to by me on this        day of                    , 2011.


_____
Kim Furr, CSR, RPR
CSR No. 6997, Expires 12/31/11

Firm Registration No. 528
3100 West Slaughter Lane, Suite 101
Austin, Texas   78748
(512) 320-8690
(512) 320-8692 (Fax)

# Exhibit G

CAROLINE CLARK                                    September 16, 2011

CAUSE NO. D-1-GN-11-000096

CAROLINE CLARK            )    IN THE   DISTRICT   COURT
                          )
       Plaintiff(s),      )
                          )
VS.                       )    419TH JUDICIAL DISTRICT
                          )
AUSTIN MONTESSORI SCHOOL, )
INC.,                     )
                          )
       Defendant(s).      )    TRAVIS   COUNTY,   TEXAS

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

ORAL AND VIDEOTAPED DEPOSITION OF

CAROLINE CLARK

SEPTEMBER 16, 2011

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

ORAL AND VIDEOTAPED DEPOSITION of CAROLINE

CLARK, produced as a witness at the instance of the

Defendant, and duly sworn, was taken in the

above-styled and numbered cause on the 16th day of

September, 2011, from 10:48 a.m. to 4:15 p.m., before

Dicie Lee Eytcheson, CSR in and for the State of

Texas, reported by machine shorthand, at the offices

of THE COOK LAW FIRM, 919 Congress Avenue, Suite 1145,

Austin, Texas 78701, pursuant to the Texas Rules of

Civil Procedure and the provisions stated on the

record or attached hereto.

Electronically signed by Dicie Eytcheson (301-362-425-8759)                  4fceefd1-91c4-44c9-995b-2cac908dd802

CAROLINE CLARK                                     September 16, 2011

                                                              Page 2

                       A P P E A R A N C E S


    FOR THE PLAINTIFF(S):  CAROLINE CLARK

         MS. MELISSA A. JACOBS
         THE COOK LAW FIRM
         919 Congress Avenue, Suite 1145
         Austin, Texas 78701


    FOR THE DEFENDANT(S):  AUSTIN MONTESSORI SCHOOL, INC.

         MR. W. PATRICK GARNER
         COKINOS, BOSIEN & YOUNG
         Four Houston Center
         1221 Lamar Street, 16th Floor
         Houston, Texas 77010


    THE VIDEOGRAPHER:

         JESSE STEEDLE


    ALSO PRESENT:

         MR. STEVE SUTTLES
         MS. DAWN GLASGOW



                       *  *  *  *  *  *

Electronically signed by Dicie Eytcheson (301-362-425-8759)              4fceefd1-91c4-44c9-995b-2cac908dd802

CAROLINE CLARK                                        September 16, 2011

Page 212

CHANGES AND SIGNATURE

WITNESS: CAROLINE CLARK          DATE OF DEPO: 9/16/2011

PAGE      LINE      CHANGE                    REASON

12        5      "SPECTRUM" should be spelled "SPECTRIM"

16        24     "tract" should be spelled "track"

17        7      "Aclvin" should be spelled "ALCVIN"

19        10     "Ohio montessori Institute" should read "Ohio montessori Training Institute" → reason: to correct the record

31        25     add: "other than a few part
32        24     time jobs I worked from time to time in addition to the positions listed on my resume

39        6      add: "my first year, I was an assistant to the children house guide    reason: correct the record

84        20     "yes" should be "no", it was amber who shared with me that a prospective parent who had observed in my classroom had asked her if I was pregnant    Reason: correct the record

185       14     "20" should be "10" / correct the record

185       18     "a salary" should be "hourly"    reason: correct the record

198       12     Anna should be spelled "ana"

Electronically signed by Dicie Eytcheson (301-362-425-8759)                4fceefd1-91c4-44c9-995b-2cac908dd802

10/18/2011  10:15    2148277683    EAST DALLAS SCHOOL    PAGE  02/03

CAROLINE CLARK                                      September 16, 2011

Page 213

I, CAROLINE CLARK, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

_____
CAROLINE CLARK, Witness

THE STATE OF TEXAS           )

COUNTY OF DALLAS             )

Before me, EDITH MONTOYA           , on this day personally appeared CAROLINE CLARK, known to me (or proved to me under oath or through _____ ) (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 18th day of OCTOBER , 2011 .

EDITH J. MONTOYA
MY COMMISSION EXPIRES
August 27, 2014

_____
NOTARY PUBLIC IN AND FOR

THE STATE OF TEXAS       .

Kim Tindall & Associates, Inc.    645 Lockhill-Selma, Suite 200    San Antonio, Texas 78216
Phone (210) 697-3400                                        Fax (210) 697-3408

Electronically signed by Dicie Eytcheson (301-362-425-8759)    4fceefd1-91c4-44c9-995b-2cac906dd802

CAROLINE CLARK                                                September 16, 2011

Page 214

CAUSE NO. D-1-GN-11-000096

CAROLINE CLARK                    )  IN  THE   DISTRICT   COURT
                                  )
         Plaintiff(s),            )
                                  )
VS.                               )  419TH JUDICIAL DISTRICT
                                  )
AUSTIN MONTESSORI SCHOOL,         )
INC.,                             )
                                  )
         Defendant(s).            )  TRAVIS   COUNTY,   TEXAS

REPORTER'S CERTIFICATION
DEPOSITION OF CAROLINE CLARK
SEPTEMBER 16, 2011

I, Dicie Lee Eytcheson, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, CAROLINE CLARK, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript was submitted on _____9-28-11_____ to the witness or to the attorney for the Plaintiff for examination, signature, and return to me by ____10-31-11____;

That the amount of time used by each party at the deposition is as follows:

        W. Patrick Garner - 03hr:40min

That pursuant to information given to the

Kim Tindall & Associates, Inc.      645 Lockhill-Selma, Suite 200        San Antonio, Texas 78216
Phone (210) 697-3400                                                 Fax (210) 697-3408

Electronically signed by Dicie Eytcheson (301-362-425-8759)         4fceefd1-91c4-44c9-995b-2cac908dd302

deposition officer at the time said testimony was taken, the following includes counsel for all parties of record:

Melissa A. Jacobs/Russell Scott Cook, Attorney for Plaintiff(s),

W. Patrick Garner/Stephanie O'Rourke, Attorney for Defendant(s), AUSTIN MONTESSORI SCHOOL, INC.

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Further certification requirements pursuant to Rule 203 of TRCP will be certified to after they have occurred.

Certified to by me this 27th day of September, 2011.

DICIE LEE EYTCHESON, Texas CSR
Expiration Date: 12/31/12
Firm Registration No. 631
Kim Tindall & Associates, Inc.
645 Lockhill Selma, Suite 200
San Antonio, Texas 78216
(210) 697-3400

CAROLINE CLARK                                September 16, 2011

Page 216

FURTHER CERTIFICATION UNDER RULE 203 TRCP

The original deposition was/was not returned to the deposition officer on _____\Q-\\S-\_____;

If returned, the attached Changes and Signature page contains any changes and the reasons therefor;

If returned, the original deposition was delivered to W. PATRICK CARNER, Custodial Attorney;

That $_____ is the deposition officer's charges to the Defendant for preparing the original deposition transcript and any copies of exhibits;

That the deposition was delivered in accordance with Rule 203.3, and that a copy of this certificate was served on all parties shown herein and filed with the Clerk.

Certified to by me this _____ day of _____, 2011.

By BW

DICIE LEE EYTCHESON, Texas CSR 5392
Expiration Date:  12/31/12
Firm Registration No. 631
Kim Tindall & Associates, Inc.
645 Lockhill Selma, Suite 200
San Antonio, Texas  78216
(210) 697-3400

Electronically signed by Dicie Eytcheson (301-362-425-8759)              4fceefd1-91c4-44c9-995b-2cac908dd802

Page 85

Q. Okay. And were you there during that conversation; obviously not?

A. No.

Q. Okay. And did Amber come to you and ask you --

A. No.

Q. -- "Caroline, are you pregnant"?

A. No.

Q. Okay. Where did you tell Amber and Charlotte that you were first pregnant?

A. It was in Amber's office.

Q. And what was the occasion for you going in and telling her?

A. Well --

MS. JACOBS: Objection. Form.

A. -- every morning it was just part of our routine. There was another guide who she and I just stopped in the building because -- just to get a breather, a -- a little bit of a break. You know, we could use the adult bathroom and in passing just say, Hi. Hello, and maybe share a funny incident in the classroom, so it was just -- I think it was just one of those moments.

Q. (BY MR. GARNER) Okay. And how did -- when -- when you first told Amber and Charlotte how did Amber Miller react?

Page 86

A. I -- I don't remember. I don't remember if she said anything or -- I really don't remember her facial expression.

Q. You don't remember her saying, "Congratulations"?

A. She said that as I was leaving. She gave me a hug, but at -- that was after Charlotte's comments.

Q. Uh-huh. Now, you know that Charlotte is a mentor --

A. Yes.

Q. -- correct?

A. Yeah.

Q. Is Charlotte Kroger considered your supervisor?

MS. JACOBS: Objection. Form.

Q. (BY MR. GARNER) If you know.

A. You know, we just don't have -- I don't know those -- I know they have titles but I don't know.

Q. Okay. In other words, Charlotte Kroger doesn't have any authority over you as a house guide, does she?

MS. JACOBS: Objection. Form.

Q. (BY MR. GARNER) If you know.

A. I thought she did.

Q. Okay. What authority would Charlotte Kroger have?

MS. JACOBS: Objection. Form.

Page 87

Q. (BY MR. GARNER) If you know.

A. The changes. The recommendations. I would have to follow her recommendations.

Q. Okay. It's your understanding that you would have to follow her recommendations?

A. Yes.

Q. Okay. So would that make those recommendations instructions?

A. What do you mean?

Q. Well, a recommendation is nothing more than a statement implying that something needs to be changed. It doesn't say you have to; is that right?

MS. JACOBS: Objection. Form.

Q. (BY MR. GARNER) I mean, if it was -- if it was an instruction it would be a mandate. Did you feel those recommendations were mandates?

MS. JACOBS: Objection. Form.

A. I did feel it was strongly suggested. A lot of at Austin Montessori School may not be written but it's -- they have strong suggestions.

Q. (BY MR. GARNER) Okay. And did you follow all of Charlotte Kroger's recommendations?

A. To the best of my ability. There were a lot.

Q. Okay. Did you have any -- we've already talked about having any problems with them. Are there any

Page 88

recommendations that you didn't follow of Charlotte?

MS. JACOBS: Objection. Form.

A. I wouldn't remember.

Q. (BY MR. GARNER) Okay. I mean, were there any ones that you had a problem with and said -- went to Pat Oriti and say, you know, Ms. Oriti, you know, I just don't agree with this so I'm going to keep doing what I feel is right and good for my house?

MS. JACOBS: Objection. Form.

A. I've never done that.

Q. (BY MR. GARNER) Okay. Well, so you -- so do you recall when this meeting took place where you told Charlotte and Amber Miller that you were pregnant?

MS. JACOBS: Objection. Form.

A. I don't remember the exact date. I don't know.

Q. (BY MR. GARNER) Do you remember what month it was?

A. I don't remember if it was early Feb- -- late February or early March. I don't remember.

Q. Okay. So it's my understanding based upon Charlotte Kroger's reaction you had some concerns about how you were going to be treated with relation to this pregnancy; is that your testimony?

MS. JACOBS: Objection. Form.

A. Yes.

22 (Pages 85 to 88)

Electronically signed by Dicie Eytcheson (301-362-425-8759)                              4fceefd1-91c4-44c9-995b-2cac908dd802

Exhibit H

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION


CAROLINE CLARK,   &#9670;
  Plaintiff,  &#9670; CIVIL ACTION
      &#9670;
VS.      &#9670; NO. A-12-CA-007-SS
      &#9670;
AUSTIN MONTESSORI SCHOOL, &#9670; JURY TRIAL DEMANDED
INC.,     &#9670;
  Defendant.  &#9670;


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORAL DEPOSITION OF THE CORPORATE REPRESENTATIVE

OF AUSTIN MONTESSORI SCHOOL, INC.,

DAWN GLASGOW

JULY 26, 2012

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORAL DEPOSITION OF DAWN GLASGOW, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on the 26th day of July, 2012, from 10:00 a.m. to 4:05 p.m., before Cynthia Warren, Certified Shorthand Reporter in and for the State of Texas, reported by machine shorthand, at the offices of The Cook Law Firm, 919 Congress Avenue, Suite 1145, Austin, Texas 78701, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

2

APPEARANCES


FOR THE PLAINTIFF:

        MR. RUSSELL SCOTT COOK
        MS. MELISSA A. JACOBS
        THE COOK LAW FIRM
        919 Congress Avenue, Suite 1145
        Austin, Texas  78701
        Telephone:  512-482-9556
        Fax:  512-597-3172
        E-mail:  scook@rcooklaw.com


FOR THE DEFENDANT:

        MR. BRYAN P. MARSHALL
        COKINOS, BOSIEN & YOUNG
        10999 IH-10 West, Suite 800
        San Antonio, Texas  78230
        Telephone:  210-293-8700
        Fax:  210-293-8733
        E-mail:  bmarshall@cbylaw.com


ALSO PRESENT:

        Ms. Jordan Warshauer

190

A. She didn't drive a school bus.

Q. Shuttle bus?

A. I think she would have driven her own car. It was just like a -- we have this program where people sign up to be going out drivers.

(Exhibit No. 7 marked.)

Q. Ms. Glasgow, I hand you what's been marked as Exhibit 7. And we did this exercise previously for 2009, but we need to do it for 2010. And I want you to look through what I've marked as Exhibit 7 and see if there's anyone listed on these Texas Workforce Commission reports that AMS -- that your school considers were not employees during 2009 and 2010. Does that make sense?

A. During at least some part of 2009 --

Q. Yes, exactly.

A. -- and 2010?

Q. Does that make sense?

A. Yes. The only one is Judy Johnson in the first quarter for the same.

Q. Because you consider her to be an independent contractor?

A. Well, only --

Q. You being the corporation?

A. Yeah, in hindsight she should have been an

191

independent contractor but we listed her as an employee. That was the only one.

Q. I've got a number of IRS 941 forms in this folder and rather than pull them all out, let me see if I can clean this up with one question. These forms list a number of employees. Are you aware of that?

A. I know that it lists a number.

Q. Okay. And I've got them from each of the quarters for 2009 and 2010. Would you be able to testify as to which employees those numbers refer to?

A. No.

Q. But it's your position and your understanding on behalf of the corporation that those numbers refer to whoever were on the payroll reports with either ADP or AmCheck?

A. Yes.

Q. On behalf of the corporation, why has the corporation labeled Charlotte Kroger as an independent contractor?

A. Because she controls how she does her work.

Q. Any other reasons?

A. She does part of her work off premises and controls how she does it, when she does it.

Q. Going back to the janitors, they perform work on the premises of the school, correct?

192

A. Uh-huh.

Q. What does Ms. Kroger do or what has she done for the school?

A. She works as a consultant, a Montessori consultant, because she has an expertise in Montessori instruction at age three to six.

Q. And how did she develop that expertise?

A. By working as a guide.

Q. Okay. So she doesn't have some certification other than the fact that she was a guide for a certain period of time?

A. Right.

Q. She has an AMI certification?

A. Yes.

Q. And she has the experience as a guide?

A. Yeah, and I think she has a master's degree in special ed, but that's not. . .

Q. Is that relevant to her experience in this field?

A. Well, maybe it helped her, but it's not why we hired her as a consultant.

Q. It's not directly related to the field of work she was doing?

A. Right.

Q. Okay. And how did she provide consulting to

193

the corporation?

A. She would observe in the classroom and make observation notes and recommendations for what she thought needed to be improved, whether it was with the guide's behavior, the school's environment or materials provided, or the assistant.

Q. She would perform that work at the school obviously?

A. Yeah, that.

Q. What work did she perform at home?

A. Well, she would write her notes on a piece of paper, then she would go and document them and she would send e-mails to the guide and have lots of e-mail exchanges and phone exchanges. But her -- that was part of her follow-up for the work of observing and providing the report.

Q. Did she have an office at the school?

A. No.

Q. Did she have a desk at the school? Her office and desk was sitting in classrooms?

A. Yes. She didn't do any computer-related work at all at school and she only sat in classrooms.

Q. Did she come to any meetings of faculty?

A. Yeah, she would come to some faculty meetings.

Q. Would she come to all of them or was that part

Dawn Glasgow as Corp. Rep. - 7/26/2012

194

of her deal?

A. If she was available she was there. She has children that live in other states so she would be gone some.

Q. How long has she worked -- does she work for the school right now?

A. She's a consultant now. Prior to that, she worked for the school for about ten years, nine years.

Q. How long has she been a consultant with the school?

A. I think her first year to do that was 2009, that fall of that year. I think that's right. And then she started doing more consulting, like she just did a little bit then, when Patricia quit because she wasn't working with the school for a while because it was just too much craziness in her life to fly down here all the time. And so then she did more and --

Q. When did Patricia Oriti quit?

A. It was maybe in the spring of 2010 or the fall of 2010. Sometime in 2010.

Q. Okay.

A. And -- but that was like we convinced her to come back and -- anyway, so she started in 2009.

Q. How was Ms. Kroger paid?

A. She submits invoices to us and we pay her.

195

Q. By the hour?

A. She tracks her time by the hour but not every hour, just the hours she spends working directly with guides.

Q. What hours does she not get compensated for?

A. Most of her work at home she doesn't get compensated for, sort of.

Q. She charges for the time she's at the school?

A. Pretty much. I mean, maybe some of the time at home but only if it's agreed upon. Like she has a written-out contract for what she'll provide, how much it cost, and some things cost certain amounts, some things cost others.

Q. So you have a written contract with Ms. Kroger?

A. She created a contract and submitted it to us.

Q. How many hours -- I mean, I know it changed obviously. Let's say after the change when -- after Ms. Oriti quit, how many hours was she working per week for the school?

A. Well, I would have to back it out of an invoice. It was like okay, so in the school year she probably made about $24,000 a year and so she was making $30 an hour, something like that, so. . .

Q. 800 hours?

A. Yeah, something like that.

196

Q. Per one school year?

A. Yeah.

Q. So what, about 20 hours a week?

A. That's about right, yeah.

Q. And that was the time she was at the school?

A. Yeah. Well, the time that she billed us for. She also didn't come every day, like she would like to come and do as much as she could in a day and then not come the next day. But she loves doing this, so part of the stuff that she did at home was just helping her to be better at doing it.

Q. Did she provide the consulting service for any other schools that you know of while she was doing it for AMS?

A. I think that the only thing she did was there are some Montessori crediting agencies that have student teachers in different schools and they want people to observe them and write up a report, and I think she did that for various agencies, but I don't think it was directly for a school. She didn't want to do more work, like maybe she would have taken it if other jobs -- because people have asked, but she just didn't want to have to work that much.

Q. But her main job was working for your school?

A. Well, her main job was supposed to be retiring

197

and then working for the school.

Q. Did anyone supervise her work?

A. No. I would say we knew -- we got her reports, you know. It wasn't supervising.

Q. Was there any dialogue on what she was doing or what she should be doing as far as the work she was performing?

A. Yeah, sometimes she would say look, I'm not going to come here every day, so I could do this or I could this, which do you think is more important. She might say that.

Q. Okay. And so the school would tell her which was more important?

A. We'd say, oh, you should be in the room. I think sometimes we'd say, oh, would you be willing to do this great parent talk on whatever and she'd say well, if I did that then I can't do this. So it would be that kind of question.

Q. Was the contract an at will contract? Could she quit at any time and could you-all terminate at any time?

A. I'm sure. It was very official. Her husband is ex-military and so she covers everything. She wanted to be certain that she was not in any way in a position of determining whether somebody should be hired or fired

198

or anything like that. She was observing, making recommendations, and observing and making recommendations. She wasn't responsible for us making sure that those were followed.

Q. Were her job duties laid out in that contract she submitted?

A. Yeah, I think it was she might have chosen to do more observations than she said, but she said I would observe once a week or once every other week, whatever it was, and I would provide a written report, yeah.

Q. And that was in the initial contract?

A. Yes.

Q. And there was dialogue between the parties on what those job duties were going to be?

A. Well, she wrote them out and we accepted them was kind of how it was. And then every year she does it because she wants to make sure that we're not -- that we're clear. There's -- well --

Q. Does the contract set up a minimum number of times she has to be in the classroom per week?

A. It doesn't say a minimum number of times. I think it just says she's agreeing to do this and for this amount of money.

Q. Okay. And what is she agreeing to do?

A. Well, I can't remember the hours. I think

199

it's -- I think it's once every other week and then provide a written report and meet with the guides at least once a month.

Q. That doesn't come out to 20 hours a week?

A. Well, yeah, because she could observe for three hours, I mean, and there's five classes and there's two after-school classes, seven, yeah. And she agreed to meet with the assistants maybe three times a semester over lunch and she -- yeah, so she does that.

Q. So what she's going to do is set out in the contract that's signed at the beginning of the year?

A. Yes.

Q. And she sticks by that and that equates to about 20 hours a week?

A. Right. And then there's a clause at the bottom that says if you ask her to do anything outside the contract, she may or may not agree to it but it's going to cost more.

Q. Good thing to have, right?

A. Yeah.

Q. Okay. And you say that she decides when she does her work, but I assume that there's some limitations on that because she's got to be there during the school day, correct?

A. Right, certainly.

200

Q. And if she has to watch specific guides or assistants, that's going to be dictated by when those guides or assistants are having a certain class, correct?

A. Well, they're all there Monday through Friday 8:00 to 4:00. One thing that she doesn't want to do ever is get up early. So she's not going to come before 9:30. She just says I'm never going to see that beginning of the morning.

Q. Is that in the contract?

A. Uh-huh.

Q. So does she actually put the times that she's going to be in the --

A. She just said she won't come early.

Q. Okay.

A. And she won't sub.

Q. Is that what she puts in the contract, I won't come early?

A. Yeah, and she won't sub. So --

Q. I want to see that contract.

What was Ms. Suggs doing in 2009 for the school?

A. She wasn't there. She was getting her training. She might have worked in the beginning of the year but then she went and did her training.

201

Q. What was she performing work doing?

A. I think she might have been an assistant in the elementary.

Q. The corporation would have considered her an employee?

A. Yes.

Q. For the time she worked at the school in 2009?

A. Right. Right.

Q. Who is the ultimate person responsible for the independent contractor, employee classification at AMS?

A. Me.

Q. And you get advice from the accountant?

A. Yes.

Q. Do you get advice from anyone else besides the accountant?

A. No.

MR. COOK: I think I'm getting near the end.

MR. MARSHALL: Famous last words.

MR. COOK: What I'd like to do -- we can go off the record.

(Recess taken from 3:38 p.m. to 3:51 p.m.)

Q. (By Mr. Cook) Ms. Glasgow, during the break you had a chance to review Exhibit 3 and so my question to you is, are there any individuals listed in Exhibit 3

213

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CAROLINE CLARK,                    �
         Plaintiff,                �    CIVIL ACTION
                                   �
VS.                                �    NO. A-12-CA-007-SS
                                   �
AUSTIN MONTESSORI SCHOOL,          �    JURY TRIAL DEMANDED
INC.,                              �
         Defendant.                �

REPORTER'S CERTIFICATION
DEPOSITION OF THE CORPORATE REPRESENTATIVE
OF AUSTIN MONTESSORI SCHOOL, INC., DAWN GLASGOW
JULY 26, 2012

I, Cynthia Warren, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, DAWN GLASGOW, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript was submitted on _____, to the witness or to the attorney for the witness for examination, signature and return to me by _____;

That pursuant to information given to the deposition officer at the time said testimony was taken, the following includes counsel for all parties of record:

214

Mr. Russell Scott Clark and Ms. Melissa A. Jacobs, Attorneys for the Plaintiff;

Mr. Bryan P. Marshall, Attorney for the Defendant;

That $_____ is the deposition officer's charges to the Plaintiff for preparing the original deposition transcript and any copies of exhibits;

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Certified to by me this 30th day of July, 2012.

*Cynthia Warren*
_____
CYNTHIA WARREN, Texas CSR 4597
Expires 12/31/13
INTEGRITY LEGAL SUPPORT SOLUTIONS
Firm Registration No. 528
3100 West Slaughter Lane, Suite A-101
Austin, Texas  78748
512-320-8690
512-320-8692 (Fax)

# Exhibit I

CAUSE NO. D-1-GN-11-000096

| | | |
|---|---|---|
| CAROLINE CLARK,<br>PLAINTIFF, | §<br>§<br>§ | IN THE DISTRICT COURT |
| VS. | §<br>§ | 419TH JUDICIAL DISTRICT |
| AUSTIN MONTESSORI SCHOOL, INC.,<br>DEFENDANT. | §<br>§<br>§ | TRAVIS COUNTY, TEXAS |

### DEFENDANT'S OBJECTIONS AND ANSWERS TO
### PLAINTIFF'S FIRST SET OF INTERROGATORIES

TO:    CAROLINE CLARK
Plaintiff, by and through her attorneys of record
Russell Scott Cook/Melissa A. Jacobs
THE COOK LAW FIRM
919 Congress Avenue, Suite 1145
Austin, Texas 78701

COMES NOW Defendant, AUSTIN MONTESSORI SCHOOL, INC., and files this, its

Objections and Answers to Plaintiff's First Set of Interrogatories, which are attached hereto.

Respectfully submitted,

COKINOS, BOSIEN & YOUNG
10999 IH 10 West, Suite 800
San Antonio, Texas  78230
210-293-8700
210-293-8733 (Fax Number)

By:_____
STEPHANIE O'ROURKE
State Bar No. 15310800

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing *Defendant's Objections and Answers to Plaintiff's First Set of Interrogatories*, has been sent via Certified Mail, Return Receipt Requested, on this the 12th day of May 2011, to:

**Attorneys for Plaintiff**
Russell Scott Cook
Melissa A. Jacobs
THE COOK LAW FIRM
919 Congress Avenue, Suite 1145
Austin, Texas 78701
*Via Certified Mail #7009 0820 0001 4577 7580*

STEPHANIE O'ROURKE

## OBJECTIONS AND ANSWERS TO FIRST SET OF INTERROGATORIES

**Interrogatory No. 1**: Identify all individuals who participated in the preparation of these answers to interrogatories, or who furnished any information used in the preparation of these answers to interrogatories.

**Answer**:        Dawn G. Glasgow
                     Administrative Executive
                     Austin Montessori School, Inc.
                     c/o Stephanie O'Rourke
                     COKINOS, BOSIEN & YOUNG
                     10999 IH 10 West, Suite 800
                     San Antonio, Texas 78230

**Interrogatory No. 2**: Identify the date on which it was determined that Plaintiff's contract for employment with Defendant as a "Children's House Guide" would not be renewed for the 2010-2011 school year.

**Answer**:        Defendant never determined that Plaintiff's contract as a "Children's House Guide" would not be renewed; rather, Plaintiff was extended an offer of employment as a Campus Coordinator.

**Interrogatory No. 3**: Identify all the individuals involved in the decision not to renew Plaintiff's contract for employment with Defendant as a "Children's House Guide" for the 2010-2011 school year.

**Answer**:        Defendant never determined that Plaintiff's contract as a "Children's House Guide" would not be renewed; rather, Plaintiff was extended an offer of employment as a Campus Coordinator.   The individuals involved in the decision to extend an offer of employment as a Campus Coordinator were: Dawn Glasgow; Amber Miller; Donald C. Geortz; Charlotte Kroger; and, Patricia Oriti.

**Interrogatory No. 4**: Identify each and every reason for the decision not to renew Plaintiff's contract for employment with Defendant as a "Children's House Guide" for the 2010-2011 school year.

**Answer**:        Objection is made as said interrogatory is overly broad and general and would exceed the scope of permissible discovery in requesting Defendant to identify "each and every reason".   Defendant will respond "generally".   Subject to the foregoing objection and without waiving same, Defendant would respond as follows: