# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CAROLINE CLARK,                      &#9670;
   Plaintiff,            &#9670;   CIVIL ACTION
&#9670;
VS.                                  &#9670;   NO. A-12-CA-007-SS
&#9670;
AUSTIN MONTESSORI SCHOOL,            &#9670;   JURY TRIAL DEMANDED
INC.,                                &#9670;
   Defendant.            &#9670;

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF THE CORPORATE REPRESENTATIVE

OF AUSTIN MONTESSORI SCHOOL, INC.,

DAWN GLASGOW

JULY 26, 2012

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF DAWN GLASGOW, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on the 26th day of July, 2012, from 10:00 a.m. to 4:05 p.m., before Cynthia Warren, Certified Shorthand Reporter in and for the State of Texas, reported by machine shorthand, at the offices of The Cook Law Firm, 919 Congress Avenue, Suite 1145, Austin, Texas 78701, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

Dawn Glasgow as Corp. Rep. - 7/26/2012

75

managers, the trash manager.

Q.    (By Mr. Cook)  Okay.  Did Mr. Carter work alone?

A.    As far as I know.  We only contracted with him. If he had other people helping him, it wasn't anything.

Q.    Did you have a written contract with Mr. Carter?

A.    I never had one.  There was agreed upon, like he would tell us how much he was going to charge each year.  It would be per building.  I mean, that was how it was estimated, I guess.

Q.    And when I say you have a contract, I mean has the corporation ever had a contract with Calvin Carter?

A.    A written contract, not that I'm aware of.

Q.    And what services did he provide for the corporation?

A.    He would take out the trash and mop the floor and clean the bathrooms.

Q.    Any other services he provided?

A.    I mean, not that I'm aware of.  I mean, he might have dusted fans or something.  I don't know.

Q.    Did he work on a daily basis during the work week?

A.    Yes.

Q.    Did he work on the weekends?

Dawn Glasgow as Corp. Rep. - 7/26/2012

83

relative or someone come do it. I wouldn't always be aware of that, maybe the maintenance director would be. He actually did have a business where he mowed lawns too. I don't know how I knew that.

Q.    When did he do that?

A.    At some period while he was working for us.

Q.    In 2009 or 2010?

A.    Yes.

Q.    Did Calvin Carter ever get bonuses?

A.    Not that I can remember.

Q.    Was there any way for him to earn anything more than whatever the set rate was that he would get paid in a month?

A.    Not that I remember. I mean, no.

Q.    Okay. I assume he used cleaning supplies?

A.    Yes.

Q.    Does the AMI have standards for supplies or materials that are used in schools?

A.    No.

Q.    They do not? Does AMS?

A.    Oh, I'm sorry, I was referring to cleaning supplies. They do have standards about materials that are used. They don't have standards about cleaning supplies that are used.

Q.    Does AMS have standards about cleaning

Dawn Glasgow as Corp. Rep. - 7/26/2012

85

we can't use that all the time. We'd say no, we don't want to use bleach or whatever around them.

Q. So you had approved materials for them to use, but sometimes they would use what they wanted to; is that correct?

A. That's right. That's right.

Q. And on occasion if you didn't like that you would tell them no, don't use that?

A. Like I wouldn't tell them. It might be the maintenance director.

Q. Someone would tell them we don't want you using that material?

A. Right.

Q. Did they follow your -- the school's instructions?

A. Probably not. Probably not.

Q. Were they ever reprimanded or threatened with not following the school's instructions?

A. No.

Q. Did you ever worry about health code guidelines being --

A. They were never violating health code guidelines.

Q. Okay. Well, did the school not care that they were telling them to do one thing and they were doing

Dawn Glasgow as Corp. Rep. - 7/26/2012

92

A.    5:30.

Q.    So he could work at the school any day after 5:30?

A.    Yeah, prior to the next morning.

Q.    But not every day because sometimes the school had functions after 5:30; is that correct?

A.    Right.

Q.    And then the school would inform him you can't come in until a later time?

A.    No, just that either don't clean this classroom because we wouldn't use the whole campus.

Q.    Why is Mr. Carter no longer working for the company?

A.    He was really retiring.

Q.    But he was a long-term worker?

A.    Uh-huh.

Q.    Ten years for the corporation?

A.    Yeah.

Q.    Okay.

A.    Yes.

Q.    Why -- on behalf of the corporation, why does Austin Montessori School, Inc. consider Mr. Carter to have been an independent contractor?

A.    He controlled his own work.  He was the expert in cleaning.

Dawn Glasgow as Corp. Rep. - 7/26/2012

96

and there's not any modification to it during -- little to no modification, the only modification being come early if you can.  And if they can't, we have to clean the room.

Q.    **So who are you talking about in that answer?**

A.    Calvin Carter.

MR. COOK:  Can you read that back to me, please?

(Reporter read previous answer.)

Q.    **(By Mr. Cook)  If you believe there's no modification and it's clearly defined up front, what control does Mr. Carter have?**

A.    He decides whether he can empty the trash, does he put the tables up, does he sweep around them, does he move them all over, does he -- all of the intricacies of how he cleans the room he can do however he wants and to the best of his ability because he's the expert in that.

Q.    **And why is that more control over what he's able to do than what guides can do?**

A.    Guides, it just is.

Q.    **Why?**

A.    Because the way guides operate in the room, the way they work in the room is -- reflects a certain interpretation of their AMI training and the school has the right to have them operate in a way that reflects

Dawn Glasgow as Corp. Rep. - 7/26/2012

130

south to north.  There's very little -- I mean, I guess if she wants to take different roads, as long as it gets there in the time it doesn't matter to me.

MR. COOK:  Objection, nonresponsive.

Q.    (By Mr. Cook)  Did the school tell her which route she should drive to get from one campus to the other?

A.    Inasmuch as we provide a map.

Q.    With the route?

A.    Well, I mean, it doesn't matter, the route doesn't matter.  Where it goes, from one campus to the other by the times, that's what matters.

Q.    But she is provided with the route?

A.    Right.

Q.    Did you ever tell her that it doesn't matter if she follows the route or not?

A.    Yes.  In fact, we've talked about with traffic that there are other ways to get there as you become more familiar.  It's her choice.  But the times are important.

Q.    The school pays for the bus's insurance?

A.    Yes.

Q.    Does Ms. Castillo pay for anything out of pocket in regard to the bus?

A.    Doughnuts.

Dawn Glasgow as Corp. Rep. - 7/26/2012

134

should just go ahead and do it.

Q.    On behalf of the corporation, why is Ms. Castillo considered to be an independent contractor?

A.    Because she is a person who decides how she is going to drive the bus.

Q.    Do you think she has more freedom and control than a guide does at the school?

A.    Freedom to control how she drives the bus, yes.

Q.    How she does her work?

A.    Yes.

Q.    Besides what you just stated, are there any other reasons why the corporation believes she should be labeled as an independent contractor?

A.    Not that I can think of.

Q.    What ways -- you say that she decides how to drive the bus, correct?

A.    Uh-huh.

Q.    What ways does she choose from in deciding how to drive a bus between two locations?

A.    I don't know all the details of driving a bus.

Q.    Can you name any way she chooses between multiple options and how she drives the bus between two locations?

MR. MARSHALL:  Objection, speculation.

A.    I mean, it's just a bunch of details about

135

driving a vehicle and driving a bus and speed and what lane and whether she puts on her brake hard, where she puts her blinker on, I mean, all of that.

Q.    (By Mr. Cook)  So are those the ways she chooses how she operates the bus?

A.    Some of them.

Q.    When she changes lanes, whether or not she uses blinkers?

A.    All of that and more.

MR. MARSHALL:  Objection, speculation.

A.    I don't know.  I mean, I'm not a bus driver.

Q.    (By Mr. Cook)  Okay.  Well, but there had to be some basis for you deciding that she had control over her work, correct?

A.    Right, because I'm not there and she's doing it every day by herself and deciding how it goes and she has the expertise.

Q.    Do you think that as a bus driver she makes a lot more decisions as to what she has to do in getting between two locations as opposed to a guide throughout their day?

MR. MARSHALL:  Objection, speculation.

A.    But I can tell the guide how they need to do something.  We can as a school.  I can say this is how you need to do this.  I don't do that with her.

Dawn Glasgow as Corp. Rep. - 7/26/2012

138

Q.    And even though you were designated, the only thing you can say is that she had the right to control how she drove between two set locations; is that correct?

A.    That's the only thing I can say right now, yes.

Q.    Before you changed the bus driver position from an employee to independent contractor, did bus drivers get benefits?

A.    No.

Q.    Does Ms. Castillo drive any other buses?

A.    Not that I'm aware of.

Q.    Does she have any other occupation besides what she does for your company?

A.    I think she --

MR. MARSHALL:  Objection, speculation.

Q.    (By Mr. Cook)  To your knowledge and the company's knowledge.

A.    I've heard her talk about cleaning houses.

Q.    Let's talk about Ms. Murphy.  Who is Sheila Murphy?

A.    She is a parent at the school who did some occupation work at our adolescent community.

Q.    A parent at the school that did occupation work at a certain campus?

A.    Yes, at our adolescent community at the middle

Dawn Glasgow as Corp. Rep. - 7/26/2012

139

school.

Q.    Okay.  I keep not hearing the last thing you said, I'm sorry.  And what kind of work did she do for the company?

A.    She was contracted to do, I think, three or four humanity or occupation units during a year that we had a need for that and we didn't have the expertise in-house.

Q.    What is an occupation unit?

A.    I can't really -- I can only describe it as sort of a made-up lesson plan that requires hands-on involvement and an end product by the students and it's several days a week for a period of six weeks.

Q.    Is this a class?

A.    Yeah, it's like a class.

Q.    Was she considered a guide?

A.    No.

Q.    Okay.

A.    She was considered -- I mean, she wasn't -- she was considered a specialist because she had certain knowledge, she has broad knowledge in fact, which was why it was appealing; and so we would say can you do a unit on this and she would plan it, do it, and have an end product.

Q.    I'm going to have to get a little explanation

142

Q.    How did Austin Montessori ensure that Ms. Murphy was complying with AMI and AMS standards?

A.    Well, see, that's the thing about the adolescent community, it's not regulated by AMI, which is what makes it so different.  We have a license or we have an accreditation through the Texas Association of Accredited and Private Schools, or TAAPS is what it's called, and they pretty much say tell us what you're doing and then prove that you do it.  So we give them alternative ways of learning subject matter.

Q.    But I assume AMS has standards for how the adolescents learn, correct?

A.    Right.  So, for instance, she knows that because her children have been at the school and so that was appealing to us that she could work independently.  She's also got experience in a university and -- where you give a lot more leeway to the students in deciding what they're doing so that seemed appealing.  It just seemed appealing because we felt like she would know how to do it.  Nobody would have to stand over her to do it, and that turned out to be the case.  She might check in to say is this what you -- does this sound good or here's what I'm doing and the kids are really responding but.  But it was fine, she did great.

Q.    Did anyone ever review her curriculum?

214

Mr. Russell Scott Clark and Ms. Melissa A. Jacobs, Attorneys for the Plaintiff;

Mr. Bryan P. Marshall, Attorney for the Defendant;

That $_____ is the deposition officer's charges to the Plaintiff for preparing the original deposition transcript and any copies of exhibits;

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Certified to by me this 30th day of July, 2012.


*Cynthia Warren*
CYNTHIA WARREN, Texas CSR 4597
Expires 12/31/13
INTEGRITY LEGAL SUPPORT SOLUTIONS
Firm Registration No. 528
3100 West Slaughter Lane, Suite A-101
Austin, Texas   78748
512-320-8690
512-320-8692 (Fax)