FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS  2013 JAN 15  AM 8: 39
AUSTIN DIVISION

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

CAROLINE CLARK,
                      **Plaintiff,**

-vs-                                                   **Case No.  A-12-CA-007-SS**

AUSTIN MONTESSORI SCHOOL, INC.,
                      **Defendant.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Austin Montessori School, Inc.'s Motion for Summary Judgment [#18], Plaintiff Caroline Clark's Response [#21] thereto, Montessori's Reply [#23], and Clark's Response to Defendant's Objections & Surreply [#24]; Montessori's Motion for Partial Summary Judgment [#28], Clark's Response [#38] thereto, Montessori's Reply [#45], and Clark's Objections to Reply and Surreply [#47]; Clark's Motion for Partial Summary Judgment [#29], Montessori's Response [#36] thereto, and Clark's Reply [#42]; Clark's Motion to Compel [#31]; Montessori's Motion for Leave to File Amended Affidavit of Dawn Glasgow [#37]; Clark's Motion to Strike Portions of the Affidavit of Dawn Glasgow [#39], and Montessori's Response [#43] thereto; and Clark's Supplemental Memorandum [#49], Montessori's Motion for Leave to File Response to Supplemental Briefing [#50], and Clark's Reply [#51] thereto. Having considered the documents, the file as a whole, the arguments of counsel at a hearing on summary judgment, and the governing law, the Court now enters the following opinion and orders.



## Background

This is a pregnancy discrimination and Family and Medical Leave Act (FMLA) case, brought by a former teacher or "guide" at Montessori. Clark worked for Montessori as a guide from 2003 to 2005, and again beginning in August 2008. Clark's employment was governed by a series of annual contracts with Montessori. Clark learned she was pregnant in February 2010, and was due to give birth in October. The circumstances in which Montessori became aware of Clark's pregnancy are disputed, but it is undisputed Clark at some point informed Montessori of her due date, and intention to take maternity leave in October 2010. Montessori admits a parent knew or suspected Clark was pregnant, and approached Amber Miller, Montessori's Director of Admissions, because the parent "did not want their child in [Clark]'s classroom because of the effects of any extended leave." Def.'s Mot. Summ. J. [#18] ¶ 13. A public announcement was made regarding Clark's pregnancy, and Montessori claims "parents became worried about the continuity of the class," and "expressed concerns with her teaching methods." *Id.* ¶¶ 15, 17. Montessori further claims Clark "was observed to have some difficulty in the management of her classroom and she became distracted after she became pregnant." *Id.* ¶ 16.

There is no dispute the existing guide contract remained in place after Clark's pregnancy became public knowledge, and her hours and pay were left unchanged. Montessori admits Clark asked to have her guide contract renewed for the following year. *Id.* ¶ 35. However, Montessori determined to nonrenew Clark's guide contract, and instead offered her a position as a "campus coordinator" for the 2010–2011 school year. The campus coordinator position was for the same pay and benefits, but with (1) slightly different hours, namely from 8:00 a.m. to 5:00 p.m., instead of

from 7:30 a.m. to 4:00 p.m., and (2) largely administrative responsibilities instead of teaching students in a classroom (although the campus coordinator is apparently called upon to substitute for guides who are temporarily absent). Montessori asserts this position would best accommodate Clark, and would actually allow her to bring her newborn to work after her return from maternity leave, while at the same time ensuring the pupils would not face the disruption of a change in teachers mid-way through the 2010–2011 school year. Montessori explains, "given the necessity of stability and consistency in the classroom, any house guide planning an extended leave for any reason is reassigned to another position." *Id.* ¶ 4. Accordingly, "a house guide who planned an extended leave for any reason would be offered an alternate position in the school where absenteeism would not negatively impact the children." *Id.* ¶ 12. Montessori claims no substitute teacher was available for the period during which Clark sought maternity leave.

At this time, Clark admits she in fact approached Donna Romaine, the acting campus coordinator, regarding the position, and she also attended a meeting with Montessori officials regarding the campus coordinator offer, on April 30, 2010. Clark asserts she was told at the beginning of the April meeting that "they're still talking about Janice." Pl.'s Resp. [#31] at 4. This is a reference to another guide who, like Clark, became pregnant, and apparently her requests for leave, and to bring her newborn to the classroom, caused great consternation among parents.

At the close of the meeting, Clark decided to consider the coordinator position, but was apparently less excited about the prospect than Montessori expected. A follow-up meeting was scheduled for May 14, 2010. In the interim, Clark instead decided to move to Dallas, and apparently she has remained there to this day. At the May 14 meeting, she announced as much, and explained doing so would enable her to be a stay-at-home mother to the newborn and her older child. Although

-3-

Montessori's pleadings suggest Clark would be restored to the guide position in the following academic year, there is no evidence of this.

Clark claims Montessori's refusal to rehire her as a guide for the following year, and the offer of the campus coordinator position instead, constitute sex discrimination in violation of Texas Labor Code section 21.051. She asserts the campus coordinator position was inferior to the guide position, both because the difference in hours would give her less time with her older child after school, and because the duties were less fulfilling than working with children. She also asserts she was denied FMLA leave, and the right to be restored to the same or equivalent position upon returning from FMLA leave, in violation of 29 U.S.C. §§ 2612, 2614, 2615. Clark originally filed suit in the 419th District Court of Travis County, Texas. Montessori removed the case to this Court on January 4, 2012, after Clark amended her petition to add the aforementioned FMLA claims.

Presently, Montessori has moved, in two separate motions, for summary judgment on all claims. Montessori asserts Clark has failed to establish a prima facie case for gender discrimination, and claims it is not subject to the FMLA, because it has under fifty employees, *see* 29 U.S.C. § 2611(2)(B)(ii). In turn, Clark has moved for partial summary judgment on the latter point, asserting Montessori in fact has fifty or more employees.

## Discussion

### I.   Nondispositive Motions

First, Clark's Motion to Compel [#31] is DISMISSED WITHOUT PREJUDICE as moot: based on counsel's representations at the hearing, Montessori has complied with the underlying discovery request. Second, Clark's Motion to Strike Portions of the Affidavit of Dawn Glasgow [#39] is DISMISSED WITHOUT PREJUDICE, because it is mooted by the Court's disposition of

the cross-motions for partial summary judgment, discussed below. Third, Montessori's Motion for Leave to File Amended Affidavit of Dawn Glasgow [#37] is GRANTED. Finally, Montessori's Motion for Leave to File Response to Supplemental Briefing [#50] is GRANTED. The Court now turns to the assorted motions for summary judgment.

## II.    Summary Judgment—Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343

(5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### III.   Summary Judgment—Application

#### A.   Motions for Partial Summary Judgment

Montessori and Clark's cross-motions for partial summary judgment are both narrowly focused on whether Montessori has fifty employees or more, as this is a factual predicate necessary for an FMLA claim. *See* 29 U.S.C. § 2611(2)(B)(ii). As both sides have raised evidence on this issue, and it is a material fact, both motions are DENIED.

#### B.   Motion for Summary Judgment

Montessori also asserts it is entitled to judgment as a matter of law, arguing Clark has failed to put forward evidence supporting a prima facie case of discrimination, or of any FMLA violation. The Court will address each cause of action in turn.

### 1.    Pregnancy Discrimination

Clark's pregnancy discrimination claim is brought under the Texas Commission on Human Rights Act, which provides in relevant part:

> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LAB. CODE § 21.051.

Sex discrimination under the TCHRA is specifically inclusive of "pregnancy, childbirth, or a related medical condition." *Id.* § 21.016(a).

> A woman affected by pregnancy, childbirth, or a related medical condition shall be treated for all purposes related to employment, including receipt of a benefit under a fringe benefit program, in the same manner as another individual not affected but similar in the individual's ability or inability to work.

*Id.* § 21.016(b).

Because the TCHRA is intended to "execut[e] the policies embodied in Title VII," *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991), *overruled on other grounds by In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 310 (Tex. 2010), courts frequently look to federal law "when determining the burdens of proof under the TCHRA," *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

"Assuming a plaintiff has exhausted his administrative remedies, he may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City*

*of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (footnote omitted).  Where the plaintiff's case rests on circumstantial evidence, the *McDonnell Douglas* burden-shifting framework applies.  *Id.*

Under the *McDonnell Douglas* framework, a plaintiff carries the initial burden of establishing a prima facie case of discrimination.  *Id.*  If the plaintiff does so, the burden then shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for its adverse action.  *Id.* "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."  *McCoy*, 492 F.3d at 557.  If the defendant meets its burden, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose."  *Id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).  "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer."  *McCoy*, 492 F.3d at 557.

To establish a prima facie case, the plaintiff must put for evidence she: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by her employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.  *McCoy*, 492 F.3d at 556.

To demonstrate an employer's proffered legitimate reason for the adverse employment action was pretextual, the plaintiff may show either: (1) the articulated reason is a false cover for the true, discriminatory reason, or (2) the articulated reason is but one motivating factor, and another factor is discriminatory bias.  *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).  In other words, to make a showing of pretext, a plaintiff must show "that the real reason for his discharge was because he was a member of a protected class."  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th

Cir. 2004). Evidence of disparate treatment can support an inference of pretext. *McDonnell Douglas*, 411 U.S. at 804. To establish disparate treatment, the plaintiff must show preferential treatment was given to "nearly identical" employees outside the plaintiff's protected class. *See Little v. Repub. Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991).

Montessori concedes Clark was a member of protected class during the events in question, because she was pregnant. However, Montessori asserts there is no evidence Clark suffered an adverse employment action as a result of her pregnancy. Specifically, Montessori argues its decision to offer Clark a campus coordinator contract, rather than a guide contract, for the following year, was not, as a matter of law, an adverse employment action. Montessori also claims this decision was motived by Clark's request for twelve weeks of leave, rather than her pregnancy. Finally, Montessori posits Clark cannot identify any other employees who sought extended leave, but were nevertheless offered positions as guides; i.e, that there are no similarly situated comparators for Clark to point to as evidence of discriminatory intent.

The Court finds Clark has raised evidence to make a fact issue of whether Montessori's offer of a campus coordinator contract, in lieu of a guide contract, constitutes an adverse employment action. This is because she has put forth evidence from which the trier of fact could conclude the campus coordinator position was objectively worse than the guide position. *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 613 (5th Cir. 2007).

The Fifth Circuit recognizes transfers to objectively worse positions can amount to adverse employment actions—equivalent to a demotion—under anti-discrimination laws. *See id.* "To be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less

interesting or providing less room for advancement." *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999). However, the inferior nature of the new position must be objective: "a plaintiff's subjective perception that a demotion has occurred is not enough." *Forsyth v. City of Dallas, Tex.*, 91 F.3d 769, 774 (5th Cir. 1996). "In determining whether the new position is objectively [worse], a number of factors may be relevant, including whether the position: entails an increase in compensation or other tangible benefits; provides greater responsibility or better job duties; provides greater opportunities for career advancement; requires greater skill, education, or experience; is obtained through a complex competitive selection process; or is otherwise objectively more prestigious." *Alvarado*, 492 F.3d at 614. The factors are not exclusive or exhaustive, and no single factor is determinative. *Id.* at 614 n.8.

The Court finds a fact issue exists as to whether Clark was subjected to an adverse employment action. On the one hand, (1) the pay for the two positions was the same, (2) the benefits were apparently equivalent, and (3) Clark would have had a more flexible schedule, and could bring her newborn to work, under the campus coordinator role. However, numerous factors indicate the campus coordinator position was objectively less desirable than the guide position. Clark notes being a guide is, unlike a campus coordinator, a "vocation," as reflected in both her own testimony, and Montessori's employee manual. Guides are required to complete a lengthy course of study, and obtain a certification to teach the specific age-group of children in a given class. By contrast, no such certification or training is apparently needed to be a campus coordinator.[1] Clark also notes, and Montessori does not contest, that Montessori conducts a nation-wide search when hiring new guides.

---

[1] In support of this inference, Clark notes as coordinator she would have been expected to substitute for all age ranges at the school, regardless of the fact she is only certified in one age range.

There is no suggestion any similar search is conducted for campus coordinators. Similarly, the responsibilities of teaching in a classroom appear to be greater, and the work more interesting, than the largely administrative and clerical duties carried out by a campus coordinator, at least viewed in a light most favorable to Clark.

Another issue which the Court finds significant is the change in hours, from 7:30 a.m. to 4:00 p.m., to 8:00 a.m. through 5:00 p.m. This was only a slight increase in the expected work day: thirty additional minutes. However, Clark argues the fact her work day would end an hour later is meaningful, because it would take away time from her other young child. The Supreme Court has recognized: "A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006). As such, the Court agrees a reasonable fact finder could look to this difference in finding the campus coordinator position constituted a demotion.

Accordingly, the Court finds Clark has raised a prima facie case of gender discrimination. *See Levin v. Delta Air Lines, Inc.*, 730 F.2d 994, 996 (5th Cir. 1984) (holding airline's policy of removing all pregnant flight attendants from flight service was "*prima facie* discriminatory under Title VII"). There is ample evidence, both direct, and circumstantial, from which a fact finder could determine Montessori decided to nonrenew Clark's guide contract because she was pregnant. Montessori has arguably advanced a legitimate, nondiscriminatory reason for taking the action it did: the need to provide continuity in the classroom.[2] However, Clark has put forth evidence which, if

---

[2]To the extent Montessori argues business necessity justifies it decision, it has raised no evidence that a guide's pregnancy raises safety issues, or otherwise goes to the "essence" of the business operation, as would excuse the discriminatory policy. *See Levin*, 730 F.2d at 997–98 (holding policy of grounding pregnant flight attendants was

believed by the fact finder, and given an inference favorable to her, would show this was pretext: the April 30, 2010 meeting opened with references to a prior guide's pregnancy, with one interpretation being Montessori did not want a pregnant guide, or a guide with a newborn, in the classroom. Furthermore, Charlotte Kroger, who was Clark's "mentor," and who may have had some input into employment decisions at Montessori, allegedly reacted negatively when she learned of Clark's pregnancy, exclaiming "Oh my God, that's a problem," and warning Clark to avoid touching her belly in front of parents. Pl.'s Resp. [#21-3], Ex. 3 at 83; *id.* Ex. 1 at 138.

Accordingly, the Court DENIES summary judgment as to Clark's pregnancy discrimination claim.

## 2.    FMLA

There is no dispute Clark never actually attempted to take FMLA leave: she informed Montessori of her decision to move to Dallas before her final guide contract had expired. Rather, her FMLA claim is premised on (1) the theory Montessori's decision to nonrenew the guide contract, and offer her the campus coordinator position instead, constituted unlawful retaliation for stated intent to take maternity leave beginning in October 2010, and (2) the foregoing constituted impermissible interference with attempted FMLA leave, contrary to § 2615(a)(1).

Montessori argues it offered Clark the campus coordinator contract because Clark sought to take an extended period of leave, not because Clark was pregnant. However, given that (1) the undisputed, sole reason Clark sought to take an extended absence was her pregnancy, and its natural outcome, and (2) the remedial nature of the FMLA, the Court finds this is a distinction without a difference. It is in the nature of maternity leave that it is often taken upon the conclusion of a

---

justified based on the risk of severe injury to both passengers and flight attendants).

pregnancy, but that does not make the resulting leave unprotected under the FMLA. Indeed, Montessori's argument that "Plaintiff was treated the same as any teacher planning to take an extended leave of absence for any purpose," *see* Def.'s Mot. Summ. J. [#18] at 16, is demonstrative of the fact issue that has been raised.[3] The FMLA does not protect leaves of absence for *any* purpose: it protects leaves for a narrow range of very specific purposes, and it is well-established pregnancy and maternity leave is one of those purposes. An employer could well have a benignly intended policy—administered with an even hand, blind to all distinctions between individuals—that any employee who took more than six-weeks leave would be transferred to an inferior position during the contract year in question. And such a policy, if applied to one seeking FMLA leave, could well be actionable under the FMLA. As such, Montessori's argument on this basis fails. The Court also notes there is a fact issue as to Montessori's discriminatory intent, as Clark has put forth evidence suggesting Montessori decided to nonrenew the guide contract because Clark was pregnant, and *before* Clark informed Montessori of precisely how much leave she would request.[4] Montessori responds it has evidence to the contrary, but disputing a fact does not entitle a defendant to summary judgment.

Montessori also argues—and the undersigned at the hearing was greatly concerned about this—it simply cannot, as a practical matter, disrupt the tight-nit environment of a Montessori

---

[3]Glasgow's testimony on this point is illuminating:
Q. "Do you know why there's no maternity leave policy at Austin Montessori School?"
A. "No. I guess it's just considered like any other leave."
Glasgow Depo. [#21-1] at 52. Unfortunately, if Montessori is subject to the FMLA, then it cannot treat maternity leave "like any other leave," because Congress has determined such leave is protected.

[4]Montessori also argues it would have been forced to leave the classroom "empty" during Clark's leave, thus losing the enrollment of the students in Clark's class. However, the FMLA does not require the employee to serve up a substitute worker while taking FMLA leave. Rightly or wrongly, Congress has placed that burden upon employers.

classroom by allowing a teacher to take twelve weeks of FMLA leave in the middle of the school year. However, Montessori points to no authority which supports this position, and Clark, in her supplemental briefing, persuasively demonstrates the law is quite unforgiving under the circumstances of this case.[5]

The Fifth Circuit, applying Title VII standards, has held an employee alleging FMLA retaliation raises a fact issue regarding whether there was an adverse employment action by advancing evidence "a reasonable employee would view the challenged action as materially adverse." *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 337 (5th Cir. 2008) (unpublished) (citing *Burlington N. & Santa Fe Ry.*, 548 U.S. at 71–73). Here, for the reasons given in Section 1, *supra*, the Court finds Clark has raised a fact issue as to whether a reasonable employee would find being offered the campus coordinator position materially adverse, and must deny summary judgment as to Clark's FMLA claim as well.[6]

## Conclusion

While the Court is not unsympathetic to the practical predicament Montessori finds itself in, Congress and the Fifth Circuit have left the Court with no choice but to deny summary judgment, based on the record presently before the Court.

Accordingly,

IT IS ORDERED that Clark's Motion to Compel [#31] is DISMISSED WITHOUT PREJUDICE;

---

[5]Of course, the law does not require Montessori to accede to Clark's request to bring her newborn into the classroom, but Clark has raised a fact issue as to whether Montessori had already decided to nonrenew Clark's guide contract before learning of that request.

[6]Montessori has failed to join issue with Clark's FMLA interference claim, and so is not entitled to summary judgment on it either.

IT IS FURTHER ORDERED that Clark's Motion to Strike Portions of the Affidavit of Dawn Glasgow [#39] is DISMISSED WITHOUT PREJUDICE;

IT IS FURTHER ORDERED that Montessori's Montessori's Motion for Leave to File Amended Affidavit of Dawn Glasgow [#37] is GRANTED;

IT IS FURTHER ORDERED that Montessori's Motion for Partial Summary Judgment [#28] is DENIED;

IT IS FURTHER ORDERED that Clark's Motion for Partial Summary Judgment [#29] is DENIED;

IT IS FURTHER ORDERED that Montessori's Motion for Leave to File Response to Supplemental Briefing [#50] is GRANTED;

IT IS FINALLY ORDERED that Defendant Austin Montessori School, Inc.'s Motion for Summary Judgment [#18] is DENIED.

SIGNED this the _14th_ day of January 2013.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE