IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CAROLINE CLARK, | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. A-12-CA-007-SS |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| Defendant. | § | JURY TRIAL DEMANDED |
| | § | |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Comes now Plaintiff Caroline Clark and respectfully submits her proposed Jury Instructions and

Verdict Form and asks that the Court adopt them for use at trial:

*GENERAL SOURCES: Fifth Circuit Pattern Jury Instructions; Texas Pattern Jury Charge; this Court's charge in Fleming v. Dell Inc., 1-10-CA-973-SS.  These and other specific sources are highlighted where appropriate in these proposed instructions.*

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you, the jury, are the judges of the facts.  Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

Any party seeking affirmative relief in a civil action such as this must prove its contentions by "a preponderance of the evidence."  A preponderance of the evidence means the amount of evidence that persuades you a claim is more likely true than not true.  In determining whether any fact has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.  If the proof fails

1

to establish any essential part of a party's claim by a preponderance of the evidence, then you must find for the other party on that claim.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should decide whether you believe what each person had to say, and how important that testimony was. In making that decision I suggest you ask yourself a few questions: Did the person impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness have any relationship with any party to the case? Did the witness have a good memory? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? These are a few of the considerations that may help you determine the accuracy of what each witness said.

In making up your mind and reaching a verdict, you must think about the testimony of each witness and decide how much you believe of what each witness said. In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial. You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget things or remember things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or only an unimportant detail.

There are two types of evidence that you may consider in finding the truth as to the facts in the case. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence, which is the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

It is the duty of the attorneys on each side to object when the other side offers testimony or other evidence which counsel believes is not properly admissible. When the Court has sustained an objection to a question, you are to disregard that question and may draw no inference from the wording of it or speculate as to what the witness would have said if permitted to answer. Upon allowing testimony or other evidence to be introduced over the objection of

2

counsel, the Court does not indicate any opinion as to the weight or effect of such evidence. Also, when the Court asks questions of a witness, you are instructed not to assume the Court has any opinion on the matter to which the questions may relate.

In making up your minds and reaching a verdict, do not make any decisions simply because there were more witnesses on one side than the other. Do not reach a conclusion on a particular point just because there were more witnesses testifying for one side on that point. You must think about the testimony of each witness and decide how much you believe of what each witness said. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all the other evidence you believe that single witness.

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in evidence in the case.

In this case, Caroline Clark claims that Austin Montessori School, Inc. violated the Texas Labor Code and the Family Medical Leave Act ("FMLA") when Austin Montessori School refused to renew her teaching contract once they found out that she was pregnant. Specifically, Caroline Clark claims that Austin Montessori School, Inc. refused to renew her teaching contract due to her pregnancy. Caroline Clark also claims that Austin Montessori School, Inc. interfered with her rights under the FMLA by refusing to renew her teaching contract due to her expected maternity leave. Finally, Clark claims that Austin Montessori School, Inc. refused to renew her teaching contract due to her exercise of rights under the FMLA. Caroline Clark seeks her lost wages and benefits caused by Austin Montessori School, Inc.'s failure to renew her teaching contract, and compensatory and punitive damages.

Austin Montessori School, Inc. denies that it discriminated against Caroline Clark on the basis of her pregnancy. Austin Montessori School, Inc. admits that it offered Caroline Clark the campus coordinator position because of her pregnancy and expected maternity leave.[1] However, Austin Montessori School, Inc. claims that this action was not discriminatory because it did not constitute an "adverse employment action." Austin Montessori School, Inc. also claims that it does not have the required number of employees necessary for the FMLA to apply. Austin Montessori School, Inc. thus claims that Caroline Clark had no rights under the FMLA to take up to 12 weeks of leave following the birth of her child.

I instruct you that Austin Montessori School, Inc. is a covered employer under the Texas Labor Code and is therefore obligated to comply with the requirements of the Texas Labor Code, which prohibits discrimination on the basis of pregnancy, childbirth, or a related medical

---

[1] *See* Defendant's First Amended Answer, ¶ 23 ("Defendant's acts of offering plaintiff an alternative placement to accommodate her pregnancy and extended leave did not constitute an unlawful employment practice because it did not constitute an 'ultimate employment decision'.").

3

condition.  Whether Austin Montessori School, Inc. is an employer covered by the FMLA is an issue for you to decide in this lawsuit.

Attached to this Jury Charge is a Verdict Form that has several questions.  Before answering a particular question on the Verdict Form, you must consider the instructions for that question that are provided below.  Bear in mind, members of the jury, you may or may not ultimately answer each question; so carefully follow the "roadmap" instructions on the Verdict Form to determine which questions you must answer.

For the purposes of my instructions below, "AMS" refers to Austin Montessori School, Inc., and "Clark" refers to Caroline Clark.

**Part I—Pregnancy Discrimination**

Part I deals with Caroline Clark's allegations that AMS discriminated against her because of her pregnancy, childbirth, or a related medical condition.  The Texas Labor Code makes it unlawful for an employer to discriminate against an employee with respect to compensation or the terms, conditions, or privileges of employment because of pregnancy, childbirth, or a related medical condition.[2]  The purposes of the legal prohibition against discrimination are to secure for persons in this state freedom from discrimination in employment, in order to protect their personal dignity; to make available to the state the full productive capacities of persons in this state; to avoid domestic strife and unrest in this state; to preserve the public safety, health, and general welfare; and to promote the interests, rights, and privileges of persons in this state.[3]

<u>**Question One**</u>[4]

Question One asks "Was pregnancy, childbirth, or a related medical condition a motivating factor in Austin Montessori School's decision to refuse to renew Caroline Clark's teaching contract and instead offer her the position of campus coordinator?"  Answer "Yes" or "No."  A "motivating factor" in an employment decision is a reason for making the decision at the time it was made.  There may be more than one motivating factor for an employment decision.  Caroline Clark thus need not show that her pregnancy, childbirth, or a related medical condition was the only motivating factor or even the primary motivating factor in AMS's decision not to renew her teaching contract.

If you answer "No" to Question One, skip to Question Six.  If you answer "Yes" to Question One, proceed to Question Two.

---

[2] TEX. LAB. CODE § 21.051
[3] TEX. LAB. CODE § 21.001.
[4] TEX. PATTERN JURY CHARGE § 107-6 (question and instruction on unlawful employment practices); Tex. PJC 107-15 (instruction on sex discrimination).

## Question Two[5]

Question Two asks, "Was Austin Montessori School's decision to refuse to renew Caroline Clark's teaching contract and instead offer her the position of campus coordinator an adverse employment action?"  Answer "Yes" or "No."  It is unlawful for an employer to intentionally discriminate against an employee because of the employee's pregnancy, childbirth, or a related medical condition.  To prove unlawful discrimination, Caroline Clark must prove, by a preponderance of the evidence, that AMS took an adverse employment action against her because of her pregnancy, childbirth, or a related medical condition.

Refusing to allow someone to continue in the position that they hold and instead offering another position may be the objective equivalent of a demotion, and thus qualify as an adverse employment action, even if the new position would not have entailed a decrease in pay, title, grade, or other tangible benefits.  If the new position was objectively worse, then it can constitute an adverse employment action.  In determining whether the new position is objectively worse, a number of factors may be relevant, including whether the new position requires less responsibility, is less interesting, entails worse job duties, requires less skill, education, or experience, has less favorable work hours, is less prestigious, provides fewer opportunities for career advancement, and/or has been perceived as punitive.  These factors are not exclusive or exhaustive, and no single factor is determinative.  Even if you find that only some of these factors are present, you may still find that the campus coordinator position was the objective equivalent of a demotion, and thus an adverse employment action.

If you answer "No" to Question Two, skip to Question Six. If you answer "Yes" to Question Two, proceed to Question Three.

**Part II—Discrimination Damages**

Part II addresses damages for discrimination.  If you find that AMS is liable to Caroline Clark, then you must determine an amount that is fair compensation for all of Caroline Clark's damages.  These damages are called compensatory damages.  The purpose of compensatory damages is to make the plaintiff whole—that is, to compensate the plaintiff for the damage that the plaintiff has suffered.

You may award compensatory damages only for injuries that the plaintiff proves were proximately caused by the defendant's allegedly wrongful conduct.  The damages that you award must be fair compensation for all of the plaintiff's damages, no more and no less.  You should not award compensatory damages for speculative injuries, but only for those injuries which the plaintiff has actually suffered.  Compensatory damages are not allowed as punishment and must not be imposed or increased to penalize AMS.

---

[5] *See* TEX. PATTERN JURY CHARGE § 107-6; Court's Instructions to the Jury, *Lewallen v. City of Beaumont*, 1:05-CV-733-TH (E.D. Tex. 2008); *Alvarado v. Texas Rangers*, 492 F.3d 605, 612-14; 614 n.8 (5th Cir. 2007) (citations omitted); *Lewallen v. City of Beaumont*, 394 Fed. Appx. 38, 43 (5th Cir. 2010).

If you decide to award compensatory damages, you should be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require that the plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.  You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

## Question Three[6]

Question Three asks, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Caroline Clark for her damages, if any, that resulted from AMS's discriminatory conduct?"  Answer in dollars and cents.

Consider the following elements of damages, if any, and none other.  Do not include interest on any amount of damages you may find.  Do not include back pay or interest in calculating compensatory damages, if any.  Answer in dollars and cents for damages, if any.

A.      Back pay and benefits.

"Back pay" is that amount of wages and employment benefits that Caroline Clark would have earned if she had not been subjected to AMS's unlawful conduct, less any wages she received in the interim.

"Employment benefits" include lost retirement benefits and monetary losses incurred as a result of the loss of health insurance coverage and the loss of tuition benefits for Caroline Clark's son.

B.      Compensatory damages in the past, which include emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses.

C.      Compensatory damages in the future, which include emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses.

If you filled in an answer in dollars and cents for Question Three greater than zero, proceed to Question Four.  Otherwise, proceed to Question Six.

---

[6] TEX. PATTERN JURY CHARGE § 115-30.

**Question Four**[7]

Question Four asks, "Do you find by clear and convincing evidence that AMS engaged in the discriminatory practice that you have found in answer to Questions One and Two with malice or with reckless indifference to the right of Caroline Clark to be free from such practices?" Answer "Yes" or "No."

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established. "Malice" means a specific intent by AMS to cause substantial injury or harm to Caroline Clark.

If you answer "Yes" to Question Four, proceed to Question Five. If you answer "No" to Question Four, proceed to Question Six.

**Question Five**[8]

Question Five asks "What sum of money, if any, if paid now in cash, should be assessed against Austin Montessori School, Inc. and awarded to Caroline Clark as exemplary damages, if any, for the conduct found in response to Question Four?" Answer in dollars and cents, if any.

You must unanimously agree on the amount of any award of exemplary damages.

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are—

1. The nature of the wrong.
2. The character of the conduct involved.
3. The degree of culpability of Austin Montessori School, Inc.
4. The situation and sensibilities of the parties concerned.
5. The extent to which such conduct offends a public sense of justice and propriety.
6. The net worth of Austin Montessori School, Inc.

Proceed to Question Six.

**Part III—Whether Austin Montessori School Is an FMLA Employer**

One of the issues in this lawsuit is whether AMS is an "employer" as defined by the FMLA. For the purpose of deciding Caroline Clark's FMLA claims, AMS is an "employer" under the FMLA if AMS had at least 50 employees during any of 20 weeks of 2009 or 2010. The 20 weeks do not need to be consecutive.[9]

---

[7] TEX. PATTERN JURY CHARGE § 115.31B.
[8] TEX. PATTERN JURY CHARGE § 115.38.
[9] 29 C.F.R. § 825.105(e)

There are two sources that should be used in determining whether AMS had at least 50 employees during any of 20 weeks of 2009 or 2010. One of those sources is AMS's payroll records.[10] A person on the payroll is counted as an employee for each week that he or she is on the payroll.[11] The employee must be counted even if he or she has not worked or received a paycheck for a particular pay period. Thus, even an employee on temporary unpaid leave is counted as long as AMS has a reasonable expectation that the employee will later return to active employment.[12] For this reason, employees of schools who are employed permanently or under contract are considered to be on the payroll even during the time of year that school is not in session.[13] Each part-time employee is counted along with each full-time employee in the total employee count.[14] A person is thus considered to be off AMS's payroll *only* if his or her employment relationship with AMS has been permanently terminated.

The payroll is not the only source that should be used in deciding whether AMS had at least 50 employees. It is also necessary to determine whether individuals working for AMS who AMS classified as "independent contractors" should actually be counted as "employees" under the FMLA.

The FMLA uses a definition of employee that is particularly broad and expansive.[15] The FMLA stretches the definition of employee to cover some workers who might not qualify as employees under other laws.[16] In fact, the FMLA uses the broadest definition of employment

---

[10] 29 C.F.R. § 825.105(e) ("A private employer is covered if it maintained 50 or more employees on the payroll during 20 or more calendar workweeks (not necessarily consecutive workweeks) in either the current or the preceding calendar year."). *See also Walters v. Metro. Educ. Enters.*, 519 U.S. 202 (1997) (describing the payroll method).

[11] *Id.*

[12] 29 C.F.R. § 825.105(c).

[13] 29 C.F.R. § 825.111(c) (citing 29 C.F.R. 825.105(c)).

[14] *See, e.g.*, 29 C.F.R. § 825.105(c).

[15] *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). Likewise, the definition of "employ" is broad. *See Rutherford Ford Corp. v. McComb*, 331 U.S. 722, 728 (1947). Highlighting the breadth of the definition of "employee" under the FLSA compared to that of other statutes, the Fifth Circuit noted in *Hopkins* that:

> it is clearly possible for [the plaintiff] to be an employee under the FLSA even if he actually believes himself to be an independent contractor. As the court below acknowledged, "[a] person's subjective opinion that he is a businessman rather than an employee does not change his status" for purposes of the FLSA.

545 F.3d at 343 (quoting *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1049 (5th Cir. 1987)).

[16] *Nationwide Mut. Ins. Co.*, 503 U.S. at 326. Highlighting the breadth of the definition of "employee" under the FLSA compared to that of other statutes, the Fifth Circuit noted in *Hopkins* that:

> it is clearly possible for [the plaintiff] to be an employee under the FLSA even if he actually believes himself to be an independent contractor. As the court below

ever included in one law.[17]   Congress purposely chose to adopt a broad definition of the word employee.[18]

Because the FMLA uses this broad definition of employee, individuals working for AMS may be "employees," even if AMS classified those employees as "independent contractors," and even if the workers thought of themselves as independent contractors.[19]

In determining whether a worker is actually an employee under the FMLA, you should focus on whether, as a matter of economic reality, the worker depends on AMS for his or her livelihood, or is instead in business for himself or herself.[20]   Five basic factors guide this determination:

> (1) the degree of control exercised by AMS;
> (2) the extent of the relative investments of the worker and AMS;
> (3) the degree to which the worker's opportunity for profit or loss is determined by AMS;
> (4) the skill and initiative required in performing the job; and
> (5) the permanency of the relationship between the worker and AMS.[21]

These factors are not exclusive.  No single factor determines whether a worker is an employee or independent contractor.[22]  Rather, each factor is a tool used to gauge the economic dependence of the worker on AMS, and each must be applied with this ultimate concept in mind.[23]

(1)    The first factor addresses the degree of control exercised by AMS compared to the control exercised by the worker.  A worker has control characteristic of an independent contractor if he or she has the level of control over his or her work that shows that he or she is a

---

acknowledged, "[a] person's subjective opinion that he is a businessman rather than an employee does not change his status" for purposes of the FLSA.

545 F.3d at 343 (quoting *Mr. W Fireworks*, 814 F.2d at 1049).

[17] *Shultz v. Hinojosa*, 432 F.2d 259, 264 (5th Cir. 1970) (quotation marks omitted) (citing *United States v. Rosenwasser*, 323 U.S. 360, 363, n.4).

[18] *Lumar*, 2002 WL 500477, at *3 (citing *Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 7 (1st Cir. 1998)).

[19] *See, e.g.*, *Karna v. BP Corp. N. Am., Inc.*, 2013 WL 1155485, at *13 (S.D. Tex. Mar. 19, 2013) ("A person's subjective opinion that he is a businessman rather than an employee does not change his status.") (quoting *Hopkins*, 454 F.3d at 346) (citing *Brock*, 814 F.2d at 1049).

[20] *Hopkins*, 545 F.3d at 343 (citing *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998)).  The economic realities test is acknowledged as more expansive than the more traditional common law right of control test.  *Diggs v. Harris Hosp. Methodist, Inc.*, 847 F.2d 270, 272 n.1 (5th Cir. 1988).

[21] *Hopkins*, 545 F.3d at 343 (citing *Herman*, 161 F.3d at 303).

[22] *Hopkins*, 545 F.3d at 343 (citing *Mr. W Fireworks, Inc.*, 814 F.2d at 1043-44).

[23] *Hopkins*, 545 F.3d at 343 (citing *Mr. W Fireworks, Inc.*, 814 F.2d at 1043-44).

separate economic entity distinct from AMS.[24]  In other words, this factor looks at whether the worker can control how AMS performs an aspect of AMS's business, in order to allow the worker to make more money.  If the worker cannot control how AMS runs any part of its business, that worker is more like an employee.  If AMS exercises control over the worker's hours and jobs performed, that worker is more like an employee than an independent contractor.  However, the fact that AMS may not closely supervise a worker in performing each of their tasks does not mean that the worker has the real independence that characterizes a true independent contractor.[25]

(2)     The second factor is the extent of the relative investments of the worker and AMS.  This factor focuses on the relative expenses paid for by the worker and AMS related to the work at issue.[26]  If AMS pays for most of the tools, equipment, or supplies necessary for the worker to perform his or her task, that worker is more like an employee.

(3)     The third factor is the degree to which the worker's opportunity for profit or loss is determined by AMS.  An independent contractor generally is one who has the opportunity to make a profit, or faces the risk of taking a financial loss.  A worker can only earn a profit or take a loss if he or she has invested capital in his or her job.[27]  If a worker's primary investment in his work is his or her time, then the money he or she makes is more like the earned wages of an employee.[28]

(4)     The fourth factor is the skill and initiative required in performing the job.  Performing routine work which requires industry and efficiency is not indicative of independence and nonemployee status.[29]  Initiative in the economic realities inquiry context relates to the ability to exercise economic initiative over an enterprise to generate more business,

---

[24] *Lang v. DirecTV*, 801 F.Supp.2d 532, 536-37 (E.D. La. 2011) (quoting *Hopkins*, 545 F.3d at 343 (quoting *Mr. W Fireworks, Inc.*, 814 F.2d at 1049).

[25] *See, e.g., Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 327 (5th Cir. 1993) (finding that the control factor weighed in favor of employee status because club exercised a great deal of control over dancers, nothwithstanding the fact that the dancers controlled their own dance routines); *Hopkins*, 545 F.3d at 343 ("'The lack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence.'") (quoting *Mr. W Fireworks, Inc.*, 814 F.2d at 1049); *Karna*, 2013 WL 1155485, at *9 ("[S]ome discretion in how one performs the responsibilities assigned does not indicate that Karna is an independent contractor. . . . Many employees, especially skilled employees, are not micro-managed in the performance of their everyday tasks; this does not transform them into separate economic entities.") (citing *Hopkins,* 545 F.3d at 343).

[26] *See Express Sixty-Minutes Delivery Serv.*, 161 F.3d at 304 (analyzing this factor by comparing capital investment of drivers and delivery service); *Circle C. Investments, Inc.*, 998 F.2d at 327.

[27] *See, e.g., Mr. W. Fireworks*, 814 F.2d at 1050–51 (distinguishing profit is the gain realized on a business over and above capital expenditures from a return based only on labor, which is more properly classified as wages rather than profit) (citations omitted).

[28] *Id.*

[29] *Pilgrim Equipment Co.*, 527 F.2d at 1314.

10

such as through the ability to affect advertising and pricing.[30]  If a worker's ability to make more money in their work for AMS is primarily dependent on decisions made by AMS itself, then that worker is more like an employee than an independent contractor.

(5)    The fifth factor addresses the permanency of the relationship between the individual and the alleged employee.  Typically, an employee is hired for an indeterminate amount of time, like an "at-will" employee.[31]  An employee also typically works usually for only one or a few employers, and does not have a business name or business listing.  An independent contractor, on the other hand, is generally hired to complete a fixed task, and transfers from place to place as particular work is offered to them.

## Question Six

Question Six asks, "Did Austin Montessori School employ at least 50 employees for twenty or more calendar weeks in 2009?"  Answer "Yes" or "No."

Proceed to Question Seven.

## Question Seven

Question Seven asks, "Did Austin Montessori School employ at least 50 employees for twenty or more calendar weeks in 2010?"  Answer "Yes" or "No."

If you answer "Yes" to Question Six and/or Question Seven, proceed to Question Eight. If you answer "No" to Question Six and Question Seven, stop, answer no further questions, and have the presiding juror sign the verdict form and notify the Court.

### Part IV—FMLA Interference[32]

Caroline Clark claims she was entitled to time off from work (i.e., leave) under the FMLA, and that AMS interfered with, restrained, or denied her entitlement to time off.

It is unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by the FMLA. FMLA rights include requesting or taking leave under the FMLA, having the employer maintain certain employment benefits during leave and, once leave is completed, being restored by the employer to the position of employment the employee held when leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

---

[30] *See, e.g., Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1314-15 (5th Cir. 1976); *Lang*, 801 F.Supp.2d at 539-40.

[31] *See, e.g., Pilgrim Equip. Co*., 527 F.2d at 1314 (finding permanency where operators worked under routinely renewed annual contracts).

[32] FIFTH CIRCUIT PATTERN JURY CHARGE § 11.10.1

11

Caroline Clark was entitled to take up to 12 weeks of leave in any 12–month period because of the birth of her child and to care for that child.

Caroline Clark was required to provide notice to AMS indicating when she required FMLA leave. She was required to provide AMS with at least 30 days' notice before her leave was to begin. To give AMS proper notice of her need for FMLA leave, Caroline Clark was not required to expressly mention the FMLA in particular. Caroline Clark need only have provided AMS enough information to place it on notice that leave was needed because of the expected birth of her child.

Any violations of the FMLA or the federal regulations implementing the FMLA constitute interfering with, restraining, or denying the exercise of rights provided by the Act. Examples of "interfering with" the exercise of an employee's rights include, but are not limited to, refusing to authorize FMLA leave, discouraging an employee from using FMLA leave, and manipulation by a covered employer to avoid responsibilities under FMLA, or denying an employee the right to remain in his or her position or an equivalent one.[33] An "equivalent position" is one that is virtually identical to the individual's former position, with equivalent employment benefits, pay, and other terms and conditions of employment.[34] It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.[35] An equivalent position must also have substantially similar duties, privileges, and status as the employee's original position.[36] The FMLA does not allow an employer to force an employee to accept a different position against the employee's wishes.[37] An individual who takes FMLA leave is entitled to job restoration even if he or she is replaced while on leave.[38]

---

[33] 29 C.F.R. § 825.220(b). *See also Reed v. Buckeye Fire Equip.*, 241 F. App'x 917, 924-25 (4th Cir. 2007) ("With respect to the interference prong, the district court assumed that Buckeye interfered with Appellant's FMLA rights by failing to provide the required notice. Buckeye contends that it satisfied its notice obligations by mailing a letter to Appellant on January 26, 2001 that apprised him of his FMLA rights and the twelve-week limit on his medical leave. Appellant responds that Buckeye neither sent this letter nor otherwise provided notice of his rights. The evidence in the record is both ambiguous and disputed. Viewed in the light most favorable to Appellant, we must presume that Buckeye did not send the letter and therefore failed to satisfy 29 C.F.R. § 825.301(c). Such failure constitutes actionable interference. *See* 29 C.F.R. § 825.220(b) ("Any violations of the [FMLA] or of [its governing] regulations constitute interfering with ... the exercise of rights provided by the [FMLA].")) (citations omitted). *See also Downey v. Strain*, 510 F.3d 534 (5th Cir. 2008).

[34] FIFTH CIRCUIT PATTERN JURY CHARGE § 11.10.2 (citing 29 U.S.C. § 2614(a)(1)) and noting that "[t]he regulations further define the term 'equivalent position.'") (citing 29 C.F.R. § 825.215(a)-(f)).

[35] 29 CFR § 825.215(a).

[36] 29 CFR § 825.215(e).

[37] 29 CFR § 825.215(e)(4).

[38] 29 C.F.R § 825.214(a).

To prevail in this case, Caroline Clark must prove by a preponderance of the evidence that she was entitled to time off from work:

1) because of the birth of Caroline Clark's child and to care for that child;

2) Caroline Clark gave AMS the proper notice of the need for time off from work for one or more of these reasons; and

3) AMS in any way interfered with, restrained, or denied Caroline Clark's entitlement to take time off from work.

In this case, it does not matter whether AMS intended to violate the FMLA. If AMS denied Caroline Clark a right to which she was entitled under the FMLA, then AMS is liable, and Caroline Clark should prevail.

### Question Eight

Question Eight asks "Did Austin Montessori School deny, restrain, or interfere with Caroline Clark's right to leave under the FMLA, or her attempt to exercise her right to leave under the FMLA?"  Answer "Yes" or "No."

Then proceed to Question Nine.

### Part V—FMLA Retaliation[39]

The FMLA also prohibits employers from discriminating against employees for engaging in FMLA-protected activities.  Caroline Clark claims that her teaching contract was not renewed by AMS because she engaged in FMLA-protected activity, and thus AMS violated the FMLA.

It is unlawful for an employer to discriminate or retaliate against an employee for engaging in FMLA-protected activity.[40]  FMLA-protected activity includes, but is not limited to, requesting leave or otherwise providing the employer with notice that leave is needed for one of the reasons protected by the FMLA, including for the birth of a child and to care for a child.[41]

To prevail on this claim, Caroline Clark must prove by a preponderance of the evidence that:

1. She engaged in FMLA-protected activity;

---

[39] FIFTH CIRCUIT PATTERN JURY CHARGE § 11.10.3.

[40] FIFTH CIRCUIT PATTERN JURY CHARGE § 11.10.3 (citing 29 U.S.C. § 2615(a)(1)and (2)).

[41] FIFTH CIRCUIT PATTERN JURY CHARGE § 11.10.3 (citing 29 U.S.C. § 2612(a)(1)).  *See also* FIFTH CIRCUIT PATTERN JURY CHARGE, COMMITTEE INTRODUCTION TO THE FAMILY AND MEDICAL LEAVE ACT (citing *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995)).

13

2. AMS engaged in an action a reasonable employee would have found materially adverse, which means an action that might dissuade a reasonable worker from engaging in FMLA protected activity;[42] and

3. AMS engaged in that action because Caroline Clark engaged in FMLA-protected activity.[43]

Clark does not have to prove that her FMLA-protected activity is the only reason AMS refused to renew her teaching contract. If you disbelieve the reason(s) AMS has given for its decision, you may infer AMS refused to renew Clark's teaching contract because of her FMLA-protected activity.[44]

### Question Nine

Question Nine asks, "Was Caroline Clark's FMLA-protected activity a motivating factor in Austin Montessori School's decision to refuse to renew her teaching contract and instead offer her the position of campus coordinator?" Answer "Yes" or "No."

If you answered "Yes" to Question Nine, proceed to Question Ten. If you answered "No" to Question Nine, but "Yes" to Question Eight, proceed to Question Eleven. If you answered "No" to Question Eight and Question Nine, stop, answer no further questions, and have the presiding juror sign the verdict form and notify the Court.

### Question Ten

Question Ten asks, "Was AMS's decision to refuse to renew Caroline Clark's teaching contract and instead offer her the position of campus coordinator an action a reasonable employee would have found materially adverse?" Answer "Yes" or "No."

If you answered "Yes" to Question Eight or to Questions Nine and Ten, proceed to Question Eleven. If you answered "No" to Questions Eight, Nine and Ten, stop, answer no further questions, and have the presiding juror sign the verdict form and notify the Court.

**Part VI—FMLA Damages**[45]

1. If you found that AMS violated the FMLA, then you must determine whether AMS has caused Caroline Clark damages and, if so, you must determine the amount, if any, of those damages.

2. Caroline Clark must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or

---

[42] *McArdle v. Dell Products, L.P.*, 293 F. App'x. 331, 336 (5th Cir. 2008)
[43] *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999).
[44] *Ratliff v. City of Gainesville*, 256 F.3d 355, 359-62 (5th Cir. 2001).
[45] FIFTH CIRCUIT PATTERN JURY CHARGE § 11.10.3

14

guesswork.  On the other hand, Caroline Clark need not prove the amount of her losses with mathematical precision, but only with as much certainty and accuracy as the circumstances permit.[46]

3.      You should consider the following elements of damages, and no others: any wages, salary, employment benefits, or other compensation denied or lost because of AMS's violation of the FMLA.

4.      Wages, salary, and benefits include the amounts the evidence shows Caroline Clark would have earned had she remained an employee of AMS, and includes fringe benefits such as health insurance,[47] contributions to retirement, etc., minus the amounts of earnings and benefits, if any, AMS proves by a preponderance of the evidence, Caroline Clark received in the interim.[48]

### **Question Eleven**[49]

Question Eleven asks, "What sum of money, if paid now in cash, would fairly and reasonably compensate Caroline Clark for the damages, if any, you have found AMS caused Caroline Clark?"  You must answer in dollars and cents for the wages, salary, employment benefits, or other compensation denied or lost, and no other items.

### **Concluding Instructions**

It is your sworn duty as juror to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

---

[46] FIFTH CIRCUIT PATTERN JURY CHARGE § 11.10.3 (citing *United States v. U.S. Steel*, 520 F.2d 1043, 1050 (5th Cir. 1975)).

[47] FIFTH CIRCUIT PATTERN JURY CHARGE § 11.10.3 (noting that a plaintiff may recover damages for lost insurance benefits only if the plaintiff shows he or she actually incurred these expenses by replacement of the lost insurance or occurrence of the insured risk) (citing *Lubke v. City of Arlington*, 455 F.3d 489 (5th Cir. 2006)).

[48] FIFTH CIRCUIT PATTERN JURY CHARGE § 11.10.3 (citing *Marks v. Prattco*, 633 F.2d 1122, 1125 (5th Cir. 1981)).

[49] No instruction has been included on liquidated damages.  *See* FIFTH CIRCUIT PATTERN JURY CHARGE § 11.10.3, Committee Notes ("The FMLA presumes a doubling of the damages and interest awarded, unless the defendant proves to the satisfaction of the court that the defendant's action that violated the FMLA was taken in good faith and that the defendant had reasonable grounds for believing its act or omission did not violate the FMLA.  The decision to forego doubling is solely for the court and not a question for the jury.").

15

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case. Do not let bias, prejudice or sympathy play any part in your deliberations. Corporations and all other persons are equal before the law and must be treated as equals in this court.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as the exhibits the Court has admitted into evidence. Select your Presiding Juror and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your unanimous verdict, your Presiding Juror is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the courtroom security officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom for other verbal instructions. If you send a written message or question to the Court, however, do not volunteer any information on the progress of the jury in reaching a verdict. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

Submitted this _____ day of June 2013, at _____.


                                              _____

SAM SPARKS
UNITED STATES DISTRICT JUDGE

16

## VERDICT FORM

We, the jury, unanimously answer the following questions:

### Question 1

Was pregnancy, childbirth, or a related medical condition a motivating factor in Austin Montessori School's decision to refuse to renew Caroline Clark's teaching contract and instead offer her the position of campus coordinator?

Answer "Yes" or "No."

Answer: _____

If you answer "No" to Question One, skip to Question Six. If you answer "Yes" to Question One, proceed to Question Two.

### Question Two

Was Austin Montessori School's decision to refuse to renew Ms. Clark's teaching contract and instead offer her the position of campus coordinator an adverse employment action?

Answer "Yes" or "No."

Answer: _____

If you answer "No" to Question Two, skip to Question Six. If you answer "Yes" to Question Two, proceed to Question Three.

### Question Three

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Caroline Clark for her damages, if any, that resulted from AMS's discriminatory conduct?

Answer in dollars and cents for damages, if any.

A.    Back pay and benefits.

"Back pay" is that amount of wages and employment benefits that Caroline Clark would have earned if she had not been subjected to AMS's unlawful conduct, less any wages she received in the interim.

17

"Employment benefits" include lost retirement benefits and monetary losses incurred as a result of the loss of health insurance coverage and the loss of tuition benefits for Caroline Clark's son.

Answer:_____

B.      Compensatory damages in the past, which include emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses.

Answer:_____

C.      Compensatory damages in the future, which include emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses.

Answer:_____

If you filled in an answer in dollars and cents for Question Three greater than zero, proceed to Question Four.  Otherwise, proceed to Question Six.

## Question Four

Do you find by clear and convincing evidence that AMS engaged in the discriminatory practice that you have found in answer to Questions One and Two with malice or with reckless indifference to the right of Caroline Clark to be free from such practices?

Answer "Yes" or "No."

Answer: _____

If you answer "Yes" to Question Four, proceed to Question Five. If you answer "No" to Question Four, skip to Question Six.

**Question Five**

What sum of money, if any, if paid now in cash, should be assessed against Austin Montessori School, Inc. and awarded to Caroline Clark as exemplary damages, if any, for the conduct found in response to Question Four?

Answer in dollars and cents, if any.

Answer: _____

Proceed to Question Six.

**Question Six**

Did Austin Montessori School employ at least 50 employees for twenty or more calendar weeks in 2009?

Answer "Yes" or "No."

Answer: _____

Proceed to Question Seven.

**Question Seven**

Did Austin Montessori School employ at least 50 employees for twenty or more calendar weeks in 2010?

Answer "Yes" or "No."

Answer: _____

If you answer "Yes" to Question Six and/or Question Seven, proceed to Question Eight.

If you answer "No" to Question Six and Question Seven, stop, answer no further questions, and have the presiding juror sign the verdict form and notify the Court.

19

**Question Eight**

Did Austin Montessori School deny, restrain, or interfere with Caroline Clark's right to leave under the FMLA, or her attempt to exercise her right to leave under the FMLA?

Answer "Yes" or "No."

Answer: _____

Proceed to Question Nine.

**Question Nine**

Was Caroline Clark's FMLA-protected activity a motivating factor in Austin Montessori School's decision to refuse to renew her teaching contract and instead offer her the position of campus coordinator?

Answer "Yes" or "No."

Answer: _____

If you answered "Yes" to Question Nine, proceed to Question Ten. If you answered "No" to Question Nine, but "Yes" to Question Eight, proceed to Question Eleven. If you answered "No" to Question Eight and Question Nine, stop, answer no further questions, and have the presiding juror sign the verdict form and notify the Court.

**Question Ten**

Was AMS's decision to refuse to renew Caroline Clark's teaching contract and instead offer her the position of campus coordinator an action a reasonable employee would have found materially adverse?

Answer "Yes" or "No."

Answer: _____

If you answered "Yes" to Question Eight or to Questions Nine and Ten, proceed to Question Eleven. If you answered "No" to Questions Eight, Nine and Ten, stop, answer no further questions, and have the presiding juror sign the verdict form and notify the Court.

### Question Eleven

What sum of money, if paid now in cash, would fairly and reasonably compensate Caroline Clark for the damages, if any, you have found AMS caused Caroline Clark?

Answer in dollars and cents for the following items and none other:

Wages, salary, employment benefits, or other compensation denied or lost:

_____

Question Eleven is the last question.  After you answer Question Eleven, if you reach it, answer no further questions.  Have the presiding juror sign the verdict form and notify the Court.

### CERTIFICATE OF THE JURY

We, the jury, have answered the above and foregoing questions as herein indicated and herewith, return the same into Court as our unanimous verdict.

_____
PRESIDING JUROR

SIGNED this _____ day of June, 2013, at _____.

### END OF PROPOSED JURY INSTRUCTIONS AND CHARGE

21

Respectfully Submitted,

THE COOK LAW FIRM

/s/ Melissa A. Jacobs

_____

Russell Scott Cook
State Bar No. 24040724
scook@rcooklaw.com
Melissa A. Jacobs
State Bar No. 24046144
mjacobs@rcooklaw.com
919 Congress Avenue, Suite 1145
Austin, TX 78701
Telephone: (512) 482-9556
Telecopier: (512) 597-3172

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st of May 2013, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Stephanie O'Rourke
Bryan P. Marshall
J. Michael Ezzell
Cokinos Bosien & Young
l0999 West IH-10, Ste. 800
San Antonio, TX 78230

/s/ Melissa A. Jacobs

_____

Melissa A. Jacobs

22